IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH MIZRACHI, | ) |
|       Plaintiff, | ) |
| v. | ) |
| LAWRENCE B. ORDOWER and ORDOWER & ORDOWER, P.C., | )     <u>JURY DEMAND</u> |
|       Defendants. | ) |

COMPLAINT FOR LEGAL MALPRACTICE
BREACH OF FIDUCIARY DUTY

Plaintiff Joseph Mizrachi ("Mr. Mizrachi"), by and through his undersigned counsel, Mark A. Stang, for his complaint against his former counsel, Lawrence B. Ordower ("Ordower") and Ordower & Ordower, P.C. ("Ordower P.C.") (together, the "Defendants"), states as follows:

Nature of Action

1. This action arises out of the Defendants' representation of Mr. Mizrachi in connection with Mr. Mizrachi's acquisition of, and investment in, certain valuable LLC interests and other rights in 2016 having a present value of at least $4.3 million. The transaction at issue was intended to result in equal 1/3 ownership of the LLC interests by Mr. Mizrachi, Ordower and Seymour Holtzman ("Holtzman") (another client of the Defendants). Following the closing of the transaction, however, Ordower and Holtzman disregarded Mr. Mizrachi's investment and converted Mr. Mizrachi's 1/3 of the LLC interests to their own use, to Mr. Mizrachi's detriment.

2. Ordower's conversion of Mr. Mizrachi's property to benefit himself and his other client (Holtzman) is, ipso facto, a breach of the fiduciary duties the Defendants owed to Mr. Mizrachi by virtue of their attorney-client relationship with Mr. Mizrachi. Moreover, Ordower

accomplished that conversion by exploiting his own professional negligence. As Mr. Mizrachi's counsel, the Defendants were obligated to, among other things, exercise due care to protect Mr. Mizrachi's interests and expectations with respect to his investment. At a minimum, competent counsel would have ensured that Mr. Mizrachi's more than $1.3 million initial investment was properly and thoroughly documented. The Defendants, however, failed to do so, and Ordower has now used the lack of thorough documentation to claim ownership of Mr. Mizrachi's interests for himself and Holtzman. Accordingly, Mr. Mizrachi has commenced this action to seek compensatory damages for the Defendants' professional negligence, and to seek compensatory and punitive damages for the Defendants' egregious breaches of their fiduciary duties.

<u>Parties</u>

3. Plaintiff Joseph Mizrachi is a citizen of the State of Florida, residing in Palm Beach County, Florida.

4. Defendant Lawrence B. Ordower is a citizen of the State of Illinois, residing in Cook County, Illinois. At all relevant times, Ordower has been licensed to engage in the practice of law in the State of Illinois, and has been practicing law in Cook County, Illinois.

5. Defendant Ordower & Ordower, P.C. is, and at all relevant times was, a professional corporation organized under the Professional Service Corporation Act of Illinois (805 ILCS 10/1, et seq.) and registered with the Supreme Court of Illinois as a corporation engaging in the practice of law in Illinois, with its principal place of business in Cook County, Illinois.

6. Ordower is, and at all relevant times was, the President of Ordower P.C., and an agent and employee of Ordower P.C. In engaging in the conduct set forth herein, Ordower was acting within the scope of his office, agency and employment, and was engaged on behalf of

Ordower P.C. in the rendering of professional legal services. As a result, the Defendants are equally liable for the negligence, wrongful acts and other misconduct set forth herein.

## Jurisdiction and Venue

7. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, as the plaintiff and the defendants are citizens of different states, respectively, and the matter in controversy exceeds the value of $75,000.

8. This Court has jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209, and venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2) because: (i) both Defendants reside in the Northern District of Illinois; and (ii) a substantial part of the events or omissions giving rise to the Mizrachi's claim occurred in the Northern District of Illinois.

## General Allegations

A. Commencement of the Defendants' Representation of Mr. Mizrachi

9. In or around September 2014, the Defendants agreed to represent Mr. Mizrachi, as his attorneys at law, in connection with Mr. Mizrachi's acquisition of certain interests in Brentwood Capital, L.L.C. ("Brentwood") and other related rights. During the course of the representation, which continued until early 2017, the Defendants agreed to provide legal advice to Mr. Mizrachi and perform legal services for Mr. Mizrachi related to: (i) the negotiation and drafting of agreements, correspondence and other documents governing or pertaining to the assignment of the interests in Brentwood; (ii) the closing of the acquisition and the "true-up" of Mr. Mizrachi's more than $1.3 million initial investment in the transaction; (iii) the review and interpretation of agreements related to Net Lease Management Partners, L.L.C., an entity in which Brentwood holds a 40.65% interest, and of which JAL Group, L.P. ("JAL") – an entity managed and partially owned by Mr. Mizrachi – is the managing member; and (iv) the

negotiation, drafting and execution of limited liability company agreements and other materials to document Mr. Mizrachi's investment in and acquisition of the interests in Brentwood.

10. Mr. Mizrachi and the Defendants consented to the formation of an attorney-client relationship between Mr. Mizrachi and the Defendants as described above. Mr. Mizrachi authorized the Defendants to act on his behalf, and the Defendants accepted the power to act on Mr. Mizrachi's behalf.

11. In addition to the Brentwood transaction, the Defendants also represented Mr. Mizrachi and his related entities in a variety of other matters. Among other things, the Defendants (i) represented Mr. Mizrachi and a related entity in connection with an EPA inspection between October 2015 and December 2015, (ii) represented Mr. Mizrachi and a related entity in connection with a wire transaction in October 2015, and (iii) represented Mr. Mizrachi and a related entity in connection with a lease, a settlement agreement and other matters between September 2015 and February 2016.

B.  The Brentwood Transaction

12. Brentwood was formed as a Delaware limited liability company on or about March 17, 1997. The membership interests in Brentwood originally were held as follows: (i) 75% of the initial membership interests in Brentwood (collectively, the "Benetti Interests") were held by JEB Family LP (25%), FVB Family LP (25%), the Frederick L. and Judy A. Brooks Family Bypass Trust (12.5%), and the Linda Aurand Separate Property Trust (12.5%) (collectively, the "Benetti Group"); and (ii) 25% of the initial membership interests in Brentwood were held by Holtzman (11.9565%) and two entities – Schuyler Associates, L.P. ("Schuyler") (7.6088%) and New Value L.L.C. ("New Value") (5.4347%) – owned or controlled by Milton Koffman, Burton Koffman, Jackson Koffman or other members of the Koffman family.

13. Brentwood's sole asset is, and at all relevant times has been, a 40.65% membership interest in Net Lease Management Partners, L.L.C. ("NLMP"). NLMP was formed by JAL (which has a 1.02% membership interest therein), Brentwood and other parties as a Delaware limited liability company over twenty years ago, on or about March 17, 1997. NLMP was created to purchase two warehouse properties in Colorado and North Carolina. The warehouse properties, which were acquired via a sale-leaseback transaction with Kmart Corporation, generate $8,057,500 in net annual rents. Pursuant to Section 4.01 of NLMP's operating agreement dated as of March 17, 1997, JAL was appointed as the managing member of NLMP. Through affiliated entities, Mr. Mizrachi holds a 50% partnership interest in JAL and is the manager of JAL.

14. In or around September 2014, at or near the time the Defendants commenced their representation of Mr. Mizrachi, Mr. Mizrachi and Holtzman entered into discussions regarding their eventual acquisition of the Benetti Interests. In connection with those discussions, the Defendants (among other things) provided legal advice and assistance to Mr. Mizrachi in the preparation of correspondence directed to the other members of NLMP regarding the proposed acquisition. At or near the same time, the Defendants also, on information and belief, agreed to represent Holtzman in connection with the acquisition of the Benetti Interests. The Defendants never advised Mr. Mizrachi regarding the foreseeable conflicts of interest that could – and did – arise between Mr. Mizrachi and Holtzman, nor did the Defendants obtain Mr. Mizrachi's informed written consent to the dual representation.

15. Mr. Mizrachi and Holtzman subsequently agreed to include Ordower in their acquisition of the Benetti Interests. Specifically, in or around June 2015, Mr. Mizrachi entered into an oral agreement (the "Brentwood Contract") with Holtzman and Ordower to jointly

acquire the Benetti Interests. Pursuant to the Brentwood Contract, Mr. Mizrachi, Holtzman and Ordower (i) each agreed to contribute (individually or through related entities) 1/3 of the amount necessary to acquire the Benetti Interests from the Benetti Group, (ii) agreed that Mr. Mizrachi, Holtzman and Ordower would each hold (individually or through related entities) 1/3 of the Benetti Interests acquired from the Benetti Group, (iii) agreed that, upon acquisition of the Benetti Interests, Mr. Mizrachi or JAL would become the managing member(s) of Brentwood, and (iv) agreed that JAL would continue to be the managing member of NLMP.

16. The Defendants never advised Mr. Mizrachi regarding the foreseeable conflicts of interest that could – and did – arise between Mr. Mizrachi and Ordower in connection with (among other things) the Brentwood Contract, nor did the Defendants obtain Mr. Mizrachi's informed written consent regarding those conflicts of interest. Moreover, the Defendants never advised Mr. Mizrachi to reduce the Brentwood Contract to writing, or informed Mr. Mizrachi of the foreseeable risks associated with oral agreements – including, without limitation, the risk that the other parties to the oral agreement might later dispute or renege on the terms of the oral agreement. Had Mr. Mizrachi been properly advised of those risks, he would not have allowed the Brentwood transaction to close without complete written documentation prior to the closing (as opposed to negotiating the documents post-closing).

17. The acquisition of the Benetti Interests from the Benetti Group was accomplished pursuant to an *Agreement of Assignment of Membership Interest in Brentwood Capital, LLC* ("Assignment Agreement"). The Assignment Agreement provided (among other things) that, upon closing, the Benetti Group would transfer its 75% membership interest in Brentwood to Holtzman, Schuyler and New Value (the "Initial Assignees"), or to a new entity to be formed at or prior to the closing. The Assignment Agreement also required that Mr. Mizrachi and JAL

consent to the assignment, and release all claims against the Benetti Group. The purchase price for the Benetti Interests was $3,400,000.

18. Negotiations regarding the terms and provisions of the Assignment Agreement began in or around June 2015. The Defendants provided legal advice to Mr. Mizrachi and performed legal services for Mr. Mizrachi in connection with the Assignment Agreement including, among other things, negotiating and drafting revisions to the Assignment Agreement. The Defendants, however, took no steps to ensure that the Assignment Agreement adequately protected Mr. Mizrachi's interests and expectations, and took no steps to ensure that the Assignment Agreement appropriately reflected all of the terms of the Brentwood Contract. Appropriate steps that the Defendants could and should have taken included, without limitation, (i) advising Mr. Mizrachi to insist that the Assignment Agreement obligate all assignees to designate Mr. Mizrachi or JAL as the managing member(s) of Brentwood, and drafting appropriate revisions to the Assignment Agreement, and (ii) advising Mr. Mizrachi to insist that the Assignment Agreement obligate all assignees to take any steps necessary to ensure that JAL remained the managing member of JAL, and drafting appropriate revisions to the Assignment Agreement.

19. The Assignment Agreement was executed in January 2016. Mr. Mizrachi executed the Assignment Agreement individually and on behalf of JAL. In doing so, Mr. Mizrachi reasonably relied on the Defendants' legal advice and direction, with the expectation that upon closing (i) Mr. Mizrachi (individually or through related entities) would hold 1/3 of the Benetti Interests, (ii) Mr. Mizrachi or JAL would become the manager(s) of Brentwood, and (iii) JAL would continue as the managing member of NLMP.

20. Prior to the closing of the Assignment Agreement, and to effectuate the Brentwood Contract, Mr. Mizrachi entered into an oral limited liability company agreement with Ordower and Holtzman (the "SJL Operating Agreement") in or around June 2016. Pursuant to the SJL Operating Agreement, Mr. Mizrachi, Ordower and Holtzman agreed (i) to form SJLSJL LLC ("SJL") – with an "S" for Seymour Holtzman, a "J" for Joseph Mizrachi, and an "L" for Lawrence Ordower – as a limited liability company under Delaware law for the purpose of purchasing the Benetti Interests, (ii) to each hold equal 1/3 shares in SJL, and (iii) to each contribute (individually or through related entities) 1/3 of the purchase price and other amounts necessary to acquire the Benetti Interests.

21. In connection with the formation of SJL and the acquisition of the Benetti Interests, Ordower prepared and provided to Mr. Mizrachi a chart reflecting that the "amounts necessary for closing of the Brentwood Purchase" were $1.3 million from Mr. Mizrachi, $1.3 million from Holtzman and $1.3 million from Ordower. During the course of the Defendants' representation of Mr. Mizrachi, Ordower also drafted – but never signed – an operating agreement for SJL that reflected the 1/3 membership interests in SJL held by Mr. Mizrachi, Ordower and Holtzman. The Defendants never informed Mr. Mizrachi of the foreseeable risks associated with oral operating agreements – including, without limitation, the risk that the other parties to the oral operating agreement might later dispute or renege on the terms of the operating agreement. Had Mr. Mizrachi been properly advised of those risks, he would not have proceeded with his investment without securing a written operating agreement and other appropriate documentation prior to the closing of the Brentwood transaction.

22. On or about September 28, 2016, the Initial Assignees transferred all of their rights under the Assignment Agreement to SJL. In particular, Holtzman executed a *Notice to*

*Assignor Pursuant to Agreement of Assignment of Membership Interest in Brentwood Capital, LLC* (the "SJL Notice") on behalf of the Initial Assignees. The SJL Notice, which Holtzman delivered to the Benetti Group on or about September 28, 2016, provided as follows:

> Pursuant to Section 9.9 of the Agreement please be advised that the Assignees assign all their right, title, and interest to SJLSJL, LLC and direct the Assignor to assign the entire Membership Interest to SJLSJL, LLC.

23. The transfer and assignment of the Benetti Interests to SJL closed on September 30, 2016. Prior to the closing, and in accordance with both the Brentwood Contract and the SJL Operating Agreement, Mr. Mizrachi deposited his 1/3 share of the purchase price with closing counsel for the transaction, Finkelstein Bender & Fujii LLP ("FBF"). Specifically, on September 29, 2016, Mr. Mizrachi caused $1.3 million to be deposited into FBF's escrow account. On information and belief, Ordower and Holtzman also caused their shares of the purchase price to be deposited into FBF's escrow account on September 29, 2016.

24. The purchase price for the Benetti Interests, plus approximately $500,000 due for the refund of escrowed real estate taxes, was distributed to the Benetti Group on or about October 4, 2016. As contemplated under the Brentwood Contract and the SJL Operating Agreement, the funds disbursed to the Benetti Group for the purchase of the Benetti Interests consisted, in equal 1/3 shares, of the funds deposited with FBF on behalf of Mr. Mizrachi, Ordower and Holtzman.

25. Following the closing of the Assignment Agreement, Mr. Mizrachi continued to make additional contributions to SJL and the acquisition of the Benetti Interests, including (without limitation) a contribution of $86,289 on March 16, 2017. The March 16, 2017 contribution was made via a wire transfer to FBF's escrow account.

26. Through early 2017, the Defendants continued to provide legal advice to Mr. Mizrachi and perform legal services for Mr. Mizrachi with respect to Mr. Mizrachi's acquisition of 1/3 of the Benetti Interests. Among other things, Ordower advised Mr. Mizrachi regarding the "true-up" of the more than $1.3 million that Mr. Mizrachi contributed to acquire the Benetti Interests, and performed various services related to the allocation of closing costs and proceeds among the Benetti Group, Mr. Mizrachi, Ordower and Holtzman.

27. Ordower also prepared draft operating agreements for Brentwood to reflect the acquisition of the Benetti Interests. For instance, on November 4, 2016, Ordower circulated a draft operating agreement for Brentwood which recited that the Benetti Group had "sold and conveyed their collective 75% interest in [Brentwood] to Lawrence Ordower, Seymour Holtzman and Evelyn Holtzman as joint tenants, and Joseph Mizrachi in equal percentages of 25%" each. On December 12, 2016, Ordower circulated a revised draft operating agreement for Brentwood, which again recited that the Benetti Group had sold the Benetti Interests to Mr. Mizrachi, Holtzman and Ordower (or their related entities).

28. Mr. Mizrachi executed the revised Brentwood operating agreement, and caused his signature page to be delivered to Ordower, on or about December 12, 2016. Ordower and Holtzman, however, refused to execute the Brentwood operating agreement. On information and belief, Ordower refused to sign the operating agreement, and advised Holtzman not to sign the operating agreement, because Mr. Mizrachi declined to enter into various indemnity agreements and a settlement agreement with Ordower and Holtzman that would have, among other things, released all claims that Mr. Mizrachi had against Ordower "from the beginning of time to the date hereof, arising out of or related to the purchase of the Benetti Interests, and the negotiation or preparation of" various documents, including the operating agreement for Brentwood.

29. Moreover, on or about March 31, 2017, Ordower informed Mr. Mizrachi that – notwithstanding Mr. Mizrachi's initial investment of more than $1.3 million to fund the acquisition of the Benetti Interests – Mr. Mizrachi purportedly has no interest in either SJL or Brentwood. According to Ordower, the purported nullification of Mr. Mizrachi's interests was permissible "due to the fact that Seymour does not have a signed Agreement."

30. Since March 31, 2017, Ordower and Holtzman have declared themselves, together with Jackson Koffman, to be the sole owners of Brentwood. Based on, among other misconduct, their conversion of Mr. Mizrachi's interests in SJL and Brentwood, Ordower and Holtzman also have (i) denied that either Mr. Mizrachi or JAL is the managing member of Brentwood, (ii) elected themselves and Jackson Koffman as Brentwood's three designees to the six-member management committee of NLMP, (iii) used their purported election to NLMP's management committee to "remove" JAL as the managing member of NLMP, (iv) used their purported election to NLMP's management committee to appoint Brentwood – a "Brentwood" unlawfully controlled by Holtzman and Ordower – as a "co-managing member" of NLMP, and (v) assumed control, as purported members of NLMP's management committee, over the sale of NLMP's two valuable warehouse properties in Colorado and North Carolina.

## COUNT I

### (Legal Malpractice)

31. Plaintiff realleges and incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

32. Between September 2014 and early 2017, as specified above, the Defendants acted as legal counsel to Mr. Mizrachi in connection with the acquisition of the Benetti Interests by Mr. Mizrachi, Ordower and Holtzman. At all relevant times, Ordower was the President of

Ordower P.C. and was acting within the scope of his office, agency and employment. Ordower P.C. authorized, ratified or approved the acts and omissions of Ordower described herein.

33. In light of the attorney-client relationship between the Defendants and Mr. Mizrachi, Mr. Mizrachi reasonably relied on the Defendants, and placed trust and confidence in the Defendants.

34. By virtue of the attorney-client relationship that existed between the Defendants and Mr. Mizrachi, the Defendants owed a duty to Mr. Mizrachi to exercise reasonable care, diligence, thoroughness and skill in providing legal advice to Mr. Mizrachi and performing legal services for Mr. Mizrachi.

35. The Defendants failed to exercise reasonable care, diligence, thoroughness and skill in their representation of Mr. Mizrachi, and thus breached the duties they owed to Mr. Mizrachi. Among other things, the Defendants breached their duties to Mr. Mizrachi by (i) failing to advise Mr. Mizrachi to reduce the Brentwood Contract to writing, (ii) failing to ensure that the Assignment Agreement appropriately reflected Mr. Mizrachi's interests and expectations with respect to the acquisition of the Benetti Interests, and the management of Brentwood and NLMP, (iii) failing to ensure that Mr. Mizrachi's $1.3 million initial investment in the Benetti Interests was thoroughly documented, (iv) failing to ensure that Mr. Mizrachi's interests in Brentwood and SJL were thoroughly documented, (v) failing to ensure that the operating agreements for Brentwood and SJL were properly drafted and promptly executed, and (vi) failing to properly inform Mr. Mizrachi of the foreseeable risks associated with oral contracts and oral operating agreements, including the risk that the other parties to the oral agreements might later dispute and renege on the terms of the agreements.

36. In or around March 2017, as detailed above, Holtzman and Ordower disregarded Mr. Mizrachi's $1.3 million initial investment in the Benetti Interests, and claimed ownership of Mr. Mizrachi's interests in Brentwood and SJL. Since March 2017, Holtzman and Ordower have denied that either Mr. Mizrachi or JAL is the manager of Brentwood, purported to remove JAL as the managing member of NLMP, and assumed control over the sale of NLMP's warehouse properties. On information and belief, Holtzman and Ordower have taken the position that their actions do not violate the Assignment Agreement or any other contract, and are permissible due to the absence of fully-executed written operating agreements for Brentwood and/or SJL. If the Defendants had exercised the appropriate degree of care, diligence, thoroughness and skill in their representation of Mr. Mizrachi, and properly advised Mr. Mizrachi of all foreseeable risks, (i) Mr. Mizrachi would not have made his $1.3 million initial investment without securing further or more appropriate documentation prior to the closing, as opposed to negotiating the agreements and other documents post-closing, and (ii) Holtzman and Ordower would not have been able to exploit the lack of thorough documentation and the absence of fully-executed operating agreements to Mr. Mizrachi's detriment.

37. As specified above, Mr. Mizrachi did not discover, and could not reasonably have discovered, the injuries or harms caused by the Defendants' failure to exercise reasonable care, diligence, thoroughness and skill until in or around March 2017.

38. As a proximate result of the Defendants' negligence, Mr. Mizrachi has suffered damages, the lost present value of his investment interest, in an amount, subject to proof at trial, that exceeds $4.2 million, plus attorneys' fees and other expenses incurred by Mr. Mizrachi to address the consequences of the Defendants' negligence.

WHEREFORE, the Plaintiff, Joseph Mizrachi, respectfully requests that judgment be entered in his favor and against the Defendants, Lawrence B. Ordower and Ordower and Ordower, P.C. for compensatory damages in an amount, subject to proof at trial, in excess of $4.2 million, together with interest at the maximum rate permitted by law, his costs of suit incurred herein, including (without limitation) attorneys' fees, to the extent permitted by law; and for such other and further relief as the Court may deem just and proper.

## COUNT II

(Breach of Fiduciary Duty)

39. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

40. Between September 2014 and early 2017, as specified above, the Defendants acted as legal counsel to Mr. Mizrachi in connection with the acquisition of the Benetti Interests by Mr. Mizrachi, Ordower and Holtzman.

41. In light of the attorney-client relationship between the Defendants and Mr. Mizrachi, Mr. Mizrachi reasonably relied on the Defendants, and placed trust and confidence in the Defendants.

42. By virtue of the attorney-client relationship that existed between the Defendants and Mr. Mizrachi, the Defendants owed fiduciary duties to Mr. Mizrachi that included, without limitation, (i) a duty to act faithfully, honestly and in good faith in their dealings with Mr. Mizrachi, (ii) a duty to refrain from acting in their own interests in lieu of Mr. Mizrachi's interests, and to avoid other impermissible conflicting interests, (iii) a duty to not employ advantages arising from the attorney-client relationship in a manner adverse to Mr. Mizrachi, and (iv) a duty to faithfully serve and zealously represent Mr. Mizrachi's interests.

43. By virtue of Mr. Mizrachi's having placed confidence in the fidelity and integrity of the Defendants, and having entrusted the Defendants with the protection and advancement of his rights, interests and expectations in connection with the acquisition of the Benetti Interests, a confidential relationship existed at all relevant times between Mr. Mizrachi and the Defendants.

44. Despite having voluntarily accepted the trust and confidence of Mr. Mizrachi, and in violation of that relationship of trust and confidence, the Defendants breached their fiduciary duties to Mr. Mizrachi. The Defendants' breaches of fiduciary duties included, without limitation, the following: (i) Ordower's conversion (with Holtzman) of Mr. Mizrachi's interests in Brentwood and SJL – i.e., the interests Mr. Mizrachi acquired through the very same transaction in which he was represented by the Defendants; (ii) Ordower's use (with Holtzman) of their purported ownership of all the Benetti Interests to inflict further harm on Mr. Mizrachi, by denying either Mr. Mizrachi or JAL's position as manager of Brentwood, removing JAL as the managing member of NLMP, and assuming control over the sale of NLMP's warehouse properties; (iii) the Defendants' failure to properly inform and advise Mr. Mizrachi regarding the foreseeable conflicts of interest that the Defendants knowingly allowed to develop and persist among Mr. Mizrachi, Ordower and Holtzman, without seeking or obtaining Mr. Mizrachi's informed written consent; (iv) Ordower's decision to place his interests, and the interests of Holtzman, ahead of Mr. Mizrachi's interests, as demonstrated by (among other things) Ordower and Holtzman's refusal to execute the Brentwood operating agreement; and (v) Ordower's attempt to extort settlement releases from Mr. Mizrachi by refusing to execute the Brentwood operating agreement.

45. As specified above, Mr. Mizrachi did not discover, and could not reasonably have discovered, the Defendants' breaches of their fiduciary duties until in or around March 2017.

46. As a proximate result of the Defendants' breaches of their fiduciary duties to Mr. Mizrachi, Mr. Mizrachi has suffered damages in an amount, subject to proof at trial, that exceeds $1.3 million, plus attorneys' fees and other expenses incurred by Mr. Mizrachi to address the consequences of the Defendants' breaches of their fiduciary duties.

47. In engaging in the misconduct described herein, Ordower was guilty of oppression, fraud or malice, and acted willfully and wantonly. At all relevant times, Ordower was the President of Ordower P.C. and was acting within the scope of his office, agency and employment. Ordower P.C. authorized, ratified or approved the acts and omissions of Ordower described herein. As a result, Mr. Mizrachi is entitled to recover from the Defendants, in addition to actual damages, damages for the sake of example and by way of punishing the Defendants.

WHEREFORE, the Plaintiff, Joseph Mizrachi, respectfully requests that judgment be entered in his favor and against the Defendants, Lawrence B. Ordower and Ordower and Ordower, P.C. for compensatory damages in an amount, subject to proof at trial, in excess of $4.2 million, together with exemplary damages in an amount subject to proof at trial, interest at the maximum rate permitted by law, his costs of suit incurred herein, including (without limitation) attorneys' fees, to the extent permitted by law; and for such other and further relief as the Court may deem just and proper.

<u>Plaintiff demands trial by jury</u>.

JOSEPH MIZRACHI

Mark A. Stang  
Stang-Law Firm  
584 Hyacinth Place       By_____s/ *Mark A. Stang*_____  
Highland Park, Illinois 60035       His Attorney  
(847) 432-2073