IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MIZRACHI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 8036 |
| v. | ) | |
| | ) | |
| LAWRENCE B. ORDOWER | ) | Judge Kennelly |
| and ORDOWER & ORDOWER, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff, Joseph Mizrachi, by his attorney, Mark A Stang, moves this honorable Court, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, to enter an order permitting Plaintiff to file an amended complaint within 14 days. In support, Plaintiff states as follows:

1. This is an action for legal malpractice and breach of fiduciary duty. Defendants denied the allegations of the complaint that Defendants failed in their duty to properly and thoroughly document Plaintiff's more than $1.3 million initial investment in the transaction at issue in this case. (Answer, ¶2, p. 2, Dkt. 16, PageID #:44). Defendants also denied the allegation that "Ordower has now used the lack of thorough documentation to claim ownership of Mr. Mizrachi's interest for himself and Holtzman." *Id.* However, in response to Plaintiff's allegation that "[s]pecifically, on September 29, 2016, Mr. Mizrachi caused $1.3 million to be deposited into FBF's escrow account," (Answer, ¶23, sentence 3, p. 13, Dkt. 16, PageID #:55), Defendants did not deny, but pleaded "lack knowledge or information sufficient to form a belief as to the truthfulness of the allegations . . . ."

2. Nowhere in his complaint did Plaintiff identify the specific source of funds for the investment at issue in this case. Plaintiff's counsel is not aware of any statute, case, or rule that

requires the pleading of the source of an investor's funds to have standing to sue. Moreover, in Defendants' Rule 12(b)(6) motion to dismiss (Dkt. 11) and supporting memorandum (Dkt. 12) they nowhere asserted that Plaintiff had a duty to allege his source of funds to be able to state a claim, or that Plaintiff's forbearance from identifying his source of funds in the complaint was a ground for dismissal. Nowhere in Defendants' answer and affirmative defenses (Dkt. 16) did Defendants even suggest, let alone plead, that Plaintiff's source of funds constitutes any defense to the claims alleged in the complaint.

3. Nevertheless, in their Document Request No. 16, defendants requested documents relating "to the source(s) of the $1.3 million." On October 9, 2018, Plaintiff objected to this request for the source of funds as not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendants subsequently moved to compel production of the source of funds documents. Defendants revealed their rationale for seeking the "source of funds" documents for the first time on March 27, 2019, in their reply in support of their motion to compel. (Dkt. 80, pages 5-6, PageID #:2660-2661), stating, in pertinent part, "if Plaintiff is not the source of funds, an argument can *possibly* be made that Plaintiff does not even have a right to bring this claim." *Id.* (Emphasis supplied). The Court accepted the foregoing argument in its ruling granting Defendants' motion to compel as to Request No. 16:

> On the issue of the source of funds, I am persuaded by the defendants' argument that the source of funds is relevant essentially because if the plaintiff isn't the source of funds than that *may* raise an issue as to whether he is entitled to recover on that.

(Tr. of Proceedings, 3/28/19, 3:16-20) (Emphasis supplied).

5. Plaintiff has fully complied with the Court's order concerning production of the source of funds, as Plaintiff's counsel certified to Defendants' counsel in an email dated April 4, 2019, a certification referenced in Plaintiffs' motion to extend the time for a production of arbitration-related documents. (Dkt. 82, ¶ 4, p. 2, PageID #:2731). The source of funds was M Group Two, LLC, a Delaware limited liability company in which Plaintiff holds a substantial interest and of which he is the managing member. (The "M" in the LLC's name stands for Mizrachi). Prior to producing Plaintiffs' own documents, Plaintiff's counsel learned that Defendants' own document production contains documents showing exactly this source of funds, and so advised Defendants' counsel. (The documents also show that Seymour Holtzman, Ordower's putative client, also used an LLC for his source of funds.)

6. Although the document production issues concerning the source of funds have been resolved by the Court's order and Plaintiff's compliance, new issues have sprung Hydra-like from Defendants' stated intention to attack Plaintiff's right (or standing) because Plaintiff did not use the "correct" source of funds (whatever that might be) to deposit more than $1.3 million in escrow to secure his interest in the transaction. Plaintiff must now sue Ordower for legal malpractice in connection with the source of funds issue.

7. Plaintiff is a sophisticated real estate investor, who has done numerous acquisitions and transactions using all manner of financings, but he is not a lawyer. Defendant Ordower was his attorney in the Brentwood transaction, just as he had been Plaintiff's attorney for numerous other real estate legal matters in the Chicago area. If Plaintiff's use of funds from one of his entities, rather than from a personal checking or savings account, was going to put his rights at the risk of being lost, then it was Ordower's duty to so warn and advise Plaintiff of this legal danger at the time of the transaction, not deliver the bad news for the first time years later

in a legal malpractice suit. In trying to use "source of funds" as a weapon against his former client, Ordower is hoisting himself up by the petard of yet another instance of his own legal malpractice.

7. Although not required by any rule or custom to do so, Plaintiff's counsel has communicated extensively by phone and email with Defendants' counsel about their unpleaded source of funds "defense," and its triggering of Plaintiff's counsel's obligation to protect Plaintiff by promptly charging Ordower with professional negligence as to the very alleged omission with which he seeks to deprive Plaintiff of his investment and legal remedy. Plaintiff has inquired whether the entire source of funds issue can be laid to rest now, and has been informed by Defendants' counsel that they will not lay the issue to rest. Accordingly, although he does not seek to widen the issues in this case, Plaintiff has no alternative, given the requirements of notice pleading, to plead this new claim against Defendants in an amended complaint. Plaintiff respectfully submits that this request falls within the guideline of Rule 15(a)(2) that "[t]he court should freely give leave [to amend] when justice so requires."

WHEREFORE, Plaintiff, Joseph Mizrachi, moves the Court to enter an order permitting him to file an amended complaint within 14 days.

JOSEPH MIZRACHI

Mark A. Stang　　　　　　　　　　　　　By_____s/ *Mark A. Stang*_____
Stang-Law Firm　　　　　　　　　　　　　　　　His Attorney
584 Hyacinth Place
Highland Park, Illinois  60035
(847) 432-2073

## CERTIFICATE OF SERVICE

I, Mark A. Stang, an attorney, certify that I served the foregoing Plaintiff's Motion for leave to file an amended complaint on Defendants on April 17, 2019 by CM/ECF transmission to John Dalton and Jeff Young, their attorneys of record.

By_____*Mark A. Stang*_____