IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MIZRACHI, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 1:17-cv-08036 |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly |
| LAWRENCE ORDOWER | ) | |
| and ORDOWER & ORDOWER, P.C. | ) | <u>JURY DEMAND</u> |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT FOR LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY</u>

NOW COME Defendants, Lawrence Ordower and Ordower & Ordower, P.C. (collectively the "Defendants") by and through their attorneys, John D. Dalton and Jeffrey I. Young, and for their Answer to Plaintiff's Amended Complaint for Legal Malpractice and Breach of Fiduciary Duty, state as follows:

### Nature of Action

1.     This action arises out of the Defendants' representation of Mizrachi in connection with Mizrachi's acquisition of, and investment in, certain valuable LLC interests and other rights in 2016. The transaction at issue was intended to result in equal 1/3 ownership of the LLC interests by Mizrachi, Ordower and Seymour Holtzman ("Holtzman") (unbeknownst to Plaintiff at the time, another client of the Defendants). Following the closing of the transaction, however, Ordower and Holtzman disregarded Mizrachi's investment and converted Mizrachi's 1/3 of the LLC interests to their own use, to Mizrachi's detriment.

**ANSWER:**     **Sentences 1 and 2 of Paragraph 1 contain legal conclusions to which**

**no response is required. To the extent an answer is required, Defendants deny the allegations contained in Sentences 1 and 2 of Paragraph 1. Further answering, Defendants deny the allegations contained in Sentence 3 of Paragraph 1.**

2.     Ordower's conversion of Mizrachi's property to benefit himself and his other client (Holtzman) is, ipso facto, a breach of the fiduciary duties the Defendants owed to Mizrachi by virtue of their attorney-client relationship with Mizrachi. Moreover, Ordower accomplished that conversion by exploiting his own professional negligence. As Mizrachi's counsel, the Defendants were obligated to, among other things, exercise due care to protect Mizrachi's interests and expectations with respect to his investment. At a minimum, competent counsel would have ensured that Mizrachi's more than $1.3 million initial investment was properly and thoroughly documented. The Defendants, however, failed to do so, and Ordower has now used the lack of thorough documentation to claim ownership of Mizrachi's interests for himself and Holtzman. Accordingly, Mizrachi has commenced this action to seek compensatory damages for the Defendants' professional negligence, and to seek compensatory and punitive damages for the Defendants' egregious breaches of their fiduciary duties.

**ANSWER:   Sentences 1, 2, and 3 of Paragraph 2 contain legal conclusions to which no response is required. To the extent an answer is required, Defendants deny the allegations contained in Sentences 1, 2, and 3 of Paragraph 2. Further answering, Defendants deny the allegations contained in Sentences 4, 5, and 6 of Paragraph 2.**

<u>Parties</u>

3.     Plaintiff Joseph Mizrachi is a citizen of the State of Florida, residing in Palm Beach County, Florida.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to truthfulness of the allegations contained in Paragraph 3.**

4.     Defendant Lawrence B. Ordower is a citizen of the State of Illinois, residing in Lake County, Illinois. At all relevant times, Ordower has been licensed to engage in the practice of law in the State of Illinois, and has been practicing law in Cook County, Illinois.

**ANSWER:     Defendants admit that Mr. Ordower is a citizen of the State of Illinois, and that at all relevant times, Mr. Ordower has been licensed to engage in the practice of law in the State of Illinois, and has been practicing law in Cook County, Illinois. Defendants deny all remaining allegations contained in Paragraph 4.**

5.     Defendant Ordower & Ordower, P.C. is, and at all relevant times was, a professional corporation organized under the Professional Service Corporation Act of Illinois (805 ILCS 10/1, et seq.) and registered with the Supreme Court of Illinois as a corporation engaging in the practice of law in Illinois, with its principal place of business in Cook County, Illinois.

**ANSWER:     Defendants admit the allegations contained in Paragraph 5.**

6.     Ordower is, and at all relevant times was, the President, Treasurer, and Registered Agent of Ordower P.C., and an agent and employee of Ordower P.C. In engaging in the conduct set forth herein, Ordower was acting within the scope of his office, agency and employment, and was engaged on behalf of Ordower P.C. in the rendering of professional legal services. As a result, the Defendants are equally liable for the negligence, wrongful acts and other misconduct set forth herein.

**ANSWER:     The allegations contained in Paragraph 6 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants admit**

only that at all relevant times, Mr. Ordower was the Vice President, Treasurer, Registered Agent, and employee of Ordower & Ordower, P.C. Defendants deny all remaining allegations contained in Paragraph 6.

Jurisdiction and Venue

7. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, as the plaintiff and the defendants are citizens of different states, respectively, and the matter in controversy exceeds the value of $75,000.

**ANSWER:** The allegations contained in Paragraph 7 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants admit the allegations of Paragraph 7.

8. This Court has jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209, and venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2) because: (i) both Defendants reside in the Northern District of Illinois; and (ii) a substantial part of the events and acts and omissions giving rise to Mizrachi's claim against Defendants occurred in the Northern District of Illinois.

**ANSWER:** The allegations contained in Paragraph 8 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants admit the allegations of Paragraph 8, but with respect to subparagraph (ii) explicitly deny that Defendants are liable for any event, act, and/or omission which may give rise to Mr. Mizrachi's claim, and further deny that Defendants committed any omission.

General Allegations

A.     Commencement of the Defendants' Representation of Mizrachi

4

9.     In or around September 2014, the Defendants agreed to represent Mizrachi, as his attorneys at law, in connection with Mizrachi's acquisition of certain interests in Brentwood Capital, L.L.C. ("Brentwood") and other related rights. During the course of the representation, which continued until early 2017, the Defendants agreed to provide legal advice to Mizrachi and perform legal services for Mizrachi related to: (i) the negotiation and drafting of agreements, correspondence and other documents governing or pertaining to the assignment of the interests in Brentwood; (ii) the closing of the acquisition and the "true-up" of Mizrachi's more than $1.3 million initial investment in the transaction; (iii) the review and interpretation of agreements related to Net Lease Management Partners, L.L.C., an entity in which Brentwood holds a 40.65% interest, and of which JAL Group, L.P. ("JAL") – an entity managed and partially owned by Mizrachi – is the managing member; and (iv) the negotiation, drafting and execution of limited liability company agreements and other materials to document Mizrachi's investment in and acquisition of the interests in Brentwood.

**ANSWER:     The allegations contained in Paragraph 9 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants deny the allegations of Paragraph 9.**

10.     Mizrachi and the Defendants consented to the formation of an attorney-client relationship between Mizrachi and the Defendants as described above. Mizrachi authorized the Defendants to act on his behalf, and the Defendants accepted the power to act on Mizrachi's behalf.

**ANSWER:     The allegations contained in Paragraph 10 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants deny the allegations of Paragraph 10.**

11.     In addition to the Brentwood transaction, the Defendants also represented Mizrachi and his related entities in a variety of other matters. Among other things, the Defendants (i) represented Mizrachi and a related entity in connection with an EPA inspection between October 2015 and December 2015, (ii) represented Mizrachi and a related entity in connection with a wire transaction in October 2015, and (iii) represented Mizrachi and a related entity in connection with a lease, a settlement agreement and other matters between September 2015 and February 2016.

**ANSWER:     Defendants deny the allegations contained in Paragraph 11.**

B.     The Brentwood Transaction

12.     Brentwood was formed as a Delaware limited liability company on or about March 17, 1997. The membership interests in Brentwood originally were held as follows: (i) 75% of the initial membership interests in Brentwood (collectively, the "Benetti Interests") were held by JEB Family LP (25%), FVB Family LP (25%), the Frederick L. and Judy A. Brooks Family Bypass Trust (12.5%), and the Linda Aurand Separate Property Trust (12.5%) (collectively, the "Benetti Group"); and (ii) 25% of the initial membership interests in Brentwood were held by Holtzman (11.9565%) and two entities – Schuyler Associates, L.P. ("Schuyler") (7.6088%) and New Value L.L.C. ("New Value") (5.4347%) – owned or controlled by Milton Koffman, Burton Koffman, Jackson Koffman or other members of the Koffman family.

**ANSWER:     Upon information and belief, Defendants admit the allegations contained in Paragraph 12.**

13.     Brentwood's sole asset is, and at all relevant times has been, a 40.65% membership interest in Net Lease Management Partners, L.L.C. ("NLMP"). NLMP was formed by JAL (which has a 1.02% membership interest therein), Brentwood and other parties

as a Delaware limited liability company over twenty years ago, on or about March 17, 1997. NLMP was created to purchase two warehouse properties in Colorado and North Carolina. The warehouse properties, which were acquired via a sale-leaseback transaction with Kmart Corporation, generate $8,057,500 in net annual rents. Pursuant to Section 4.01 of NLMP's operating agreement dated as of March 17, 1997, JAL was appointed as the managing member of NLMP. Through affiliated entities, Mizrachi holds a 50% partnership interest in JAL and is the manager of JAL.

**ANSWER: Upon information and belief, Defendants admit the allegations contained in Sentences 1, 2, 3, 4, and 5 of Paragraph 13. Further answering, Defendants lack knowledge or information sufficient to form a belief as to truthfulness of the allegations contained in Paragraph 6 of Paragraph 13.**

14. In or around September 2014, at or near the time the Defendants commenced their representation of Mizrachi, Mizrachi and Holtzman entered into discussions regarding their eventual acquisition of the Benetti Interests. In connection with those discussions, the Defendants (among other things) provided legal advice and assistance to Mizrachi in the preparation of correspondence directed to the other members of NLMP regarding the proposed acquisition. At or near the same time, the Defendants also, on information and belief, agreed to represent Holtzman in connection with the acquisition of the Benetti Interests. The Defendants never advised Mizrachi regarding the foreseeable conflicts of interest that could – and did – arise between Mizrachi and Holtzman, nor did the Defendants obtain Mizrachi's informed written consent to the dual representation.

**ANSWER: The allegations contained in Sentences 1, 2, and 3 of Paragraph 14 constitute legal conclusions to which no response is required. To the extent an answer is**

**required, Defendants deny the allegations contained in Sentences 1, 2, and 3 of Paragraph 14. Further answering, Defendants deny the allegations contained in Sentence 4 of Paragraph 14.**

15.     Mizrachi and Holtzman subsequently agreed to include Ordower in their acquisition of the Benetti Interests. Specifically, in or around June 2015, Mizrachi entered into an oral agreement (the "Brentwood Contract") with Holtzman and Ordower to jointly acquire the Benetti Interests. Pursuant to the Brentwood Contract, Mizrachi, Holtzman and Ordower (i) each agreed to contribute (individually or through related entities) 1/3 of the amount necessary to acquire the Benetti Interests from the Benetti Group, (ii) agreed that Mizrachi, Holtzman and Ordower would each hold (individually or through related entities) 1/3 of the Benetti Interests acquired from the Benetti Group, (iii) agreed that, upon acquisition of the Benetti Interests, Mizrachi or JAL would become the managing member(s) of Brentwood, and (iv) agreed that JAL would continue to be the managing member of NLMP.

**ANSWER:     With respect to Sentence 1 of Paragraph 15, Defendants admit that Mr. Mizrachi and Mr. Holtzman agreed to include Mr. Ordower in their acquisition of the Benetti Interests, but deny all remaining allegations contained in Sentence 1 of Paragraph 15. Defendants admit the allegations contained in Sentence 2 of Paragraph 15. With respect to Sentence 3 of Paragraph 15, Defendants admit the allegations contained in subparts (i) and (ii), but deny the allegations contained in subparts (iii) and (iv).**

16.     The Defendants never advised Mizrachi regarding the foreseeable conflicts of interest that could – and did – arise between Mizrachi and Ordower in connection with (among other things) the Brentwood Contract, nor did the Defendants obtain Mizrachi's informed written consent regarding those conflicts of interest. Moreover, the Defendants never advised

Mizrachi to reduce the Brentwood Contract to writing, or informed Mizrachi of the foreseeable risks associated with oral agreements – including, without limitation, the risk that the other parties to the oral agreement might later dispute or renege on the terms of the oral agreement. Had Mizrachi been properly advised of those risks, he would not have allowed the Brentwood transaction to close without complete written documentation prior to the closing (as opposed to negotiating the documents post-closing).

**ANSWER:     Defendants deny the allegations contained in Paragraph 16.**

17.     The acquisition of the Benetti Interests from the Benetti Group was accomplished pursuant to an *Agreement of Assignment of Membership Interest in Brentwood Capital, LLC* ("Assignment Agreement"). The Assignment Agreement provided (among other things) that, upon closing, the Benetti Group would transfer its 75% membership interest in Brentwood to Holtzman, Schuyler and New Value (the "Initial Assignees"), or to a new entity to be formed at or prior to the closing. The Assignment Agreement also required that Mizrachi and JAL consent to the assignment, and release all claims against the Benetti Group. The purchase price for the Benetti Interests was $3,400,000.

**ANSWER:     The Assignment Agreement is a written document that speaks for itself and Defendants deny any allegations inconsistent therewith.**

18.     Negotiations regarding the terms and provisions of the Assignment Agreement began in or around June 2015. The Defendants provided legal advice to Mizrachi and performed legal services for Mizrachi in connection with the Assignment Agreement including, among other things, negotiating and drafting revisions to the Assignment Agreement. The Defendants, however, took no steps to ensure that the Assignment Agreement adequately protected Mizrachi's interests and expectations, and took no steps to ensure that the

Assignment Agreement appropriately reflected all of the terms of the Brentwood Contract. Appropriate steps that the Defendants could and should have taken included, without limitation, (i) advising Mizrachi to insist that the Assignment Agreement obligate all assignees to designate Mizrachi or JAL as the managing member(s) of Brentwood, and drafting appropriate revisions to the Assignment Agreement, and (ii) advising Mizrachi to insist that the Assignment Agreement obligate all assignees to take any steps necessary to ensure that JAL remained the managing member of JAL, and drafting appropriate revisions to the Assignment Agreement.

**ANSWER: Upon information and belief, Defendants deny the allegations contained in Sentence 1 of Paragraph 18. The allegations contained in Sentence 2 of Paragraph 18 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants deny the allegations contained in Sentence 2 of Paragraph 18. Further answering, Defendants deny the allegations contained in Sentences 3 and 4 of Paragraph 18.**

19. The Assignment Agreement was executed in January 2016. Mizrachi executed the Assignment Agreement individually and on behalf of JAL. In doing so, Mizrachi reasonably relied on the Defendants' legal advice and direction, with the expectation that upon closing (i) Mizrachi (individually or through related entities) would hold 1/3 of the Benetti Interests, (ii) Mizrachi or JAL would become the manager(s) of Brentwood, and (iii) JAL would continue as the managing member of NLMP.

**ANSWER: The Assignment Agreement is a written document that speaks for itself and Defendants deny any allegations inconsistent therewith. Further answering, the allegations contained in Sentence 3 of Paragraph 19 constitute legal conclusions to which**

10

**no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 3 of Paragraph 19 and demand strict proof thereof.**

20.      Prior to the closing of the Assignment Agreement, and to effectuate the Brentwood Contract, Mizrachi entered into an oral limited liability company agreement with Ordower and Holtzman (the "SJLSJL Operating Agreement") in or around June 2016. Pursuant to the SJLSJL Operating Agreement, Mizrachi, Ordower and Holtzman agreed (i) to form SJLSJL LLC ("SJLSJL") – with "S" being the initial of the first name of Seymour Holtzman, "J" being the initial of the first name of Joseph Mizrachi, and "L" being the initial of the first name of Lawrence Ordower – as a limited liability company under Delaware law for the purpose of purchasing the Benetti Interests, (ii) to each hold equal 1/3 shares in SJL, and (iii) to each contribute (individually or through related entities) 1/3 of the purchase price and other amounts necessary to acquire the Benetti Interests.

**ANSWER:    Defendants deny the allegations contained in Paragraph 20.**

21.      In connection with the formation of SJLSJL and the acquisition of the Benetti Interests, Ordower prepared and provided to Mizrachi a chart reflecting that the "amounts necessary for closing of the Brentwood Purchase" were $1.3 million from Mizrachi, $1.3 million from Holtzman and $1.3 million from Ordower. During the course of the Defendants' representation of Mizrachi, Ordower also drafted – but never signed – an operating agreement for SJLSJL that reflected the 1/3 membership interests in SJLSJL held by Mizrachi, Ordower and Holtzman. The Defendants never informed Mizrachi of the foreseeable risks associated with oral operating agreements – including, without limitation, the risk that the other parties to the oral operating agreement might later dispute or renege on the terms of the operating agreement. Had Mizrachi been properly advised of those risks, he would not have proceeded

with his investment without securing a written operating agreement and other appropriate documentation prior to the closing of the Brentwood transaction.

**ANSWER: Defendants admit the allegations contained in Sentence 1 of Paragraph 21. Defendants deny the remaining allegations contained in Paragraph 21.**

22.     On or about September 28, 2016, the Initial Assignees transferred all of their rights under the Assignment Agreement to SJLSJL. In particular, Holtzman executed a *Notice to Assignor Pursuant to Agreement of Assignment of Membership Interest in Brentwood Capital, LLC* (the "SJLSJL Notice") on behalf of the Initial Assignees. The SJLSJL Notice, which Holtzman delivered to the Benetti Group on or about September 28, 2016, provided as follows:

> Pursuant to Section 9.9 of the Agreement please be advised that the Assignees assign all their right, title, and interest to SJLSJL, LLC and direct the Assignor to assign the entire Membership Interest to SJLSJL, LLC.

**ANSWER:     Defendants admit the allegations contained in Paragraph 22.**

23.     The transfer and assignment of the Benetti Interests to SJLSJL closed on September 30, 2016. Prior to the closing, and in accordance with both the Brentwood Contract and the SJLSJL Operating Agreement, Mizrachi deposited his 1/3 share of the purchase price with closing counsel (and escrowee) for the transaction, Finkelstein Bender & Fujii LLP ("FBF"). Specifically, on September 29, 2016, Mizrachi caused $1.3 million to be deposited into FBF's escrow account, via a wire transfer from M Group Two, LLC, an entity of which Mizrachi is the founder and managing member (and whose initial "M" stands for Mizrachi). Mizrachi is informed and believes that on September 29, 2016, Holtzman wire transferred funds to FBF from an entity named Luxury Swiss, LLC. On information and

belief, Ordower also caused his share of the purchase price to be deposited into FBF's escrow account on September 29, 2016.

**ANSWER:** **With respect to Sentence 1 of Paragraph 23, upon information and belief, Defendants admit only that the transfer and assignment of the Benetti Interests to SJL closed on or about September 30, 2016, and deny all remaining allegations contained in Sentence 1 of Paragraph 23. Defendants deny the allegations contained in Sentence 2 of Paragraph 23. Defendants lack knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Sentence 3 of Paragraph 23. With respect to Sentences 4 and 5 of Paragraph 23, Defendants only admit that Mr. Ordower and Mr. Holtzman each caused the purchase prices of their respective shares to be deposited into FBF's escrow account on September 29, 2016, and deny the remaining allegations contained in Sentences 4 and 5 of Paragraph 23.**

24.     At all times material, and prior to the commencement of this action, Ordower knew that both Mizrachi and Holtzman had disbursed funds to the escrowee, FBF, from bank accounts for LLC's over which they had control, rather than their individual personal checking or savings accounts. However, Ordower never advised Mizrachi, nor, to the best of his knowledge, information, and belief, Holtzman, that their disbursal of controlled LLC funds rather than personal funds for their purchase of shares could render their purchases void, voidable, or otherwise unenforceable, and potentially result in a forfeiture of their shares. Further, Ordower never gave Mizrachi any advice whatsoever about the source of funds Mizrachi should use, or refrain from using, for his purchase of the Benetti Group's shares.

**ANSWER:** **Defendants deny the allegations contained in Sentence 1 of Paragraph 24. The allegations contained in Sentence 2 of Paragraph 24 constitute legal**

13

**conclusions to which no response is required, and seeks information protected by the attorney-client privilege with respect to allegations concerning Mr. Holtzman. Moreover, Sentence 2 is unintelligible. To the extent an answer is required, Defendants admit the allegations contained in Sentence 2 with regard to Mr. Mizrachi. Defendants admit the allegations contained in Sentence 3 of Paragraph 24.**

25.     The purchase price for the Benetti Interests, plus approximately $500,000 due for the refund of escrowed real estate taxes, was distributed to the Benetti Group on or about October 4, 2016. As contemplated under the Brentwood Contract and the SJLSJL Operating Agreement, the funds disbursed to the Benetti Group for the purchase of the Benetti Interests consisted, in equal 1/3 shares, of the funds deposited with FBF on behalf of Mizrachi, Ordower and Holtzman.

**ANSWER:     Defendants deny the allegations contained in Paragraph 25.**

26.     Following the closing of the Assignment Agreement, Mizrachi continued to make additional contributions to SJLSJL and the acquisition of the Benetti Interests, including (without limitation) a contribution of $86,289 on March 16, 2017. The March 16, 2017 contribution was made via a wire transfer from M Group Two LLC's account to FBF's escrow account. The allegations of paragraph 24 above are incorporated herein as though fully set forth.

**ANSWER:     Defendants deny the allegations contained in Paragraph 26. Defendants' responses to the allegations contained in Paragraph 24 above are fully incorporated herein as though fully set forth herein.**

27.     Through early 2017, the Defendants continued to provide legal advice to Mizrachi and perform legal services for Mizrachi with respect to Mizrachi's acquisition of 1/3

of the Benetti Interests. Among other things, Ordower advised Mizrachi regarding the "true-up" of the more than $1.3 million that Mizrachi contributed to acquire the Benetti Interests, and performed various services related to the allocation of closing costs and proceeds among the Benetti Group, Mizrachi, Ordower and Holtzman.

**ANSWER: The allegations contained in Sentence 1 of Paragraph 27 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 27.**

28. Ordower also prepared draft operating agreements for Brentwood to reflect the acquisition of the Benetti Interests. For instance, on November 4, 2016, Ordower circulated a draft operating agreement for Brentwood which recited that the Benetti Group had "sold and conveyed their collective 75% interest in [Brentwood] to Lawrence Ordower, Seymour Holtzman and Evelyn Holtzman as joint tenants, and Joseph Mizrachi in equal percentages of 25%" each. On December 12, 2016, Ordower circulated a revised draft operating agreement for Brentwood, which again recited that the Benetti Group had sold the Benetti Interests to Mizrachi, Holtzman and Ordower (or their related entities).

**ANSWER: Defendants admit the allegations contained in Sentence 1 of Paragraph 28. With respect to Sentences 2 and 3 of Paragraph 28, the draft operating agreement and revised draft operating agreement are written documents that speak for themselves and Defendants deny any allegations inconsistent therewith.**

29. Mizrachi executed the revised Brentwood operating agreement, and caused his signature page to be delivered to Ordower, on or about December 12, 2016. Ordower and Holtzman, however, refused to execute the Brentwood operating agreement. On information and belief, Ordower refused to sign the operating agreement, and advised Holtzman not to sign

the operating agreement, because Mizrachi declined to enter into various indemnity agreements and a settlement agreement with Ordower and Holtzman that would have, among other things, released all claims that Mizrachi had against Ordower "from the beginning of time to the date hereof, arising out of or related to the purchase of the Benetti Interests, and the negotiation or preparation of" various documents, including the operating agreement for Brentwood.

**ANSWER:** **With respect to Sentence 1 of Paragraph 29, Defendants admit only that Mr. Ordower received a signature page, but Defendants lack knowledge or information sufficient to form a belief as to truthfulness of the remaining allegations contained in Sentence 1 of Paragraph 29. With respect to Sentence 2 of Paragraph 29, Defendants admit only that Mr. Ordower and Mr. Holtzman did not execute the Brentwood operating agreement, but deny all remaining allegations contained in Sentence 2 of Paragraph 29. Defendants deny the allegations contained in Sentence 3 of Paragraph 29.**

30. Moreover, on or about March 31, 2017, Ordower informed Mizrachi that – notwithstanding Mizrachi's initial investment of more than $1.3 million to fund the acquisition of the Benetti Interests – Mizrachi purportedly has no interest in either SJLSJL or Brentwood. According to Ordower, the purported nullification of Mizrachi's interests was permissible "due to the fact that Seymour does not have a signed Agreement."

**ANSWER:** **Defendants deny the allegations contained in Paragraph 30.**

31. Since March 31, 2017, Ordower and Holtzman have declared themselves, together with Jackson Koffman, to be the sole owners of Brentwood. Based on, among other misconduct, their conversion of Mizrachi's interests in SJLSJL and Brentwood, Ordower and

Holtzman also have (i) denied that either Mizrachi or JAL is the managing member of Brentwood, (ii) elected themselves and Jackson Koffman as Brentwood's three designees to the six-member management committee of NLMP, (iii) used their purported election to NLMP's management committee to "remove" JAL as the managing member of NLMP, (iv) used their purported election to NLMP's management committee to appoint Brentwood – a "Brentwood" unlawfully controlled by Holtzman and Ordower – as a "co-managing member" of NLMP, and (v) assumed control, as purported members of NLMP's management committee, over the sale of NLMP's two valuable warehouse properties in Colorado and North Carolina.

**ANSWER:** Defendants deny the allegations contained in Paragraph 31.

32.    On March 20, 2019, for the very first time, Ordower asserted (in a motion to compel in this action, Dkt. 76, Page ID #:2441) that "the source of funds [from which Mizrachi wired the purchase price of his shares to the escrowee, FBF] is directly relevant to . . . whether [Mizrachi] may seek recovery in this case." Ordower had never pleaded any source of funds issue as a negative or affirmative defense in this action, but Ordower's motion to compel was granted by the Court in reliance on Ordower's stated rationale.

**ANSWER:    Defendants deny the allegations contained in Sentence 1 of Paragraph 32. With regard to Sentence 2 of Paragraph 32, the pleadings and March 28, 2019 Transcript of Proceedings are written documents that speak for themselves and Defendants deny any allegations inconsistent therewith.**

<u>COUNT I</u>

(Legal Malpractice)

33.    Plaintiff realleges and incorporates by reference each and every allegation previously set forth in this Amended Complaint as though fully set forth herein.

**ANSWER: Defendants incorporate herein by reference each and every response to each and every allegation of the Amended Complaint as though fully set forth herein.**

34.     Between September 2014 and early 2017, as specified above, the Defendants acted as legal counsel to Mizrachi in connection with the acquisition of the Benetti Interests by Mizrachi, Ordower and Holtzman. At all relevant times, Ordower was the President of Ordower P.C. and was acting within the scope of his office, agency and employment. Ordower P.C. authorized, ratified or approved the acts and omissions of Ordower described herein.

**ANSWER: The allegations contained in Paragraph 34 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 34 is required, Defendants admit only that at all relevant times, Mr. Ordower was the Vice President of Ordower & Ordower, P.C. Defendants deny the remaining allegations contained in Paragraph 34.**

35.     In light of the attorney-client relationship between Mizrachi and the Defendants, Mizrachi reasonably relied on the Defendants, and placed trust and confidence in the Defendants.

**ANSWER: The allegations contained in Paragraph 35 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 35 is required, Defendants deny the allegations contained in Paragraph 35.**

36.     By virtue of the attorney-client relationship that existed between the Defendants and Mizrachi, the Defendants owed a duty to Mizrachi to exercise reasonable care, diligence, thoroughness and skill in providing legal advice to Mizrachi and performing legal services for Mizrachi.

**ANSWER: The allegations contained in Paragraph 36 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 36 is required, Defendants deny the allegations contained in Paragraph 36.**

37.     The Defendants failed to exercise reasonable care, diligence, thoroughness and skill in their representation of Mizrachi, and thus breached the duties they owed to Mizrachi. Among other things, the Defendants breached their duties to Mizrachi by (i) failing to advise Mizrachi to reduce the Brentwood Contract to writing, (ii) failing to ensure that the Assignment Agreement appropriately reflected Mizrachi's interests and expectations with respect to the acquisition of the Benetti Interests, and the management of Brentwood and NLMP, (iii) failing to ensure that Mizrachi's $1.3 million initial investment in the Benetti Interests was thoroughly documented, (iv) failing to ensure that Mizrachi's interests in Brentwood and SJLSJL were thoroughly documented, and that his interests in those entities and NLMP were completely protected (v) failing to ensure that the operating agreements for Brentwood and SJLSJL were properly drafted and promptly executed, and (vi) failing to properly inform Mizrachi of the foreseeable risks associated with oral contracts and oral operating agreements, including the risk that the other parties to the oral agreements might later dispute and renege on the terms of the agreements (vii) failing to advise Mizrachi, of Ordower's present contention, which Ordower either knew or should have known during his representation of Mizrachi, that Mizrachi's wiring of funds from M Group Two, LLC for his purchase of his share of the Benetti Interests rather than from a personal checking or savings account could, as Ordower is asserting now, render Mizrachi's purchase void, voidable, or unenforceable. The claim in this subparagraph is contingent on Ordower prevailing on the foregoing assertion, which assertion is disputed by Plaintiff.

**ANSWER: The allegations contained in Paragraph 37 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 37 is required, Defendants deny the allegations contained in Paragraph 37.**

38.     In or around March 2017, as detailed above, Holtzman and Ordower disregarded Mizrachi's $1.3 million initial investment in the Benetti Interests, and claimed ownership of Mizrachi's interests in Brentwood and SJLSJL. Since March 2017, Holtzman and Ordower have denied that either Mizrachi or JAL is the manager of Brentwood, purported to remove JAL as the managing member of NLMP, and assumed control over the sale of NLMP's warehouse properties. On information and belief, Holtzman and Ordower have taken the position that their actions do not violate the Assignment Agreement or any other contract, and are permissible due to the absence of fully-executed written operating agreements for Brentwood and/or SJLSJL. If the Defendants had exercised the appropriate degree of care, diligence, thoroughness and skill in their representation of Mizrachi, and properly advised Mizrachi of all foreseeable risks, (i) Mizrachi would not have made his $1.3 million initial investment without securing further or more appropriate documentation prior to the closing, as opposed to negotiating the agreements and other documents post-closing, and (ii) Holtzman and Ordower would not have been able to exploit the lack of thorough documentation and the absence of fully-executed operating agreements to Mizrachi's detriment.

**ANSWER:     Defendants deny the allegations contained in Paragraph 38.**

39.     As specified above, Mizrachi did not discover, and could not reasonably have discovered, the injuries or harms caused by the Defendants' failure to exercise reasonable care,

diligence, thoroughness and skill until in or around March 2017, and Ordower's source of funds assertion until it was first made on March 20, 2019.

**ANSWER: Defendants deny the allegations contained in Paragraph 39.**

40. As a proximate result of the Defendants' negligence, Mizrachi has suffered damages, the lost present value of his investment interest, in an amount, subject to proof at trial, that exceeds $15.8 million, plus attorneys' fees and other expenses incurred by Mizrachi to address the consequences of the Defendants' negligence.

**ANSWER: Defendants deny the allegations contained in Paragraph 40.**

<u>COUNT II</u>

(Breach of Fiduciary Duty)

41. Plaintiff re-alleges and incorporates by reference each and every allegation previously set forth in this Amended Complaint as though fully set forth herein.

**ANSWER: Defendants incorporate herein by reference each and every response to each and every allegation of the Amended Complaint as though fully set forth herein.**

42. Between September 2014 and early 2017, as specified above, the Defendants acted as legal counsel to Mizrachi in connection with the acquisition of the Benetti Interests by Mizrachi, Ordower and Holtzman.

**ANSWER: The allegations contained in Paragraph 42 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 42 is required, Defendants deny the allegations contained in Paragraph 42.**

43.     In light of the attorney-client relationship between the Defendants and Mizrachi, Mizrachi reasonably relied on the Defendants, and placed trust and confidence in the Defendants.

**ANSWER:   The allegations contained in Paragraph 43 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 43 is required, Defendants deny the allegations contained in Paragraph 43.**

44.     By virtue of the attorney-client relationship that existed between the Defendants and Mizrachi, the Defendants owed fiduciary duties to Mizrachi that included, without limitation, (i) a duty to act faithfully, honestly and in good faith in their dealings with Mizrachi, (ii) a duty to refrain from acting in their own interests in lieu of Mizrachi's interests, and to avoid other impermissible conflicting interests, (iii) a duty to not employ advantages arising from the attorney-client relationship in a manner adverse to Mizrachi, and (iv) a duty to faithfully serve and zealously represent Mizrachi's interests.

**ANSWER:   The allegations contained in Paragraph 44 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 44 is required, Defendants deny the allegations contained in Paragraph 44.**

45.     By virtue of Mizrachi's having placed confidence in the fidelity and integrity of the Defendants, and having entrusted the Defendants with the protection and advancement of his rights, interests and expectations in connection with the acquisition of the Benetti Interests, a confidential relationship existed at all relevant times between Mizrachi and the Defendants.

**ANSWER: The allegations contained in Paragraph 45 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 45 is required, Defendants deny the allegations contained in Paragraph 45.**

46. Despite having voluntarily accepted the trust and confidence of Mizrachi, and in violation of that relationship of trust and confidence, the Defendants breached their fiduciary duties to Mizrachi. The Defendants' breaches of fiduciary duties included, without limitation, the following: (i) Ordower's conversion (with Holtzman) of Mizrachi's interests in Brentwood and SJLSJL – i.e., the interests Mizrachi acquired through the very same transaction in which he was represented by the Defendants; (ii) Ordower's use (with Holtzman) of their purported ownership of all the Benetti Interests to inflict further harm on Mizrachi, by denying either Mizrachi or JAL's position as manager of Brentwood, removing JAL as the managing member of NLMP, and assuming control over the sale of NLMP's warehouse properties; (iii) the Defendants' failure to properly inform and advise Mizrachi regarding the foreseeable conflicts of interest that the Defendants knowingly allowed to develop and persist among Mizrachi, Ordower and Holtzman, without seeking or obtaining Mizrachi's informed written consent; (iv) Ordower's decision to place his interests, and the interests of Holtzman, ahead of Mizrachi's interests, as demonstrated by (among other things) Ordower and Holtzman's refusal to execute the Brentwood operating agreement; and (v) Ordower's attempt to extort settlement releases from Mizrachi by refusing to execute the Brentwood operating agreement, and (vi) failure to advise Mizrachi, of Ordower's present contention, which Ordower either knew or should have known during his representation of Mizrachi, that Mizrachi's wiring of funds from M Group Two, LLC for his purchase of his share of the Benetti Interests rather than from a personal checking or savings account could, as

23

Ordower is asserting now, render Mizrachi's purchase void, voidable, or unenforceable. The claim in this subparagraph is contingent on Ordower prevailing on the foregoing assertion, which assertion is disputed by Plaintiff.

**ANSWER: The allegations contained in Paragraph 46 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 46 is required, Defendants deny the allegations contained in Paragraph 46.**

47.     As specified above, Mizrachi did not discover, and could not reasonably have discovered, the Defendants' breaches of their fiduciary duties until in or around March 2017.

**ANSWER: The allegations contained in Paragraph 47 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 47 is required, Defendants deny the allegations contained in Paragraph 47.**

48.     As a proximate result of the Defendants' breaches of their fiduciary duties to Mizrachi, Mizrachi has suffered damages in an amount, subject to proof at trial, **that exceeds $15.8 million**, plus attorneys' fees and other expenses incurred by Mizrachi to address the consequences of the Defendants' breaches of their fiduciary duties.

**ANSWER: The allegations contained in Paragraph 48 constitute legal conclusions to which no response is required. To the extent an answer to Paragraph 48 is required, Defendants deny the allegations contained in Paragraph 48.**

49.     In engaging in the misconduct described herein, Ordower was guilty of oppression, fraud or malice, and acted willfully and wantonly. At all relevant times, Ordower was the President of Ordower P.C. and was acting within the scope of his office, agency and employment. Ordower P.C. authorized, ratified or approved the acts and omissions of Ordower

described herein. As a result, Mizrachi is entitled to recover from the Defendants, in addition to actual damages, damages for the sake of example and by way of punishing the Defendants.

**ANSWER: The allegations contained in Paragraph 49 constitute legal conclusions to which no response is required. To the extent an answer is required, Defendants admit only that at all relevant times, Mr. Ordower was the Vice President of Ordower & Ordower, P.C. Defendants deny the remaining allegations contained in Paragraph 49.**

## AFFIRMATIVE DEFENSES

BY WAY OF FURTHER ANSWER, Defendants Lawrence Ordower and Ordower & Ordower, P.C. assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

The Complaint and each cause of action alleged therein fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

#### (Waiver)

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

### THIRD AFFIRMATIVE DEFENSE

#### (Estoppel)

Plaintiff's claims are or will be barred or diminished, in whole or in part, by the doctrine of judicial and collateral estoppel because of prior statements, admissions, and rulings

in this and other cases, proceedings and matters that are inconsistent with and contrary to the allegations of the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Lack of Cause in Fact/Proximate Cause)

Plaintiff is not entitled to any recovery from Defendants because no act or omission by them was the cause in fact ("but for" cause) or the proximate cause of any damage alleged by Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

### (Vague and Uncertain)

With respect to each purported claim for relief allegedly asserted against Defendants, the Complaint fails to state the alleged claim with sufficient particularity to allow Defendants to respond with particularity and to ascertain what other defenses may exist, barring Plaintiff's purported claims.

## SEVENTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

Plaintiff is not entitled to any recovery from Defendants because the alleged damages, if any, are speculative.

## EIGHTH AFFIRMATIVE DEFENSE

### (Laches)

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## NINTH AFFIRMATIVE DEFENSE

### (Intervening or Superseding Cause)

Plaintiff is barred from any recovery against Defendants because the alleged damages if any, were the result of one or more intervening or superseding causes or caused by the acts and/or failures to act of persons and/or entities other than Defendants, and were not the result of any act or omission on the part of Defendants.

## TENTH AFFIRMATIVE DEFENSE

### (Apportionment/Comparative Fault)

Without admitting that Plaintiff suffered damages, or that Defendants were or should be liable for any such damages, whatever loss, injury or damage, if any, Plaintiff suffered by reason thereof, were proximately caused, in whole or in part, and contributed to by the negligence, fault, breach and/or intentional misconduct of others, including Plaintiff. Thus, Defendants assert that their liability and the liability of any other responsible persons or entities, named or unnamed, should be apportioned according to their relative degree of fault, and Defendants' liability must be diminished by the portion of negligence, fault, breach and/or intentional misconduct attributable to other individuals and entities.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Liability of Third-Parties)

Without admitting that Plaintiff suffered any damages, or that Defendants were or should be liable for such damages, whatever loss, injury or damage, if any, Plaintiff suffered by reason thereof, were proximately caused solely by an act or omission of one or more third-parties. Thus, Defendants assert that the third-party or parties should be treated as the

responsible party or parties for all purposes of determining liability for Plaintiff's asserted damages.

### TWELFTH AFFIRMATIVE DEFENSE

### (Statutory Defenses)

This action is barred, in whole or in part, against Defendants by virtue of statutory defenses.

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Consent and/or Acquiescence)

Plaintiff, by his conduct and/or the conduct of his employees and agents, has acquiesced or consented to the conduct and rights of Defendants, and is therefore barred from maintaining this action.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Other Defenses)

Defendants hereby reserve and assert all affirmative defenses available under federal law and under any applicable state law. Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have other, as yet unstated, affirmative defenses available. Therefore, Defendants reserve the right to assert additional affirmative defenses in the event that discovery indicates that they would be appropriate.

WHEREFORE, Defendants, Lawrence Ordower and Ordower & Ordower, P.C, respectfully pray that this Honorable Court enter judgment in their favor and against Plaintiff, award costs to Defendants Lawrence Ordower and Ordower & Ordower, P.C., and grant any other relief this Court deems proper.

Date:   June 10, 2019

Respectfully submitted,

LAWRENCE ORDOWER and
ORDOWER & ORDOWER, P.C.

By: */s/ Jeffrey I. Young*
    One of Their Attorneys

John D. Dalton (ARDC#: 6197108)
Jeffrey I. Young (ARDC#: 6278763)
KAUFMAN DOLOWICH & VOLUCK, LLP
135 S. LaSalle Street, Suite 2100
Chicago, Illinois 60603
Phone: (312) 759-1400
Fax:    (312) 759-0402
Email: jdalton@kdvlaw.com
Email: jyoung@kdvlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Mark A. Stang
Stang-Law Firm
584 Hyacinth Place
Highland Park, Illinois 60035
*Attorneys for Plaintiff*

By: */s/ Jeffrey I. Young*

4821-9607-9513, v. 1