**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH MIZRACHI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 8036** |
| | ) | |
| **LAWRENCE ORDOWER and** | ) | |
| **ORDOWER & ORDOWER, P.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Joseph Mizrachi has sued attorney Lawrence Ordower and his law firm, Ordower & Ordower, P.C., for legal malpractice and breach of fiduciary duty. Mizrachi alleges that Ordower represented him in connection with his investment in an entity called Brentwood Capital, LLC. The transaction, Mizrachi says, was intended to result in an ownership stake in the LLC that would be split equally among Mizrachi, Ordower, and Seymour Holtzman. Mizrachi contends, however, that Ordower and Holtzman disregarded his investment and converted his intended one-third share to their own use. *See* Am. Compl. ¶ 1. Mizrachi, who is a citizen and resident of Florida, has previously represented that he filed the lawsuit against Ordower here to ensure the existence of personal jurisdiction, as Ordower is resident and citizen of Illinois and practices law in this state. Aug. 14, 2018 Tr. at 3-4. Mizrachi filed the present lawsuit on November 6, 2017.

There are at least two other suits involving the same underlying transaction,

pending in two other states.  On August 1, 2017, an entity called SJLSJL, LLC sued Mizrachi in state court in Florida.[1]  In that suit, SJLSJL alleged that it and Mizrachi entered into negotiations to purchase an interest in Brentwood Capital.  SJLSJL alleged that although the original intent was to purchase an interest in Brentwood in equal one-third shares for SJLSJL's owners, Mizrachi later told SJLSJL that he was no longer interested and that the purchase should be made without him.  Still later, after SJLSJL had purchased the interest in Brentwood,[2] Mizrachi allegedly changed his mind again and began to assert a right to a one-third share.  SJLSJL filed suit in Florida to obtain a judicial declaration that Mizrachi had no right, title, or interest in Brentwood.

SJLSJL does not appear to have pursued the Florida suit in any significant way for well over sixteen months after filing it.  Specifically, not much happened in the Florida suit until January 14, 2019, when Holtzman joined the suit as a plaintiff.  Specifically, SJLSJL, along with Holtzman, filed on that date an amended complaint against Mizrachi, also naming Ordower as a defendant.  The amended complaint was premised on the same factual allegations as SJLSJL's original complaint but now said that Holtzman and Ordower had paid the entire purchase price for the Brentwood interest.  Dkt. no. 173-2 ¶ 20.  SJLSJL and Holtzman asked the Florida court to declare that Holtzman and Ordower are the sole members of SJLSJL and that Mizrachi holds no membership interest in that entity.  Ordower, named as a defendant in the amended complaint, has since been realigned as a plaintiff.

---

[1] Ordower did not provide the Court with the original complaint in the Florida case in connection with the present motion, but he did so back in July 2018 when he filed an earlier motion to stay.  See dkt. no. 18-3.

[2] SJLSJL alleged that "[i]t paid the entire purchase price."  Dkt. no. 18-3 ¶ 10.

The third suit was filed in California on November 3, 2017, a few days before the present lawsuit. Dkt. no. 18-1. Mizrachi and an entity called JAL Group, LP sued Ordower and Holtzman. In the California case, Mizrachi alleges that he and JAL, a partnership in which he has a one-half share, contracted with Holtzman and Ordower to acquire an interest in Brentwood in equal shares and that they disregarded this, informing him that he had no interest in Brentwood and that they were the sole owners of the Brentwood interests. Mizrachi asserts claims for conversion, breach of contract, and breach of fiduciary duty.

Back in July 2018, Ordower moved to stay the present case based on the two other lawsuits. He argued that Mizrachi's entitlement to damages for legal malpractice in the present case depends upon the outcome of one or both of the other two lawsuits. Because Illinois law does not permit recovery for legal malpractice or breach of fiduciary duty without damages, Ordower argued, the Court should stay this case "until the California and/or the Florida cases are resolved." Dkt. no. 18 at 5. Mizrachi objected on various grounds. He pointed out that Ordower was not a party to the Florida case and noted that the case was basically stalled due to inaction by SJLSJL, the plaintiff. And with regard to the damages issue cited by Ordower, Mizrachi argued that he had already been injured by paying $1.3 million for rights he had not obtained, and he contended that "the law does not require him to await the outcome of" the other cases to pursue his claims in the present case. Dkt. no. 21 at 7.

On August 14, 2018, the Court made an oral ruling denying Ordower's motion to stay. The Court noted that Ordower was not a party to the Florida case and said that it was "not terribly persuaded that the Florida case has much to do with" the present case.

3

Aug. 14, 2018 Tr. at 4.  The Court did note that there was "significant overlap" between the California case and the present one.  The Court concluded, however, that "although [Mizrachi's] damages might be affected by what happens in some [sic] of the other cases, I don't see this as being a case in which the cause of action is dependent on the other cases as it is in the typical case-within-a-case situation."  *Id.* at 7.  The Court therefore denied the motion to stay.

Ordower has now renewed his motion to stay.  The primary changes are that he is that he is now a party to the Florida case, and that case is somewhat further along— the parties are now "at issue."  But Ordower did not become a party to the Florida case until January 2019, more than a year after the present lawsuit was filed and after it had traveled pretty far down the road.  As far as his arguments, they are largely the same as before, primarily that Mizrachi's entitlement to prevail here depends on the outcome of the Florida case, an invocation of the so-called "case-within-a-case" rule:

> The paradigmatic legal malpractice suit involves a "case within a case": the plaintiff retains the defendant attorney to represent him in litigation, the plaintiff is dissatisfied with the litigation results, and the plaintiff alleges negligence on the part of the attorney.  Thus, at the heart of most malpractice actions is an underlying lawsuit, and the issues of duty, breach, causation and damages are all a function of the attorney's performance in that underlying proceeding.  Consistent with that scenario, the Illinois courts have developed the prematurity doctrine:  because of the damages element of the action . . . no malpractice exists unless counsel's negligence has resulted in the loss of an underlying cause of action.

*Alper v. Altheimer & Gray*, 65 F. Supp. 2d 779, 784 (N.D. Ill. 1999) (internal quotation marks omitted).  In response, Mizrachi says (as he did before) that the present malpractice action does not involve a typical case-within-a-case situation, because his malpractice claim does not concern Ordower's representation of him in a lawsuit the outcome of which is still unknown.

4

In support of a stay, Ordower cites *Estate of Bass ex rel. Bass v. Katten*, 375 Ill. App. 3d 62, 871 N.E.2d 914 (2007). *Bass* involved attorneys' creation of an estate plan for William Bass. A lawyer named Jacobson created the estate plan in 2000; it provided for gifts in trust to Edward Bass and Lyle Streicher, with the remainder going to the Bill Bass Foundation. William Bass later hired another attorney, Katten, to create a replacement estate plan. Under this estate plan, after certain specific distributions, the remainder was to go to Northwestern Medical Faculty Foundation and to Edward Bass and Lyle Streicher in trust. In the *Bass* lawsuit, Bass's estate alleged that by the time of Katten's retention, certain of Bass's assets had been already been transferred to the 2000 trust, Jacobson did not tell Katten this, and Katten had failed to discover or inquire about it. After Bass died, Northwestern went to court to challenge the validity of the 2000 trust. A judge dismissed the case, and Northwestern appealed. Shortly after this, Bass's estate filed a lawsuit against Jacobson, Katten, and others asserting claims for malpractice and breach of fiduciary duty. The defendants moved to dismiss on the ground that if Northwestern prevailed in its case, there would be no damage to Bass's estate, so its malpractice claim was premature. The trial court, after initially dismissing the estate's malpractice suit without prejudice, converted its order to a stay of the lawsuit pending resolution of Northwestern's case. If Northwestern's appeal succeeded, the trial court determined, there would be no damage to the estate. The trial court rejected the estate's argument that it had a live claim because it had already been damaged by paying attorney's fees in the malpractice suit; it ruled that the attorney's fees would have to be directly related to the attorney's negligence to be recoverable.

The defendants in the *Bass* case appealed, arguing that the malpractice claim

should have been dismissed.  The appellate court affirmed the trial court's grant of a

stay.  It first cited the governing principles:

> A cause of action for legal malpractice will rarely accrue prior to the entry
> of an adverse judgment, settlement, or dismissal of the underlying action
> in which plaintiff has become entangled due to the purportedly negligent
> advice of his attorney.  [There are] sound policy reasons opposing a rule
> that would require a plaintiff to file a provisional malpractice action . . .
> whenever the attorney's legal advice has been challenged.  These include
> judicial economy, preservation of the attorney-client relationship, and
> prevention of inconsistent verdicts resulting from simultaneous litigation.
> When uncertainty exists as to the very fact of damages, instead of the
> amount of damages, damages are speculative, and a cause of action for
> malpractice does not exist.  The plaintiff [should be] permitted to refile if
> and when the underlying litigation was resolved adversely to him.

*Id.* at 68–69, 871 N.E.2d at 923 (internal quotation marks and citations omitted).  The

court further stated, however, that

> [a] legal malpractice claim can accrue before the client suffers a final,
> adverse judgment in the underlying action where it is plainly obvious, prior
> to any adverse ruling against the plaintiff, that he has been injured as the
> result of professional negligence or where an attorney's neglect is a direct
> cause of the legal expense incurred by the plaintiff.

*Id.* at 70, 871 N.E.2d at 924 (internal quotation marks omitted).  This, the court said,

was the case in *Bass*:  the estate alleged that Katten had failed to take steps to retrieve

certain assets that had been transferred to the 2000 trust and that Jacobson had not

informed Katten of the trust and had, after William Bass's death, liquidated shares in

Bass's privately held corporations.  The court said that "[t]hese actions, as alleged in the

complaint, are a direct cause of the legal expenses incurred by [the estate], regardless

of the outcome" of the litigation initiated by Northwestern.  *Id.*  For this reason, the

estate's claim was not a "provisional malpractice case[ ]" and thus did not have to be

dismissed; a stay was appropriate.  *Id.* at 70-71, 871 N.E.2d at 924-25.

It is noteworthy that *Bass* applies the case-within-a-case rule outside the context

of malpractice regarding representation in a lawsuit: the representation challenged in that case was transactional in nature, involving the creation of an estate plan.

For his part, Mizrachi cites *Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317, 935 N.E.2d 998 (2010). The case, like the present one and *Bass*, involved legal malpractice not in connection with litigation representation but rather in connection with transactional representation. *Union Planters Bank* involved an unusually complex factual background, which the Court will boil down as best as it can. A company called SBU, which put together structured settlements of personal injury cases, entered into an agreement with a bank (Magna, later called Union Planters) to offer tax-advantaged structured settlements involving an arrangement in which Magna acted as the trustee of trusts created by SBU of which SBU was the sole beneficiary. The settlements were funded by government bonds placed in trust with Magna. Later SBU advised Magna that it was cancelling their agreement and would be transferring the trust property from Magna to another bank. Magna, advised by Thompson Coburn, told SBU that it would not give up its position as trustee, contending that the trust documents did not permit SBU to unilaterally terminate its trusteeship, and Magna believed it had duties to the lawsuit plaintiffs who were third party beneficiaries of the trusts. SBU then filed a lawsuit against Magna seeking a declaratory judgment and money damages. Thompson Coburn agreed to defend Magna in the lawsuit. A judge ultimately determined that SBU was entitled to terminate the trusts. While the case was on appeal, SBU and Magna, again advised by Thompson Coburn, agreed to transfer the trusts to another entity. The ensuing events are complicated, but the upshot is that some of the trusts ended up back in the hands of an entity controlled by the owner of

7

SBU, who then purloined the trust property and was eventually convicted on criminal charges. The personal injury plaintiffs sued a number of involved parties, including Magna, alleging losses of over $100 million. Magna settled some of the litigation. It then filed a malpractice suit against Thompson Coburn and others, seeking to recover legal fees it had incurred in the lawsuits and the amounts it had paid in settlement. Magna prevailed against Thompson Coburn at trial, and the law firm appealed. It argued, among other things, that Magna should have to prove that it would have succeeded on the merits in the cases it had settled—in other words, it would have to prove a case-within-a-case. In addressing this argument, the appellate court said this:

> Magna did not have to prove its case-within-a-case to recover damages for Thompson Coburn's transactional malpractice. . . . We acknowledge that in malpractice cases based upon the attorney's conduct during litigation, i.e. the prosecution or defense of a prior claim, a plaintiff must generally prove a case-within-a-case to establish proximate cause. This is required because of the damages element of the action; no malpractice exists unless counsel's negligence has resulted in the loss of an underlying action. . . . We hold, however, that proving a case-within-a-case is not always required in transaction-based legal malpractice cases where damages can otherwise be established.

Id. at 343-44, 935 N.E.2d at 1022. The court went on to conclude that Magna had shown that because of Thompson Coburn's faulty advice, it "was sued . . . and forced to pay legal expenses to defend itself against those lawsuits . . . . Thus, Magna could have recovered the legal expenses it paid in defending the cases brought against it even if Magna had not settled those cases and had ultimately succeeded on the merits." Id.at 344, 935 N.E.2d at 1023.

Here Mizrachi argues that he, too, can already establish damages: he paid out $1.3 million and did not get his expected LLC interest in return, due to Ordower's negligence (or breach of fiduciary duty). In short, he has already suffered a loss. The

8

other lawsuits offer him an opportunity to get his share of the LLC interest or compensation for it, but no case cited by Ordower holds or suggests that a client must prosecute a separate lawsuit against the lawyer or others before he can sue the lawyer for malpractice—let alone for breach of fiduciary duty.  And the legal fees that Mizrachi has incurred to defend the Florida lawsuit likewise represent at least potentially recoverable damages; like Magna in the *Union Planters Bank* case, Mizrachi contends that he faces that lawsuit only because of Ordower's improper actions.  For these reasons, though the question is not free from doubt, the Court concludes that the present case does not have to await the outcome of either the Florida or the California case in order to proceed.

Ordower also seeks a stay under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Under *Colorado River*, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *id.* at 813, and it may be invoked only in "exceptional circumstances" in which abstention "would clearly serve an important countervailing interest."  *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1996) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).  A court conducts a two-part inquiry to determine if abstention is appropriate under *Colorado River*.  First, the court determines whether the state and federal suits are parallel.  If they are, the court then considers several factors to determine if there are exceptional circumstances that justify abstention.  *Tyrer v. City of South Beloit*, 456 F.3d 744, 751 (7th Cir. 2006).

The cases are parallel; all of them concern whether Mizrachi rightfully was entitled to a share of the Brentwood LLC interests.  But even when there is a parallel

suit pending elsewhere, a federal court may abstain under *Colorado River* only where "exceptional circumstances" exist. Based on the Supreme Court's guidance in *Colorado River* and in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23-27 (1983), the Seventh Circuit has identified ten factors to consider in this analysis. They are:

> 1) whether the [other court] has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the current forums; 5) the source of governing law, state or federal; 6) the adequacy of [other] action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 755. In determining whether exceptional circumstances exist, there remains a "general presumption against abstention." *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003). A federal court has a "virtually unflagging obligation" to exercise its jurisdiction. *Colorado River*, 424 U.S. at 817.

In the Court's view, only two of these factors weigh in favor of abstention: the desirability of avoiding piecemeal litigation, and the ability of the Florida case to protect Mizrachi's rights. The Florida case involves all three potential partners, and it could resolve the parties' claims to the Brentwood LLC interests—though it might not definitively resolve everything given Mizrachi's potential entitlement to recover here, via his malpractice or fiduciary duty claims, his legal fees in defending that case.

But the other factors, to the extent they apply, weigh against abstention. Despite Ordower's contention, the Court is not persuaded that the Florida case actually preceded this one in practical terms: the suit, as it existed when Mizrachi filed the

present case, did not involve Ordower, as the plaintiff was SJLSJL. Ordower did not become a party to the case until he decided to join it well over a year after Mizrachi had sued him the present case. And before that, the Florida case languished. The parties are now at issue, but the case has not progressed anywhere near as far as the present case, in which discovery has closed and there is an impending dispositive motion filing deadline. This is a key point: the "relative progress of [the] state and federal proceedings" weighs against abstention here. As for the remaining applicable factors, Ordower is an Illinois citizen and cannot complain that this forum is inconvenient; although the governing law is state law, it is likely Illinois law, not Florida law or California law; and there is no basis in the record at this point to say that the present case is vexatious or contrived.

In sum, though Ordower certain makes a straight-faced argument for *Colorado River* abstention, the Court concludes that he has not overcome the presumption against abstention.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to stay [173]. The dispositive motion filing deadline, which had been March 27, 2020 until it was extended by virtue of General Order 20-0012, as amended, is reset by the Court to May 8, 2020. This deadline is not affected by Second Amended General Order 20-0012, and it will not be affected by any similar general order entered hereafter. The Court will set a briefing schedule once the motions are filed. The case is set for a status hearing on May 22, 2020 at 9:30 a.m. The status hearing and motion ruling date of April 21,

2020 is vacated.  The trial date of July 6, 2020 remains as-is.

Date:  April 19, 2020

_____
MATTHEW F. KENNELLY
United States District Judge