# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH MIZRACHI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 8036** |
| | ) | |
| **LAWRENCE ORDOWER and** | ) | |
| **ORDOWER & ORDOWER, P.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Joseph Mizrachi has sued attorney Lawrence Ordower and his law firm, Ordower & Ordower, P.C., for legal malpractice and breach of fiduciary duty. The defendants, to whom the Court will refer to collectively as Ordower, have moved for summary judgment on both claims. Mizrachi has filed a cross-motion for partial summary judgment.

### Background

The following facts are undisputed unless otherwise noted.[1] Mizrachi is a real estate investor and asset manager. He contends that he held a partnership interest in an entity called JAL Group, L.P., through entities affiliated with JAL, and was the

---

[1] Mizrachi objects to many of the exhibits Ordower has submitted on the ground that they are not properly authenticated and/or accompanied by a request for judicial notice. Ordower has since submitted an affidavit attesting to the authenticity of each exhibit that he has submitted. The Court therefore declines to exclude the challenged exhibits at this stage in the proceedings. *See* Fed. R. Civ. P. 56(e)(1) (where a party has failed to properly support an assertion of fact, a court may give the party an opportunity to do so).

managing member of JAL.  Ordower disputes this and contends that Mizrachi was not a member of JAL and was not identified by name in JAL's partnership agreement.

JAL, in turn, held an ownership interest in a company called Net Lease Management Partners, LLC (NLMP), which owns two warehouses.  Three other entities, including Brentwood Capital, LLC, also held ownership interests in NLMP.

In or around early 2014, Mizrachi and another investor, Seymour Holtzman, agreed to jointly purchase an interest in Brentwood.  Holtzman was affiliated with the Seymour Holtzman Family Partnership (HFP).  (The precise nature of this affiliation is not clear from the record.)  HFP already held a minority of the initial membership interests in Brentwood.  Mizrachi and Holtzman sought to buy an additional 75% of the initial membership interest in Brentwood.

From early in the negotiations concerning the acquisition, various lawyers represented Mizrachi, Holtzman, and the entities with which they were affiliated.  Not all of these lawyers represented both Mizrachi and Holtzman, but it is undisputed that, starting in or around August 2014, lawyer James Smith jointly represented them.

In October 2014, Smith filed a complaint with an arbitration organization on behalf of HFP.  The purpose of the complaint was to obtain a declaration regarding whether NLMP's operating agreement gave its majority owner, an entity called AFP Eleven Corp., the right of first refusal to purchase the interest in Brentwood.  The outcome of this arbitration would affect whether Mizrachi and Holtzman could move forward with acquiring the interest.  While the arbitration was pending, Mizrachi and Holtzman continued to engage in negotiations concerning the acquisition.

At some point, Holtzman retained Ordower to represent him in connection with

the acquisition of the interest in Brentwood.  Holtzman testified that he and Smith had "different view[s]" on "what" they should "be doing."  Pl.'s Ex. 52 at 92:19–25.  Holtzman also testified that he told Mizrachi:  "I can't get along . . . with James Smith, all right, and I don't want to be [sic] a shared lawyer.  I'm going to get a guy and his name is Larry Ordower, and he's going to represent me and so on and so forth, and you can talk to him or whatever."  *Id.* at 129:17–24.  And he testified that he told Mizrachi regarding Ordower, "[I]f you want to talk to him, talk to him—you can talk to him and so forth.  I don't want to be [sic] a shared attorney . . . with you."  *Id.* at 130:10–15.

The parties dispute whether Ordower represented Mizrachi in addition to Holtzman.  There was no written retainer agreement between Mizrachi and Ordower.  They communicated on numerous occasions regarding the acquisition of the Brentwood interests, however.  For example, Ordower sent e-mails to Mizrachi and others providing edits on the agreement to assign the interest in Brentwood.  In November 2014, Ordower wrote an e-mail to the escrow's attorney in which Ordower wrote, "My [c]lients are prepared to go forward with the purchase agreement which is attached."  Pl.'s Ex. 14 at Ordower_002398.  Ordower later forwarded that e-mail to Holtzman and Mizrachi.

Mizrachi also sent e-mails to Ordower concerning the acquisition.  For instance, Mizrachi wrote to Ordower and Holtzman about the agreement concerning the assignment of the interest in Brentwood:  "[A]dd provision that time is of the essence[.] Otherwise is fine[.]"  Pl.'s Ex. 16 at Ordower_002530.  And he sent an e-mail to Ordower telling him to obtain an agreement that one of Mizrachi's other attorneys had drafted in conjunction with the attorney for the escrow.  In that e-mail, Mizrachi wrote:

"We just need to add the $500,000 and the clause on the indemnity." Pl.'s Ex. 6 at Ordower_001759.

In addition, Mizrachi contends that Ordower has represented him, his son, and entities he controlled since at least June 2015 in connection with other legal matters unrelated to Brentwood.[2]

In or around June 2015, Mizrachi and Holtzman orally agreed to include Ordower in their joint acquisition of the interest in Brentwood. Mizrachi has stated in his affidavit that he and Holtzman agreed to include Ordower in the acquisition in exchange for Ordower's provision of legal services to both of them in connection with the acquisition and that Ordower agreed to that arrangement. Ordower disputes this. It is undisputed that Mizrachi, Holtzman, and Ordower agreed to form an entity called SJLSJL, LLC in order to jointly purchase the interest in Brentwood; to each contribute one-third of amount needed to purchase the interest; to hold the interest in equal proportions; and to have Ordower serve as SJLSJL's lawyer.

In December 2015, Mizrachi signed an assignment agreement concerning the interest in Brentwood. Ordower contends that the parties had agreed to and acknowledged only one provision of the agreement. A different provision stated that the assignor of the interest would take reasonable steps necessary to ensure that JAL was designated as Brentwood's managing member and would hold a position on NLMP's management committee.

---

[2] Ordower objects to certain exhibits Mizrachi has submitted regarding Ordower's alleged representation of him in other matters on the ground that they were produced after the close of discovery. The Court need not rule on that objection at this point because it has not considered those exhibits in this opinion.

In May 2016, the arbitration panel issued a decision that indicated that the holder of the at-issue interest in Brentwood could sell it without triggering AFP's right of first refusal. This effectively meant that SJLSJL could proceed with acquiring the interest.

After a series of negotiations, on September 23, 2016, Ordower sent an e-mail to Holtzman, Mizrachi, and others indicating that they were scheduled to close on the acquisition the following week. Ordower attached to the e-mail, among other things, a draft LLC agreement for SJLSJL. He also wrote: "I can draw up a short agreement in which we will each be responsible for 1/3 of the attorneys [sic] fees for the Brentwood Purchase and we will reimburse Seymour and Joseph for what they have already spent on the Brentwood Purchase." Defs.' Ex. 51 at Mizrachi_IL_000098. In the e-mail, Ordower also indicated that Mizrachi and Ordower's "contribution[s] without prorations" amounted to $1,300,000 and that Holtzman's contribution without proration was $1,100,000 (apparently because Holtzman previously had paid a $200,000 deposit). *Id.* at Mizrachi_IL_000097. He wrote, "I suggest that each of us wire our contribution directly into [the escrow's attorney's] Client's Funds Account . . . in anticipation of the closing." *Id.*

Mizrachi alleges that, as the closing date approached, he, Ordower, and Holzman had some disagreements, allegedly with regard to the refinancing of a loan for one of NLMP's warehouses. Mizrachi contends that he was excluded from discussions about this loan. On September 28, 2016, Mizrachi left Ordower a voicemail message in which he stated that he could not "do" the transaction "unless we have a unanimous decision making [sic] process with the three of us." Defs.' Ex. 52 at ECF p. 84. He added, "And if not, you guys can do it yourself [sic]." *Id.* Mizrachi referenced the

apparent disagreements between him, Holtzman, and Ordower and stated, "So . . . I prefer to lose it all than do it." *Id.*

Over the next couple of days, Mizrachi and Holtzman exchanged e-mails that referenced a disagreement between them. Mizrachi contends this disagreement related to the voicemail that he had left Ordower. In an e-mail dated September 30, 2016, Mizrachi wrote in part, "Again if you feel insulted forgive me . . ." Pl.'s Ex. 34 at Ordower_006218. He also wrote, "Let [sic] end this dialogue and get to do the business we can do the [sic] best with the purpose to make the gain [sic] we all deserve." *Id.* In response, Holtzman wrote, "I am o k [sic] with moving forward[.] This certainly is a fantastic deal but we have to clear up some items[.] . . . Let's move forward[;] past is past[.]" *Id.*

Meanwhile, on September 28, 2016, Ordower caused SJLSJL to be formed by filing a certificate with Delaware's Secretary of State. The next day, the attorney for the escrow sent an e-mail to Ordower in which he provided the closing instructions for the escrow. The instructions identified Ordower and his firm as attorneys "both for the original Assignees and for the Substituted Assignee," but Mizrachi was not identified as either the assignee or substituted assignee. Defs.' L.R. 56.1 Stmt. ¶ 59.

Mizrachi, Ordower, and Holtzman wired funds to an escrow account held by the attorney handling the sale of the interest in Brentwood. Ordower wired $2,107,455; Holtzman wired $1,907,456; and Mizrachi wired $1,300,000. Mizrachi's portion of the funds was sent from an account named M Group Two LLC; the parties dispute whether he personally owned those funds. Later that day, the attorney representing the escrow sent an e-mail to, among others, Mizrachi, his son, and one of Mizrachi's lawyers stating

that the escrow account had been overfunded.

It is undisputed that the M Group Two account was used to make additional payments into the escrow account through March 2017. The parties dispute whether these payments were made in connection with SJLSJL's purchase of the Brentwood interest.

Starting in March 2017, Ordower and Holtzman asserted that Mizrachi does not have an interest in SJLSJL or Brentwood. Mizrachi disputes this and contends that he has an interest in both SJLSJL and Brentwood.

At some point, Holtzman and Ordower were appointed as members of NLMP's management committee. In that position, Ordower voted in favor of a resolution to remove JAL from its position as NLMP's managing member.

There are several other lawsuits relating in various degrees to the present dispute between Mizrachi and Ordower. In August 2017, in a Florida state court, SJLSJL sued Mizrachi, seeking a declaration that Mizrachi has no interest in SJLSJL. In January 2019, Holtzman joined that suit as a plaintiff. On that same date, SJLSJL and Holtzman filed an amended complaint in that case against Mizrachi and also named Ordower as a defendant. And in December 2019, also in the Florida case, Mizrachi filed counterclaims, and JAL filed a third-party complaint against Holtzman and Ordower.

In November 2017, Mizrachi and JAL filed a complaint against Holtzman and Ordower in California state court, asserting claims for conversion, breach of contract, and breach of fiduciary duty. These claims concerned the alleged agreement between Mizrachi, Holtzman, and Ordower to acquire an interest in Brentwood in equal shares

7

and the alleged exclusion of Mizrachi from that deal.  The California court subsequently dismissed the case on jurisdictional grounds.

In August 2019, Mizrachi filed a complaint against Holtzman and Ordower in a Delaware state court, seeking declaratory judgments that Mizrachi owns one-third of the interest in SJLSJL and that actions allegedly taken by Holtzman and Ordower to deprive him of their interests in SJLSJL were invalid.  In that case, Mizrachi also asserts claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of an implied covenant of good faith and fair dealing.

Mizrachi filed the present lawsuit on November 6, 2017.  In Count 1 of his amended complaint, Mizrachi alleges that Ordower engaged in legal malpractice in representing Mizrachi in the acquisition of the interest in Brentwood and the formation of SJLSJL.  In Count 2, Mizrachi alleges that Ordower breached fiduciary duties that he owed Mizrachi "[b]y virtue of" their alleged attorney-client relationship by, among other things, converting Mizrachi's interests in Brentwood and SJLSJL.  Compl. ¶ 44. Ordower filed a third-party complaint against Smith and his law firm, which the Court dismissed due to lack of personal jurisdiction.  *Mizrachi v. Ordower*, No. 17 C 8036, 2019 WL 918478, at *3 (N.D. Ill. Feb. 25, 2019).

In July 2018, Ordower filed a motion to stay the present case based on other pending lawsuits, which the Court denied in an oral ruling in August 2018.  Ordower renewed that motion in in March 2019, and in April 2019, the Court again denied it. *Mizrachi v. Ordower*, No. 17 C 8036, 2020 WL 1914646, at *5 (N.D. Ill. Apr. 19, 2020).

Ordower now has moved for summary judgment on both of Mizrachi's claims. Mizrachi has filed a cross-motion for summary judgment solely on the issue of whether

an attorney-client relationship existed between the parties.

## Discussion

A party is entitled to summary judgment only if it demonstrates that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On cross-motions for summary judgment, the Court draws inferences "in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017).

"Under Illinois law, a plaintiff must prove five elements to prevail on a claim for legal malpractice: (1) an attorney-client relationship; (2) a duty arising out of that relationship; (3) a breach of that duty; (4) causation; and (5) actual damages." *Reynolds v. Henderson & Lyman*, 903 F.3d 693, 695 (7th Cir. 2018) (internal quotation marks omitted). For a claim for breach of fiduciary duty, a plaintiff must prove: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 69, 983 N.E.2d 414, 433. Ordower appears to treat Mizrachi's claims in this case as coextensive; that is, he treats the duty, breach, and damages Mizrachi alleges as the same for both claims.

Ordower seeks summary judgment on the grounds that there was no attorney-client relationship between him and Mizrachi; no breach of a fiduciary or attorney-client duty; and no causation of injury. In addition, he contends that Mizrachi lacks standing to

seek damages and that he cannot recover legal expenses or punitive damages. Mizrachi seeks summary judgment solely with regard to the issue of whether an attorney-client relationship existed between him and Ordower. The Court addresses each issue in turn.

## A.      Attorney-client relationship

Ordower contends that he and Mizrachi did not have an attorney-client relationship in connection to the acquisition of the Brentwood interest. Mizrachi maintains that they did. As indicated, both sides have moved for summary judgment on this point.

Whether an attorney-client relationship exists is a question of law, but often a factfinder must resolve disputes concerning the formation of such a relationship. *Meriturn Partners, LLC v. Banner & Witcoff*, Ltd., 2015 IL App (1st) 131883, ¶ 10, 31 N.E.3d 451, 456. An attorney-client relationship is "a voluntary, contractual relationship that requires the consent of both the attorney and client." *Reynolds*, 903 F.3d at 695 (quoting *People v. Simms*, 192 Ill. 2d 348, 382, 736 N.E.2d 1092, 1117 (2000)). It "is only created by a retainer or an offer to retain or a fee paid." *Simms*, 192 Ill. 2d at 382, 736 N.E.2d at 1117. Where, as here, there was no written retention agreement between the parties, the client and the attorney must manifest their agreement to the representation through their actions. *See id.*; *see also Meriturn Partners*, 2015 IL App (1st) 131883, ¶ 11, 31 N.E.3d at 456.

There is evidence from which a reasonable jury could conclude that Mizrachi and Ordower did not have an attorney-client relationship. For example, it is undisputed that other attorneys gave Mizrachi advice concerning the acquisition of the interest in

Brentwood.  A reasonable jury could infer that, if Ordower had been representing

Mizrachi in connection to the acquisition, Mizrachi would not have been getting advice

from the other attorneys.  It also is undisputed that instructions for the escrow's closing

identified Ordower and his firm as attorneys "both for the original Assignees and for the

Substituted Assignee" but that Mizrachi was not identified as either an assignee or the

substituted assignee.  *See* Defs.' L.R. 56.1 Stmt. ¶ 59.  A reasonable jury could take

those instructions to mean it was understood that Ordower was not representing

Mizrachi individually with regard to the escrow's closing.  And a reasonable jury could

rely on other evidence—including e-mails containing legal advice that Ordower sent to

solely to Holtzman and another attorney representing Holtzman, as well as Holtzman's

testimony that he told Mizrachi, "I don't want to be [sic] a shared attorney . . . with you,"

Pl.'s Ex. 52 at 130:10–15—to reach the conclusion that Ordower represented Holtzman

but not Mizrachi.[3]

But a jury would not be *required* to conclude that Ordower was not Mizrachi's

attorney.  Mizrachi's relationship with other attorneys is not dispositive; a client may

form an attorney-client relationship with more than one attorney or law firm on the same

legal matter.  *See, e.g.*, Ill. S. Ct. R. 11(c) (addressing requirements for the provision of

service "[w]hen more than one attorney appears for a party").  And the instructions for

the escrow's closing did not identify an attorney for Mizrachi, so they did not foreclose

the possibility that Ordower represented him in connection with the closing or other

---

[3] Mizrachi contends that "nothing" in Holtzman's testimony indicates that he
communicated to Mizrachi that he no longer wanted to share a lawyer with him.  Pl.'s
Reply at 9.  Holtzman's testimony is not entirely clear, but a jury reasonably could
interpret the just-quoted language as indicating that Holtzman did exactly this.

aspects of the acquisition. Further, a jury reasonably could interpret other aspects of Holtzman's testimony, such as his statement that he told Mizrachi that if he wanted to talk with Ordower, he could do so, as an indication that Holtzman encouraged Mizrachi to ask Ordower for legal advice. And a jury reasonably could conclude that Ordower's provision of legal advice to Holtzman does not exclude the possibility that Ordower also gave legal advice to Mizrachi in connection with the transaction.

There is other evidence from which a reasonable jury could conclude that Ordower and Mizrachi had an attorney-client relationship. This evidence includes Mizrachi's belief, as reflected in his affidavit, that he and Holtzman agreed to acquire the Brentwood interest with Ordower in exchange for Ordower's legal services. It also includes evidence of communications between Ordower and Mizrachi concerning legal aspects of the transaction, such as e-mails Ordower sent to Mizrachi and others providing edits on the agreement to assign the interest in Brentwood and offering to draw up an agreement concerning attorney's fees. And it includes an e-mail from Ordower to the escrow's attorney in which Ordower wrote, "My [c]lients"—plural— are prepared to go forward with the purchase agreement which is attached," an e-mail that Ordower later forwarded to both Holtzman and Mizrachi. Pl.'s Ex. 14 at Ordower_002398.

A jury would not, however, be *required* to conclude that Ordower and Mizrachi had an attorney-client relationship either. As indicated, a jury reasonably could interpret Holtzman's testimony to mean that he hired Ordower because he no longer wanted to share an attorney with Mizrachi, which would support a finding that Ordower did not also represent Mizrachi. In turn, a jury could interpret the communications between Ordower

12

and Mizrachi as an indication that Ordower was providing legal advice on behalf of Holtzman or SJLSJL, not Mizrachi. This interpretation would be bolstered by evidence that certain documents Ordower drafted or revised did not mention Mizrachi at all. *See* Pl.'s Ex. 12 at Ordower_002145 (document concerning Holtzman's purchase of the interest). Indeed, Mizrachi has not pointed to evidence of any communications where he expressly asked Ordower to provide him with legal advice. To be sure, there are some e-mails in which Mizrachi called for certain information to be added to agreements. *See, e.g.*, Pl.'s Ex. 16 at Ordower_002530 (e-mail from Mizrachi to Ordower and Holtzman stating, "[A]dd provision that time is of the essence[.] Otherwise is fine[.]"); Pl.'s Ex. 6 at Ordower_001759 (e-mail from Mizrachi telling Ordower to obtain an agreement that other attorneys had drafted and stating "[w]e just need to add the $500,000 and the clause on the indemnity"). But a jury reasonably could interpret these and other documents as communications between business partners in which Mizrachi was stating his preferences about the deal and/or advice he has received from other attorneys. And even if a jury inferred that Ordower was referencing Mizrachi and Holtzman when he mentioned his "[c]lients" in the e-mail to the escrow's attorney, the jury reasonably could interpret that as a reference to Ordower's undisputed representation of SJLSJL and Holtzman, not as an indication that Ordower represented Mizrachi in his individual capacity. *See* Pl.'s Ex. 14 at Ordower_002398. Further, Ordower's representation of SJLSJL does not mean that there was also an individual attorney-client relationship between him and Mizrachi. *See Reynolds*, 903 F.3d at 696 (law firm's representation of an entity does not benefit individuals affiliated with that entity unless the firm "was hired for the primary purpose of benefiting" those

13

individuals).

Mizrachi asserts that Ordower's representations him in other legal matters at the same time as the Brentwood acquisition proves that Ordower also represented him with regard to the Brentwood acquisition. Ordower responds that there is no evidence showing that he represented Mizrachi individually in other matters; he contends that the evidence shows that he instead represented various entities. The Court need not decide whether Ordower represented Mizrachi in his individual capacity in other matters, however, because even if he did do so, the Court would not find this evidence dispositive. An attorney's representation of a client "over a substantial period [on] a variety of matters" may indicate the existence of an attorney-client relationship on a matter for which the parties do not have a written retainer agreement. *Bd. of Mgrs. of Eleventh St. Loftominium Ass'n v. Wabash Loftominium, L.L.C.*, 376 Ill. App. 3d 185, 195, 876 N.E.2d 65, 74 (2007) (quoting *SWS Financial Fund A v. Salomon Brothers, Inc.*, 790 F. Supp. 1392, 1398 (N.D. Ill. 1992)).But it does not follow that an attorney would represented a client in other matters would *necessarily* represent him in every matter, particularly matters in which that attorney is acting as the client's a business partner.

Mizrachi also asserts that third parties' beliefs confirm the "reasonableness" of his belief that he and Ordower had an attorney-client relationship. Pl.'s Br. at 13. The Court agrees that some third parties' testimony could support a conclusion that Mizrachi and Ordower had an attorney-client relationship. For example, Smith and the escrow's attorney both testified that they believed Ordower represented Mizrachi individually. But, as the Court just has discussed, other evidence could support a conclusion that

Mizrachi and Ordower did not have an attorney-client relationship.

Further, Mizrachi contends that Ordower "reasonably should have" known that Mizrachi was relying on his legal advice regarding the Brentwood transaction and that Mizrachi believed Ordower was representing him. Pl.'s Reply at 13. Regardless of whether this is true, the Court is not persuaded that it proves the existence of an attorney-client relationship. This is because a client's belief that an attorney is representing him is "only one consideration" in determining whether an attorney-client relationship existed between them, and "[a] client cannot unilaterally create the relationship." *Meriturn*, 2015 IL App (1st) 131883, ¶ 10, 31 N.E.3d at 456. Whether Ordower should have known that Mizrachi relied on his legal advice or whether Mizrachi believed Ordower was representing him does not entitle Mizrachi to summary judgment in light of the evidence, as just discussed, from which a reasonable jury could conclude that there was no attorney-client relationship.

In short, there are genuine factual disputes concerning the existence of an attorney-client relationship between Mizrachi and Ordower. Therefore, the Court denies both parties' motions for summary judgment regarding the existence of such a relationship.[4]

## B.    Breach

Assuming an attorney-client relationship existed between Mizrachi and Ordower, Mizrachi would need to prove that Ordower breached duties arising out of that

---

[4] In a footnote, Mizrachi asks the Court, if it declines to grant partial summary judgment regarding the existence of an attorney-client relationship, to enter an order stating that there is no genuine factual dispute regarding the existence of such a relationship. As just explained, the Court concludes that there is a genuine factual dispute on that issue, so the Court declines Mizrachi's request.

relationship to prevail in this case. *See Reynolds*, 903 F.3d at 695 (legal malpractice); *Lawlor*, 2012 IL 112530, ¶ 69, 983 N.E.2d at 433 (breach of fiduciary duty). In his legal malpractice claim, Mizrachi has alleged that Ordower breached duties he owed to Mizrachi by, among other things, failing to advise him of the risks inherent in oral agreements and failing to ensure that various agreements relating to the Brentwood interests were committed to writing, properly drafted and executed, and reflected Mizrachi's interests. Mizrachi also has alleged that Ordower breached fiduciary duties he owed to Mizrachi by, among other things, refusing to execute the operating agreement concerning Brentwood, converting Mizrachi's interests in Brentwood and SJLSJL, denying Mizrachi and JAL their positions in Brentwood and NLMP, and failing to advise Mizrachi of certain conflicts of interest. In both claims, Mizrachi has alleged that Ordower failed to advise him against using funds from M Group Two to purchase his share of the interests in Brentwood.

Ordower contends that he breached no duty he owed to Mizrachi. He seeks summary judgment on the issue of breach for both claims on two grounds. First, Ordower contends that because no attorney-client relationship existed between him and Mizrachi, he could not have owed any duties. As just explained, however, a reasonable jury could find that an attorney-client relationship existed, so this is not an appropriate basis for summary judgement.

Ordower also contends that the Mizrachi's alleged damages stem not from breaches by Ordower but rather from Mizrachi's decision to back out of the deal or, at least, engage in "hard bargaining" that allegedly led Ordower and Holtzman to believe he had decided to back out of the deal. Defs.' Mem. in Supp. of Mot. for Summ. J. at 9.

Ordower asserts that Mizrachi backed out of the deal (or led Ordower to believe he had done so) when he left Ordower a voicemail stating that he had decided not to go forward with the plan to acquire the interest in Brentwood. Mizrachi, for his part, contends that he never indicated that he was backing out of the deal. And Mizrachi points to a report by Robert E. Hirshon, a law school professor, in which Hirshon opines that Ordower breached at least four provisions of the Illinois Rules of Professional Conduct.[5]

The Court concludes that there is a genuine factual dispute regarding whether Mizrachi told Ordower that he no longer planned to acquire the Brentwood interests with Ordower and Holtzman. To be sure, Mizrachi said in the voicemail he left Ordower that he would "prefer to lose it all than do it." Defs.' Ex. 52 at ECF p. 84. A jury reasonably could interpret this statement to mean that Mizrachi did not want to go forward with the deal. But Mizrachi also said in the voicemail that he did not want to go forward with the transaction unless there was a unanimous decision-making process. A jury reasonably could take this statement to mean that Mizrachi still was willing to buy the interest in Brentwood if he, Ordower, and Holtzman had such a process. And a jury could interpret other conduct, including the e-mails Mizrachi sent to Holtzman saying that he was sorry and the fact that Mizrachi had his portion of the deal wired into the escrow account, as an indication that Mizrachi did not intend to back out of the deal.

---

[5]     Ordower contends that Mizrachi's expert report is inadmissible because it contains legal conclusions that could determine the outcome of the case. The Court disagrees. Though an expert generally may not offer legal conclusions, courts recognize an exception to that rule for suits involving legal malpractice. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 n.7 (7th Cir. 2013); *Barth v. Reagan*, 139 Ill. 2d 399, 564 N.E.2d 1196, 1199–1200 (1990) (under Illinois law, standard of care for a legal malpractice claim ordinarily must be established through expert testimony).

In addition, if Ordower is contending that a reasonable jury could find he breached duties that he owed to Mizrachi only if it found that Mizrachi did not back out of the deal or lead Ordower to believe he was doing so, that contention is questionable. In his reply brief, Ordower contends that Mizrachi has not asserted that Ordower breached any duties before the date on which the parties deposited the funds into the escrow account. That is not true. As indicated, Mizrachi has alleged that Ordower breached duties before that date, including by failing to properly draft and execute agreements and failing to warn Mizrachi of conflicts of interest. The Court need not, however, decide whether Ordower breached duties he owed to Mizrachi before Mizrachi left him the voicemail, because Ordower has not pointed to any evidence suggesting that there was no breach before that time.

In sum, there is a genuine factual dispute regarding whether Ordower breached duties he owed to Mizrachi. Ordower is not entitled to summary judgment on this basis.

## C. Proximate cause

Ordower next contends that he is entitled to summary judgment due to the absence of evidence that would permit a finding of proximate cause. For this element, Mizrachi must show that, but for Ordower's malpractice, he would not have suffered actual damages. *See In re Estate of Powell*, 2014 IL 115997, ¶ 24, 12 N.E.3d 14, 22. "Generally, the issue of what is the proximate cause of an injury is a question of fact for a jury to determine based on its consideration of all of the evidence." *Governmental Interinsurance Exch. v. Judge*, 221 Ill. 2d 195, 210, 850 N.E.2d 183, 192 (2006). There is an exception when a plaintiff's malpractice appellate case turns solely upon a legal question in the underlying case, *see id.* at 210–14, 850 N.E.2d at 193–95, but that is not

18

the situation here.

Ordower argues that he did not proximately cause Mizrachi's alleged damages. He contends that Mizrachi caused those damages by backing out of the deal or indicating that he planned to do so. As just explained, however, there is a genuine factual dispute regarding about whether Mizrachi indicated that he did not plan to go forward with the deal. Therefore, this is not an appropriate basis for summary judgment.

Ordower also contends that Mizrachi cannot prove that, but for Ordower's alleged malpractice, Holtzman would have agreed to the terms that Mizrachi wanted for the acquisition. But Ordower has pointed to no evidence suggesting that Holtzman would *not* have agreed to Mizrachi's terms. Thus he has not established the absence of a genuine dispute on this basis either.

Ordower further contends that the other lawsuits Mizrachi has filed—seeking declaratory judgments that he owns one-third of the SJLSJL's membership interests and assets—show that Mizrachi "believes there are multiple causes" that he is not a member of SJLSJL and "is not sure as to who or what he believes proximately caused his alleged damages." Defs.' Mem. in Supp. of Mot. for Summ. J. at 10–11. The Court is not persuaded. For one, a plaintiff's belief is not relevant to the issue of proximate causation. *See In re Estate of Powell*, 2014 IL 115997, ¶ 24, 12 N.E.3d at 23. And if Ordower is contending that the existence of a question about whether Mizrachi owns one-third of SJLSJL's membership interests and assets means that there can be no question about whether Ordower proximately caused Mizrachi's damages, that makes no sense. One of Mizrachi's allegations in this lawsuit is that Ordower breached his

duties as Mizrachi's lawyer to convert Mizrachi's interests in SJLSJL. If anything, that suggests there is a question of fact in this case; whether Mizrachi has an ownership stake in SJLSJL is pertinent to the question of whether Ordower could have converted Mizrachi's interests in SJLSJL. Stated differently, Ordower has not explained how any aspect of the other cases establishes the absence of a genuine dispute in this case.

Accordingly, there is a genuine factual dispute regarding whether Ordower breached duties he owed to Mizrachi. Ordower is not entitled to summary judgment on this basis either.

## D. Damages

Ordower next contends that he is entitled to summary judgment or dismissal of this case on three grounds relating to damages. First, he contends that Mizrachi lacks standing to bring the claims in this case because he has not shown that he suffered actual damages. In addition, Ordower seeks summary judgment on the issue of whether Mizrachi is entitled to recover various legal expenses if he prevails. Finally, he seeks summary judgment on the issue of whether Mizrachi is entitled to recover punitive damages.[6] The Court addresses each issue in turn.

### 1. Standing / actual damages

Ordower asserts that Mizrachi lacks standing to bring the claims in this case because, Ordower contends, Mizrachi has not shown that he was injured in his individual capacity. "For [the] purposes of a legal malpractice claim, a plaintiff is not

---

[6] Ordower also contends that summary judgment is warranted on the ground that any measure of damages would be speculative. The Court disregards this contention because Ordower raised it solely in his reply brief. *See Campos v. Cook County*, 932 F.3d 972, 976 n.2 (7th Cir. 2019) ("Parties waive arguments which they develop for the first time in a reply brief.").

considered to be injured unless and until he has suffered a loss for which he may seek monetary damages." *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 12, 43 N.E.3d 923, 927. This is because "[t]he injury in a legal malpractice action is neither a personal injury nor the attorney's negligent act"; "[r]ather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." *In re Estate of Powell*, 2014 IL 115997, ¶ 13, 12 N.E.3d at 19.

The parties discuss this principle as one involving standing, but they have not attempted explain why it is a question of standing in the sense that courts typically use that term. The only case cited by either party concerning the principle does not address it as an issue of whether a plaintiff has standing to bring a malpractice claim. *See Stevens*, 2015 IL 118652, ¶ 12, 43 N.E.3d at 927. Rather, in *Stevens* the Illinois Supreme Court described the question of whether plaintiffs suffered actual damages as an "essential" element of "a viable cause of action for legal malpractice." *Id.* In other words, the Court addressed it as a merits issue, not a question of standing. *See id.*; *see also N. Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 307, 837 N.E.2d 99, 107 (2005) (a plaintiff's ability to demonstrate that he sustained a monetary loss determines whether his "cause of action" can "succeed"). And even though the parties call this an issue of standing, they address the merits of the claim—i.e., they dispute whether Mizrachi can prove actual damages in his personal capacity. For these reasons, the Court takes this dispute as an issue involving the merits.

Ordower, however, has not addressed on the merits whether Mizrachi suffered an individual injury for the breach of fiduciary duty claim. Ordower appears to treat the

fiduciary duty and legal malpractice claims as identical, but he cites only to case law regarding the injury element of a legal malpractice claim. He has not attempted to address whether Mizrachi would be able to prove that he was injured for the purposes of the breach of fiduciary duty claim. Therefore, the Court declines to dismiss the breach of fiduciary duty claim on this ground.

Turning to the merits of the legal malpractice claim, Ordower asserts that Mizrachi is seeking damages for injuries suffered by entities called JAS Kin LLC, M Group Two, and JAL, not for injuries to Mizrachi individually.[7] The Court discusses the damages allegedly lost by each of the various entities in turn.

First, Ordower contends that JAS Kin, not Mizrachi, suffered monetary losses pertaining to the interest Mizrachi contends he held in SJLSJL. Ordower contends that the at-issue interest in SJLSJL was transferred to JAS Kin. (It is not clear from whom Ordower contends the interest allegedly was transferred, but the Court presumes it is Mizrachi.) In support of this contention, Ordower points to tax returns filed for SJLSJL, which show JAS Kin as a partner with one-third of the interest in SJLSJL. Mizrachi's affidavit, however, reflects that he had discussed transferring his interest in SJLSJL to JAS Kin, but the transfer never occurred.[8] His affidavit also reflects that the just-

---

[7] Mizrachi contends that he also seeks damages for other injuries, including disgorgement of the consideration Ordower allegedly received for performing legal work on behalf of Mizrachi with regard to the acquisition of the interest in Brentwood. Because Ordower has not sought summary judgment on these requests for relief, the Court need not address them.

[8] Ordower contends that Mizrachi's affidavit does not expressly state that Mizrachi never transferred his interest to JAS Kin. That is incorrect. *See* Pl.'s Decl. in Supp. of Mot. for Summ. J. ¶ 51 ("Although I had discussed transferring my interest in SJL to JAS Kin, that legal transfer never occurred."). If Ordower is contending that Mizrachi may have actually transferred the interest even if he did not "legally" do so, Ordower has pointed to no evidence in support of that contention.

mentioned tax returns were erroneous and that he directed his accountant to file amended returns identifying him, not JAS Kin, as the holder of the one-third partnership interest in SJLSJL. Mizrachi has submitted those amended returns, but the documents he submitted do not contain his signature or the date. Based on this evidence, a reasonable jury could conclude that JAS Kin owned the interest in SJLSJL, but a reasonable jury could also conclude that Mizrachi owned it.

Second, Ordower contends that the entity M Group Two suffered the loss of the 1.3 million dollars that Mizrachi alleges he used to pay for the interest in Brentwood and that Mizrachi did not individually pay that money. It is undisputed that an account in M Group Two's name put up the funds for the interest in Brentwood. But Mizrachi's affidavit reflects that he controls M Group Two and that the funds in that account belong solely to him in his personal capacity. Ordower has pointed to no evidence indicating that those funds did not belong to Mizrachi in his personal capacity. Thus he has not shown the absence of a genuine factual dispute concerning whether Mizrachi suffered actual damages in connection with the purchase of the interest in Brentwood.

Third, Ordower contends that Mizrachi did not suffer individual losses stemming from Ordower's action in voting to remove JAL from its position as managing member of NLMP. The parties dispute the nature of Mizrachi's affiliation with JAL, as indicated. Mizrachi contends that he lost personal income because he would have received funds from JAL if it had maintained its position as managing member of NLMP. Ordower contends that Mizrachi lacks standing to bring a suit in his individual capacity for these losses because JAL suffered the injury, not Mizrachi. In short, the parties agree that JAL suffered an injury, but they disagree whether Mizrachi can seek damages for losses

pertaining to that injury.

In the past, courts have analyzed the question of whether an individual can seek damages for losses suffered by entities with which he is affiliated as an issue of prudential standing. *See Knopick v. Jayco, Inc.*, 895 F.3d 525, 529 (7th Cir. 2018). Though that doctrine would permit courts to decide whether to exercise jurisdiction over the case, "the Supreme Court has [] recently called into question the bases of prudential standing." *Id.* (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). In *Lexmark*, "the Court explained that describing as 'prudential standing' the legal issue of which party could sue under a statute was a 'misnomer.'" *Id.* (quoting *Lexmark*, 572 U.S. at 127). The Court reserved the question of whether a third party's ability to bring a case is a matter of prudential standing. *Lexmark*, 572 U.S. at 127 n.3. The Seventh Circuit, however, has found that the Supreme Court's reasoning in *Lexmark* and other cases "suggests" that whether a third party has the ability to assert the rights of an entity such as a corporation "is a matter determined under the substance of corporate and agency law rather than federal jurisdiction." *Knopick*, 895 F.3d at 529. Accordingly, the Seventh Circuit "treat[s] this as an issue of the real party in interest under Rule 17 of the Federal Rules of Civil Procedure," not as one of prudential standing. *Id.*

Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "[It] is a procedural rule requiring that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who 'according to the governing substantive law, is entitled to enforce the right.'" *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (quoting *Oscar*

24

*Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003). Under Rule 17, the only question is "whether an action can be maintained in the plaintiff's name." *See id.* In this diversity case, the answer to that question turns on Illinois law. *See Knopick*, 895 F.3d at 529; *see also Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990) ("[T]he identity of the real party in interest depends on the law creating the claim."). The parties have not addressed whether, in determining whether Mizrachi can maintain this action, Illinois courts would apply Illinois law or Delaware law, which governs JAL's LLC agreement, so the Court presumes that Illinois law applies. *See RS Investments Ltd. v. RSM US, LLP*, 2019 IL App (1st) 172410, ¶ 18, 125 N.E.3d 1206, 1216 (under Illinois law, a party's failure "to demonstrate a choice-of-law issue means that Illinois law is controlling").

The question is whether Mizrachi can maintain this action in his individual capacity for an injury suffered by JAL that indirectly caused him to lose money. A shareholder generally cannot sue for indirect harm he has suffered as a result of an injury to a corporation. *See, e.g.*, *id.* at ¶ 20, 125 N.E.3d at 1217. This principle applies to injuries to limited liability companies like JAL. *See Stevens*, 2015 IL 118652, ¶ 15, 43 N.E.3d at 928. That said, an exception to the rule permits a shareholder or the member of a limited liability company to sue to vindicate an injury to a corporation or limited liability company if a special contractual duty exists between the wrongdoer and the shareholder or member. *Nocula v. UGS Corp.*, 520 F.3d 719, 726 (7th Cir. 2008) (citing Illinois law). Mizrachi contends that he can sue to vindicate JAL's injury because Ordower owed Mizrachi special duties as his attorney and fiduciary. Though Ordower replies that he did not owe Mizrachi any duties, as the Court has explained, that

question turns on genuinely disputed facts. And though, as Ordower points out, at least some of cases to which Mizrachi cites apply the law of other jurisdictions, the same principles apply in Illinois. *See, e.g.*, *id.* Ordower has cited no cases suggesting otherwise. In short, Ordower has not established that Mizrachi is not the real party in interest for losses pertaining to JAL. This is not an appropriate basis for summary judgment or dismissal.

In sum, there are genuine factual disputes regarding whether Mizrachi suffered actual damages relating to the interests he held in SJLSJL and Brentwood, and Ordower has not shown that Mizrachi is not the real party in interest for his alleged injury concerning JAL. Therefore, the Court denies Ordower's motion for summary judgment on these grounds.

### 2. Legal expenses

Ordower next seeks a ruling that Mizrachi cannot recover any legal expenses related to cases pending in other courts. Illinois courts generally follow the American Rule that each party bears its own litigation expenses unless a statute or contractual provision provides otherwise. *Webb v. Fin. Indus. Regulatory Auth., Inc.*, 889 F.3d 853, 857 (7th Cir. 2018). Thus a plaintiff who "been forced into litigation by reason of the defendant's wrongful conduct" cannot recover litigation expenses and attorney's fees as damages in a subsequent suit. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) (quoting *Ritter v. Ritter*, 381 Ill. 549, 557, 46 N.E.2d 41, 45 (1943)). Under the "third party litigation exception," however, a plaintiff may recover reasonable litigation expenses, including attorney's fees, "where the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others

26

as to make it necessary to incur expense to protect his interest." *Webb*, 889 F.3d at 857 (quoting *Ritter*, 381 Ill. at 554, 46 N.E.2d at 44). "[T]he theory behind this exception is that a tortfeasor should be held responsible for all of the natural and proximate consequences of his actions." *Fednav*, 624 F.3d at 840 (internal quotation marks omitted).

Ordower seeks summary judgment that Mizrachi is not entitled to attorney's fees incurred in cases in other courts or the arbitration concerning the purchase of the Brentwood interest, or legal expenses he did not personally pay.[9] The Court addresses each issue in turn.

### a. Other cases

Ordower seeks summary judgment that Mizrachi is not entitled to attorney's fees he incurred in the three cases, discussed previously, that have been filed in state courts in Florida, California, and Delaware. The Court considers each case in turn. First, the case in Florida involved litigation brought by SJLSJL against Mizrachi involving, as indicated, at least some of the allegedly wrongful acts by Ordower at issue in this case. Because that case was brought by SJLSJL—a third party to this case—the third party litigation exception to the American Rule applies. *See Webb*, 889 F.3d at 857. To the extent Ordower contends that Mizrachi cannot seek attorney's fees he incurred in the Florida case because SJLSJL and Holtzman (who had joined the suit) added Ordower as a defendant to the case, the Court disagrees. If the lawsuit brought by SJLSJL was

---

[9] Mizrachi contends that he is also entitled to attorney's fees incurred in a mediation. He does not describe the mediation's topic or purpose. Ordower does not, however, mention the mediation in his briefs. Accordingly, the Court need not address whether Ordower is entitled to summary judgment with regard to fees for this mediation, whatever it involved.

a direct consequence of Ordower's allegedly wrongful acts, then Mizrachi may be entitled to recover the fees he incurred in that case. *See, e.g.*, *id.* Therefore, Ordower is not entitled to a ruling Mizrachi may not recover attorney's fees from the case in Florida.

In the cases in California and Delaware, Mizrachi sued Ordower and Holtzman. (In the California case, JAL also was a plaintiff.) Both cases, as indicated, involve conduct at issue, at least to some degree, in this case. But although both cases are ongoing, even if Mizrachi is successful in those suits, he would not be entitled to recover from Ordower attorney's fees he incurred for those suits. "[W]here an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, [the plaintiff] can not [sic] in a subsequent action recover, as damages, his costs and expenses in the former action." *Ohio Nat. Life Assur. Corp. v. Davis*, 803 F.3d 904, 910 (7th Cir. 2015) (quoting *Ritter*, 381 Ill. at 555, 46 N.E.2d at 44). The Court concludes that Mizrachi is not entitled to attorney's fees incurred to sue Ordower in other lawsuits pertaining to the issues involved in this case.

That said, Ordower has not asserted that Mizrachi would not be entitled to attorney's fees incurred vis-à-vis Holtzman, a defendant in the California and Delaware lawsuits but not a party in this case. Ordower has not addressed that issue at all, except to suggest in general terms that Mizrachi "cannot recover any expenses incurred in other litigation." Defs.' Reply and Resp. Br. at 20. *See United States v. Wenzel*, 854 F.3d 957, 961 (7th Cir. 2017) (argument not developed in a party's brief is waived).

### b. Arbitration

Ordower next seeks a ruling that Mizrachi is not entitled to attorney's fees he

incurred in connection with the arbitration concerning the purchase of the Brentwood interest. Mizrachi seeks only attorney's fees incurred in the arbitration after March 2017, when Ordower and Holtzman allegedly declared themselves the exclusive owners of SJLSJL. But "Illinois courts have not applied the [third-party] exception [to the American Rule] when the defendant caused the legal fees to increase in an already existing third-party suit; they have applied it when the defendant caused the third-party suit in the first place." *Webb*, 889 F.3d at 858 (no attorney's fees for arbitration that was undertaken to resolve a separate dispute not caused by the breach of contract for which the plaintiff sought legal expenses). To the extent the arbitration involved litigation with third parties (an issue the Court need not address), Mizrachi is not entitled to recover his fees for the arbitration, because it existed before Ordower allegedly breached the duties he owed to Mizrachi. Thus the Court concludes that Mizrachi is not entitled to attorney's fees for the arbitration.

### c. Entities

Without citing to legal authority, Ordower contends that Mizrachi cannot recover legal expenses that he did not pay individually, regardless of the lawsuit in which he incurred those expenses. Ordower does not attempt to explain why those expenses should not be recoverable; he just says that other entities including M Group and JAL have paid some of Mizrachi's legal expenses. Mizrachi contends that the funds used to pay those expenses were his own. Because Ordower has not developed this argument, the Court declines to address it. *See Wenzel*, 854 F.3d at 961 (argument not developed in a party's opening brief is waived).

### 3.    Punitive damages

Finally, Ordower seeks summary judgment on punitive damages.  The parties agree that punitive damages are not available for legal malpractice claims under Illinois law.  *See* 735 Ill. Comp. Stat. Ann. 5/2-1115.  They dispute whether the fiduciary duty claim "involve[s] legal malpractice"; if it does, then punitive damages are not available on that claim either.  *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 784 (7th Cir. 2013) (affirming a district court's decision to strike a plaintiff's request for punitive damages where the only allegations regarding breaches of fiduciary duty that the plaintiff alleged in its complaint "involved legal malpractice").

.      Mizrachi contends that his claim for breach of fiduciary duties is not coextensive with his claim for legal malpractice.  He asserts that Ordower owed him fiduciary duties in his role as a "trusted agent" on the Brentwood transaction, not only in Ordower's role as his attorney.  Pl.'s Mem. in Supp. of Summ J. and Resp. at 30.  But that's not what Mizrachi alleged in his complaint.  His complaint states:  "By virtue of the attorney-client relationship that existed between the Defendants and Mizrachi, the Defendants owed fiduciary duties to Mizrachi."  Compl. ¶ 44.  This language makes clear that the allegations underlying Mizrachi's fiduciary duty claim involve legal malpractice.  The Court therefore concludes that punitive damages are not recoverable on the fiduciary duty claim.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment [dkt. no. 184] in part.  The Court concludes that Mizrachi may not recover legal expenses Mizrachi incurred against Ordower in other lawsuits (as distinguished

from expenses Mizrachi incurred in connection with other parties) and that he may not recover punitive damages on either of his claims. The Court otherwise denies defendants' motion for summary judgment. The Court denies plaintiff's motion for summary judgment [dkt. no. 187]. The case is set for a telephone status hearing on August 20, 2020 at 8:45 a.m. to discuss the upcoming trial date and procedural and logistical matters relating to the trial. Counsel should use call-in number 888-684-8852, access code 746-1053, and they should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 11, 2020