**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH MIZRACHI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 8036** |
| | ) | |
| **LAWRENCE ORDOWER and** | ) | |
| **ORDOWER & ORDOWER, P.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In this order, the Court rules on the remaining motions *in limine* filed by the

parties in this case, in which the plaintiff, Joseph Mizrachi, asserts claims of legal

malpractice and breach of fiduciary duty against the defendants, Lawrence Ordower

and his law firm.

**1.      Robert Hirshon and Michael Flaherty**

Mizrachi offers Robert Hirshon as an expert on various points.  Hirshon's

proffered opinions are:  (1) there was an attorney-client relationship between Mizrachi

and Ordower; and (2) Ordower violated his duty of care and fiduciary duty in various

ways, including by violating several of the Illinois Rules of Professional Conduct (IRPC).

Ordower offers as an expert Michael Flaherty.  Flaherty offers five opinions,

some of which counter Hirshon's opinions and some of which address other topics.

Flaherty's first opinion is that there was no attorney-client relationship between Mizrachi

and Ordower.  His second opinion is that Ordower did not breach any provision of the

IRPC or a fiduciary duty. Flaherty's third opinion is that Mizrachi has not shown that any of his claimed damages were proximately caused by any breach of duty by Ordower. His fourth opinion is that Mizrachi lacks standing to recover damages because he suffered no damages in his individual capacity. Flaherty's fifth opinion is that the attorney's fees listed in the report by Mizrachi's expert Matthieu are not a legally recoverable item of damages.

The Court previously made an oral ruling excluding both Hirshon and Flaherty's opinions regarding whether there was an attorney-client relationship between Mizrachi and Ordower.

### a. Opinions regarding the IRPC and breaches of specific Rules

Hirshon's second opinion and Flaherty's second opinion—regarding breaches of duty by Ordower—concern admissible topics, specifically the duties owed by a lawyer to a client and Ordower's deviation or non-deviation from those duties. In a legal malpractice case, opinions on these topics are not simply admissible, they are generally *required* under Illinois law. *See, e.g., Barth v. Reagan*, 139 Ill. 2d 399, 407, 410, 564 N.E.2d 1196, 1200, 1201 (1990); *Johnson v. Komie*, 2019 IL App (1st) 171189-U, ¶ 38, 2019 WL 489844, *7; *Prather v. McGrady*, 261 Ill. App. 3d 880, 890, 634 N.E.2d 299, 306 (1994).

This does not mean, however, that these two witnesses' opinions as set forth in their reports are all admissible. There are significant problems with both of them.

First, Hirshon will have to rephrase any opinions in this are so that they are based on an *assumption* that the jury finds an attorney-client relationship, not a conclusion on his part that there is such a relationship—as the Court has precluded him

from opining on the latter point.

Second, each of Flaherty's opinions on the IRPC begins with a statement similar to the following:  "There can be no Rule 1.4 violation because there is no attorney-client relationship between Ordower and Mizrachi."  Dkt. no. 227-3 (Flaherty report) at ECF p. 39 of 68.  Such testimony (whether it concerns IRPC 1.4 or any other rule) is inadmissible.  When Flaherty testifies regarding the IRPC and the obligations they impose, Ordower's counsel may appropriately couch the question in terms of an assumption that an attorney-client relationship is found to exist.  But he may not elicit or imply Flaherty's view that there was no such relationship.

Third, both Hirshon and Flaherty's opinions regarding the requirements of the pertinent Rules or common-law obligations are admissible, as they establish the contours of any applicable legal duties.  This is the sort of testimony specifically contemplated by Illinois law regarding the nature of evidence required in legal malpractice cases.

The big problem is the next point.  All of Hirshon and Flaherty's opinions regarding Ordower's violation or non-violation of the IRPC involve what amount to "ultimate issues."  That by itself does not make them inappropriate, as the Federal Rules of Evidence authorize such testimony in appropriate situations.  *See* Fed. R. Evid. 704(a).  But both of these experts' opinions involve, to a large extent, weighing competing evidence and drawing conclusions regarding various persons' intent and what did and did not happen.  For example, on IRPC 1.4, Hirshon says the following:

> Ordower has violated his duty to adequately communicate with his client, Mizrachi, pursuant to IRPC 1.4. Prior to closing and for weeks after the closing, Ordower never informed Mizrachi that Ordower and Holtzman were excluding Mizrachi from the deal that Mizrachi had put together from

3

its inception. Even if, as Ordower claims, he thought that Mizrachi, through his voicemail, was withdrawing from the deal to purchase the Brentwood interest, Ordower had an obligation to confirm that Mizrachi was in fact withdrawing from the deal. Certainly a reasonable lawyer would put something of this consequence in writing. But at the very least, IRPC 1.4 required that Ordower confirm verbally that Mizrachi intended to walk away from the deal. Ordower did the opposite. Not only did Ordower fail to confirm that Mizrachi was withdrawing from the deal, Ordower engaged in a pattern of misleading conduct. For example, in the days leading up to and on the day of the proposed closing of the Brentwood transaction, Ordower informed Finkelstein that the only issues left were some internal issues and true-ups. Instead of consulting with his client about matters of the greatest importance—whether Mizrachi actually intended to back out of the transaction—Ordower engaged in a subterfuge.

In response, Flaherty offers the following opinion (this is an excerpt from a much longer discussion):

In his report, Mr. Hirshon opines a Rule 1.4 violation occurred based on his factual assumption that, prior to closing and for weeks after the closing, Ordower never informed Mizrachi that Ordower and Holtzman were excluding Mizrachi from the deal that Mizrachi had put together from its inception. This factual assumption is not supported by the record.

For the reasons set forth above, there also is no support in the record for the suggestion that Ordower concealed for over a month from Mizrachi the intention to leave him out of the deal. To support the factual premise that Ordower concealed for over a month from Mizrachi following closing the intent to leave him out of the transaction, Mr. Hirshon cites to forty pages of Finkelstein's deposition testimony.[199] To support the factual premise that Mizrachi hired Finkelstein to represent him against Holtzman after closing only because "Ordower had yet to finalize the agreement in a timely manner," Hirshon further cites to Finkelstein's deposition testimony.[200] However, Mizrachi has asserted privilege over his communications with Finkelstein beginning on or about October 7, 2016 when Finkelstein represented Mizrachi.[201] Hirshon's statements of concealment for over a month are sheer conjecture belied by the fact that Mizrachi promptly retained Finkelstein to represent him within a week of the closing.

There is no evidence that Ordower and Holtzman excluded Mizrachi from the deal. Instead, it was Mizrachi who elected to exclude himself from the deal. He did so first by removing himself from the transaction on the eve of closing because of the equal share of control in the SJLSJL, LLC operating agreement that was sent to him well prior to closing. He then further elected to exclude himself from the deal after closing by continuing to object to the equal split of the indemnity obligation owed to the Benettis in the assignment agreement,[202] which equal split of the indemnity obligation also had been sent to him prior to closing.[203]

The most prudent and reasonable course of action to Holtzman and Ordower, when confronted with Mizrachi's stated refusal to participate in the deal on the eve of closing on the provisions required by Holtzman, was to fully fund the purchase price in proceeding with the closing. That way, the escrow would not be underfunded and the Benetti interest would not be at risk of being lost to AFP.

The best way to start the discussion is with Flaherty's opinion on IRPC 1.4.[1] It reads like a summary judgment brief, not an expert opinion. It is readily apparent from reading Flaherty's report (both this part and those concerning other IRPC provisions) that what he has done is to cull the evidence, make determinations about what to rely on and what not to rely on, draw factual inferences, and decide what did and did not happen. That's a pretty good description for what a jury is supposed to do. In other words, Flaherty's opinion, as he expresses it in his report, largely involves telling the jury how to weigh the evidence, which is inappropriate. *See* Fed. R. Evid. 704, adv. cmte. note (expert may not "merely tell the jury what result to reach"). And nothing about this exercise involves the application of any particular expertise that Flaherty has and that an average juror lacks. As such, his opinion contributes nothing meaningful that would help the jury in any appropriate way. *See, e.g., United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996) ("[T]he ultimate test is whether the testimony would assist the trier of fact in understanding the evidence"); *see also Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006) (expert testimony that would have led jurors to substitute experts' conclusions for those of the jury should have been excluded).

Although Hirshon's opinion on Ordower's violation of IRPC 1.4 reads less like a legal brief than Flaherty's, it suffers from the same infirmities, as do both witnesses' opinions regarding other provisions of the IRPC. This is particularly apparent in the second half of Hirshon's IRPC 1.4 opinion, where he says that "Ordower engaged in a pattern of misleading conduct" and "engaged in a subterfuge." These are opinions

---

[1] Unlike the text of Hirshon's opinion, which the Court was able to cut-and-paste into this order, it could not do so with Flaherty's, as his report was filed as a scanned, non-text-searchable Acrobat document, so the Court took what Acrobat calls a "snapshot" of the pertinent passages and pasted it into this order.

regarding a person's reasons for acting and regarding how a factfinder should weigh the evidence, both of which are improper. The rest of Hirshon's opinion on IRPC 1.4, though less *patently* inappropriate, likewise is phrased in terms of findings about what he concludes did and did not happen. It is therefore thus just as inadmissible as Flaherty's.

In addition, a good deal of the proposed testimony by both experts involves assessment of credibility and intent, which are not proper subjects for expert testimony. "Credibility is not a proper subject for expert testimony; the jury does not need an expert to tell it whom to believe . . . ." *United States v. Vest*, 116 F.3d 1179, 1185 (7th Cir. 1997) (citation omitted). The same is true regarding testimony about a person's intent or state of mind. *See, e.g., Dahlin v. Evangelical Child and Fam. Agy., Inc.*, No. 01 C 1182, 2002 WL 31834881, at *3 (N.D. Ill. Dec. 18, 2002) (Kennelly, J.).

In summary, the opinions proposed by Hirshon and Flaherty may not be offered in the way they are presented in the experts' reports. (Though the Court has used the experts' proposed opinions on IRPC 1.4 as an example, the same infirmities plague their opinions regarding other provisions of the IRPC.) The Court believes it may be possible to elicit the expert's conclusions in an appropriate way: as responses to questions that ask the expert to assume certain facts or scenarios (properly founded in the record) and then opine regarding a lawyer's obligations and breach of those obligations. The Court will permit testimony by both experts based on properly-founded hypotheticals, subject to objections, of course, regarding the impropriety of particular hypotheticals and to any attempt to elicit or offer testimony that creeps into what the Court has precluded.

6

Finally, as indicated on page 3 of this opinion, both Hirshon and Flaherty may appropriately testify regarding what the relevant standards are that govern lawyers in the situation at hand—in other words, the IRPC and any obligations arising from common law—why they exist, when they apply, and what a lawyer must do or is not required to do to comply with them. But again, this testimony may not creep into an assessment of what the evidence in the case shows on these points.

### b. Flaherty's other topics

The discussion in the previous section covers all of the opinions offered in Hirshon's report and all but three in Flaherty's. Flaherty offers opinions on three other points: proximate cause, standing, and whether certain attorney's fees are properly recoverable as damages. The latter two opinions (standing and recoverability of certain items) amount to legal opinions on points on which the Court has made rulings and/or will instruct the jury. They are inadmissible. *See, e.g., White v. Fitzpatrick*, 755 F. App'x 563, 569 n.2 (7th Cir. 2018); *Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir. 2011).

Flaherty's third opinion is that Mizrachi has not shown that any of his claimed damages were proximately caused by any breach of duty by Ordower. On this, Flaherty's report again makes it clear that what he has done is assess the evidence, draw inferences or conclude that no inference can be drawn, and reach conclusions regarding the or insufficiency of the evidence. This strays beyond the appropriate province of an expert, at least one in Flaherty's field, and it offers nothing from his expertise that a jury cannot already do on its own. This opinion is inadmissible.

### 2. Kenneth Matthieu

Mizrachi has a second expert, Kenneth Mathieu, a forensic accountant. He is

offered to provide opinions regarding the amounts that should be recovered by Mizrachi if he prevails.  Some background is needed before addressing Ordower's arguments that some of Matthieu's opinions are inadmissible.

Matthieu says that an entity called Net Lease Management Partners, LLC (NLMP) was formed to purchase and manage commercial properties.  Initially, NLMP was owned as follows:

- JAL Group, LP – 1.02%

- Brentwood Capital, LLC – 40.65%

- AFP Eleven Corp. – 50%

- LPBP Corp. – 8.33%

The operating agreement for NLMP designated JAL as the managing member of NLMP and stated that JAL would be paid a fee.  The operating agreement also provided for distribution of NLMP's "net cash flow," "capital receipts," and "net mortgage proceeds" in specified amounts and proportions.  JAL, as managing member, was entitled to certain portions of these amounts.  There is a dispute over whether Mizrachi had an interest in JAL.

There were negotiations on the part of Mizrachi, Seymour Holtzman, and, later, Ordower to purchase a majority interest in Brentwood Capital, which as indicated above was a significant minority holder of NLMP.  The core issue in the present lawsuit is whether Ordower served as legal counsel for Mizrachi in connection with the dealings the Court is about to discuss.

At some point, Mizrachi, Holtzman, and Ordower agreed to form an entity called SJLSJL, LLC to jointly purchase the interest in Brentwood Capital, with each of them to

contribute one-third of the amount due and hold the interest in equal proportions. Mizrachi says he understood as of a certain point that JAL, an entity of which he claims to have been an owner, would be designated as Brentwood's managing member following the acquisition.

The deal to acquire Brentwood Capital did not end up happening the way that Mizrachi says he expected. Mizrachi contends this is because Ordower and Holtzman shut him out of the deal. Ordower contends it is because Mizrachi backed out. In any event, Ordower and Holzman contend they became the sole owners of SJLSJL. They also eventually became members of NLMP's management committee, and once there they removed JAL from its position as NLMP's managing member. This left Mizrachi without a share of Brentwood Capital and without any distribution entitlements via JAL.

In August 2017, a little under three months before Mizrachi filed the present legal malpractice / breach of fiduciary duty suit against Ordower, SJLSJL filed suit against Mizrachi in Florida state court, seeking a declaration that Mizrachi had no interest in the entity. In January 2019, Holzman joined the Florida lawsuit as a plaintiff, and Ordower ended up at some point getting named as a defendant. Still later, in October 2019, Mizrachi filed a counterclaim in the Florida case, seeking a declaration that he owned a one-third interest in SJLSJL. A few months before that, in August 2019, Mizrachi filed a state-court lawsuit in Delaware against Holtzman and Ordower, likewise seeking a declaration that he owned a one-third interest in SJLSJL. Neither the Florida nor the Delaware case has proceeded to judgment; they have, largely, lagged behind the present case.

Now back to Matthieu's report. He includes three elements of damages. The

first is the amount Mizrachi would have received in distributions from NLMP by virtue of a one-third ownership share of SJLSJL. The second is the amount Mizrachi would have received by virtue of his ownership interest in JAL. The third is the "total legal and other expenses incurred by Mizrachi related to Attorneys' fees and other expenses to address the consequences of the Defendants' alleged legal malpractice and breach of fiduciary duties . . . ." Dkt. no. 223-6 (Matthieu report), ECF p. 12 of 40.

Now to Ordower's motion; he challenges the second and third items in Matthieu's report. *See* Defs.' Mem. in Support of Mots. in Limine (dkt. no. 223) at 28. On Mizrachi's purported share of the managing member payments due to JAL—which Mizrachi claims was 50.5%—Ordower contends Matthieu has no basis for applying the 50.5% figure, which is disputed. *See id.* at 29. On the legal fee issue, Ordower claims the fees in question were actually paid by certain entities and that Matthieu has no basis other than Mizrachi's word on the question of Mizrachi's ownership of those entities. *See id.* at 30.

These arguments lack merit as a basis to exclude Matthieu's testimony. It is certainly appropriate for Ordower to cross-examine Matthieu regarding his reliance on Mizrachi's version of the events and its effect on his opinions; to critique Matthieu during argument for that reliance; and to offer competent evidence regarding the points on which he attacks Matthieu. But Matthieu's reliance on Mizrachi's account does not render his testimony inadmissible. As Judge Amy St. Eve (then a district judge) put it:

> The Advisory Committee stressed that 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system' or to allow the district court to preempt the jury by evaluating the correctness of the facts on which the expert relied." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 943 (N.D. Ill. 2006) (citation omitted). "Moreover, although an expert cannot rely on facts that are clearly contradicted by undisputed

evidence, an expert may rely on his client's version of the facts when forming his opinions." *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 1730608, at *6 (N.D. Ill. May 2, 2016) (citing *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 810 (N.D. Ill. 2013)). As the Seventh Circuit explained in *Hall*, "[t]he fact that there was a dispute between Hall and the interrogating officers about the nature of the questioning itself provides no reason to exclude the expert testimony; it is a rare case where everything is agreed except the subject matter for which the expert is presented." *Hall*, 93 F.3d at 1345; see also *Scott v. City of Chicago*, 724 F. Supp. 2d 917, 923 (N.D. Ill. 2010) ("It is of course permissible for an opinion witness, in arriving at his or her conclusions, to premise that result on one side's view of contested events."). Moreover, [Plaintiff's expert] Dr. Leo is not vouching for Plaintiff's version of the facts. It will be up to the jury to determine if it believes Plaintiff's version of the facts upon which Dr. Leo relied in rendering his opinions.

In addition, Defendants fail to cite legal authority that an expert witness cannot consider his client's version of the contested facts—or must consider both sides' versions of the contested facts—when forming expert opinions and the Court could find none. This is because "[e]xperts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence." *Richman*, 415 F. Supp. 2d at 942; *see, e.g., Kluppelberg*, 2016 WL 6821138, at *6.

*Harris v. City of Chicago*, No. 14 C 4391, 2019 WL 2436316, at *12-13 (N.D. Ill. June 5, 2017).

Because these are the only bases on which Ordower challenges Matthieu's testimony, the Court overrules his motion *in limine*.

### 3. James McGovern

Ordower's second expert is James McGovern. He is offered to testify on causation and damages-related issues. His opinions are as follows. (1) The lost profits and unjust enrichment claimed in Matthieu's report are speculative until the Florida lawsuit regarding Mizrachi's claimed ownership in SJLSJL LLC is decided. (2) There is no causal link between the alleged wrongdoing and Mizrachi's claimed lost profits arising from the claimed loss of the one-third interest in SJLSJL (this is item one from

Mizrachi expert Matthieu's report). (3) There is no causal link between the alleged wrongdoing and Mizrachi's claimed lost profits arising relating to the managing member interest in NLMP (this Is item two from Matthieu's' report). (4) Matthieu's calculation of lost profits is wrong even if Mizrachi prevails on all issues. (5) There is no causal link between the alleged wrongdoing and the unjust enrichment damages claimed in Matthieu's report. (6) Lost profits and unjust enrichment damages are alternatives, and awarding both would give Mizrachi a windfall.

Mizrachi moves, first, to exclude McGovern's opinions 2, 3, and 5, arguing that they amount to liability opinions on which he has no relevant expertise. The Court agrees. Like the reports of Flaherty and Hirshon, these opinions by McGovern are based on his resolution of conflicts in the evidence and judgments about its sufficiency to prove certain points. These are quintessential jury functions on which McGovern contributes nothing from his forensic accounting expertise that would be helpful to the jury.

Mizrachi's argument regarding opinion 1 is that the question of whether damages are speculative and thus non-recoverable due to the pendency of the Florida case—as McGovern contends—is a question of law. Mizrachi is right about this, and as such expert opinion on the point is improper. It is and will be up to the Court to decide whether Mizrachi's claimed damages arising from his expected or hoped-for one-third share of SJLSJL are recoverable. To the extent there is a legitimate point that this issue may be affected by the outcome of the Florida litigation—to which all of the relevant individuals are parties—this can be dealt with in the present case by ensuring that the jury is required to break down the basis for any damages it awards and,

perhaps, by posing special interrogatories to the jury. This will enable and facilitate any later review or adjustment.

The same is true of McGovern's opinion 6, that Mizrachi can't recover both lost profits and unjust enrichment because they are duplicative. The question of whether remedies are duplicative such that a party must elect between them is a matter of law. The Court assumes this will be dealt with in this case by clear instructions to the jury— which the Court will rely on the parties (including Ordower) to propose—and, if needed, special interrogatories.

The Court overrules Mizrachi's objection to McGovern's opinion 4. It is based on the premise that McGovern is applying a comparative-fault analysis and saying what the damages are only if Ordower is 100 percent responsible. If that were correct, the opinion would in fact be inadmissible, as McGovern has no basis in his training or expertise to opine regarding the percentage of each side's purported fault, nor is his testimony regarding the legal standard for awarding damages properly admissible. McGovern's opinion 4 is better read, however, as simply a statement that, if liability is found, he disagrees with Matthieu's calculations as well as the basis for his disagreement. *See* dkt. no. 227-4 (McGovern report), ECF pp. 24-25 of 47. Considered this way, opinion 4 is an appropriate and admissible opinion.

### 4. Mizrachi motion *in limine* 2

In his second motion *in limine*, Mizrachi asks the Court to preclude argument that he is not entitled to damages unless and until the Florida court determines what interest, if any, he has in SJLSJL as well as argument that any award here could improperly lead to a double recovery when considered with the Florida case. These points will be dealt

with via jury instructions and, if appropriate, special interrogatories. The parties may of course make arguments consistent with the jury instructions, but Ordower cannot gain with the jury what he lost with the Court, specifically, postponing the trial until after the Florida litigation is finally determined. The Court therefore grants Mizrachi's motion.

### Conclusion

The Court believes that it has now ruled on all of the matters presented in the parties' motions *in limine*.[2] Based upon the Court's exclusion, via this order, of additional evidence (including, but not limited to, the experts' respective weighing of and conclusions about what the evidence shows), all of which was done after the Court's setting of trial time limits, the Court reduces each side's trial time allocation by one hour, to a total of fifteen each, thirty total. The Court notes that it regards this as a very conservative downward adjustment given the amount of evidence excluded via the present order.

Date: May 2, 2021

_____
MATTHEW F. KENNELLY
United States District Judge

---

[2] The Court notes that it is not entirely clear whether, and how, Mizrachi's fiduciary duty claim differs from his malpractice claim; his proposed jury instructions on the fiduciary duty claim premise the claim entirely on the contention that he had an attorney-client relationship with Ordower. If there is actually a difference between the two claims, there is some possibility it may affect one or more of the rulings in this order.

14