**IN THE UNITED STATED DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH MIZRACHI | ) | |
| | ) | Case No. 1:17-cv-08036 |
| `      Plaintiff, | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| LAWRENCE B. ORDOWER and | ) | <u>JURY DEMAND</u> |
| ORDOWER & ORDOWER, P.C., | ) | |
| | ) | |
|      Defendants. | ) | |

<u>**DEFENDANTS' COMBINED MOTION FOR JUDGEMENT**</u>
<u>**AS A MATTER OF LAW OR ALTERNATIVELY**</u>
<u>**FOR A NEW TRIAL OR TO ALTER OR AMEND THE JUDGMENT**</u>

NOW COME Defendants, Lawrence B. Ordower ("Mr. Ordower") and Ordower & Ordower, P.C. (the "Ordower Firm") (collectively "Defendants"), by and through their attorneys, and pursuant to Rule 50(b), hereby renew their oral Rule 50(a) motion for judgement as a matter of law in connection with Plaintiff's claim for damages or alternatively, request that this Court grant them a new trial pursuant to Rule 59(a) or alternatively, alter or amend the judgment pursuant to Rule 59(e), and in support of this Combined Motion, hereby state as follows:

<u>**INTRODUCTION**</u>

The trial that took place last month represented the culmination of years of motion practice on complex and novel legal issues necessitated by the particular facts of this case – notably, Plaintiff suing individually for damages that have not crystallized related to an ownership dispute that remains unresolved and for harms to entities rather than to himself personally. Respectfully, as described below, the Court erred significantly in its resolution of several of these issues, depriving Defendants of a fair trial and warranting a new trial or an alteration or amendment of the judgment pursuant to Federal Rules of Civil Procedure 59(a) and 59(e). For example, the Court

1

erroneously applied its ruling on staying this matter pending the outcome of a related litigation to a completely distinct legal issue—on which it never ruled—to preclude all evidence and argument related to that highly relevant related litigation. Moreover, as Defendants argued in motions after the close of Plaintiff's case, and again at the close of all evidence and prior to the case being submitted to the Jury, Plaintiff failed to demonstrate a "legally sufficient evidentiary basis" for damages based on the Court's unprecedented expansion permitting Plaintiff to recover on behalf of wholly separate entities and for damages that remain entirely speculative and contingent. Fed. R. Civ. P. 50(a). This Court denied Defendants' motions. The jury returned a verdict in Plaintiff's favor and against Defendants for the full amount of damages requested by Plaintiff of $10,197,178.

Pursuant to Rule 50(b) Defendants hereby renew and restate their oral motion for judgment as a matter of law due to the absence of evidence of damages to a reasonable degree of certainty. In the alternative, for the reasons set forth in Section II below, Defendants request that this Court grant a new trial pursuant to Rule 59(a) or alter or amend the judgment pursuant to Rule 59(e).

I. **Judgment as a Matter of Law in Defendants' Favor is Warranted Pursuant to Rule 50(b) due to Plaintiff's Failure to Present Evidence Upon Which a Reasonable Jury Could Have Determined that he Personally Suffered Damages to a Reasonable Degree of Certainty.**

To state a claim for legal malpractice, "[f]our elements must be alleged and proven: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission that breached that duty; (3) proximate cause that establishes that but for the attorney's negligence, plaintiff would not have suffered an injury; and (4) damages." *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 676 (1st Dist. 2003). Plaintiff failed to present evidence revealing personal damages to a reasonable degree of certainty. Accordingly, judgement as a matter of law in Defendants' favor is warranted.

Plaintiff places three categories of damages at issue in this case: (1) the profit he allegedly lost due to the loss of his one-third membership interest in SJLSJL, LLC ("SJL"); and (2) the loss of its annual NLMP managing member fee and a 15% promote fee (the "Promote Fee"). allegedly owed to non-party JAL Group ("JAL"), and (3) certain legal expenses allegedly incurred as a result of Defendants' alleged malpractice. However, Plaintiff's claims to have lost the one-third interest in SJL and JAL's Promote Fee are speculative and unrecoverable as a matter of law, and unsupported by the evidence. The Court's findings otherwise represent an unprecedented and erroneous expansion of rulings in transactional malpractice cases. Plaintiff's claim for damages based on his purported interests in various non-party entities represents a novel and dangerous theory that would extend an attorney's malpractice liability to all entities an individual client may happen to own or control, and allow the corporate form to be wielded a sword and a shield. Accordingly, judgement should be entered as a matter of law in Defendants' favor and against Plaintiffs.

### A. Plaintiff failed to introduce evidence revealing that he is reasonably certain to lose his one-third interest in SJL or that JAL is reasonably certain to lose the Promote Fee thereby rendering these damage claims speculative and unrecoverable as a matter of law.

Although much of the evidence regarding the Florida action was kept from the jury, it remains undisputed that the declaratory judgment action in Florida to determine the ownership of SJL has not concluded, and all of the related assets remain in escrow, as do the assets that would be paid out for the JAL Promote Fee. The ownership status of SJL remains in limbo and Mizrachi's loss, if any, has not been determined. Therefore, Defendants renew their argument that this renders Mizrachi's alleged losses too speculative for recovery, and that the Court's previous rulings on this matter represent an erroneous extension of existing authority that do not provide a legally sufficient basis for recovery. If anything, Mizrachi's testimony and sworn statements to the effect

3

that he owns one-third of SJL and is due the Promote Fee suggest that the only non-speculative conclusion is that he has not suffered any loss. "In a legal malpractice action, actual damages are never presumed. Such damages must be affirmatively established by the aggrieved client. Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed. Making that demonstration requires more than supposition or conjecture. Where the mere possibility of harm exists, or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. Damages are considered to be speculative, however, only if their existence itself is uncertain, not if the amount is uncertain or yet to be fully determined." *No. Ill. Emer. Physicians v. Landau*, 216 Ill. 2d 294, 307 (Ill. 2005) (citations omitted).

As has been discussed in various submissions in this case, including Defendants' Motion for Summary Judgment (ECF 184, 187) and Defendants' Motion to Stay (ECF 173), there is a state court lawsuit currently pending in Palm Beach County, Florida (the "Florida case") that is closely related to this case. The Florida case is a declaratory judgment action filed by Seymour Holtzman as managing member of SJL on August 1, 2017 in an attempt to obtain a legal determination as to the ownership of SJL, whose assets remain in escrow and whose ownership remains undetermined, and to determine JAL's entitlement to the Promote Fee.

Plaintiff's damages claims in connection with his alleged loss of the one-third interest in SJL and JAL's portion of the Promote Fee are speculative and completely contingent on the results of the Florida case. Without the Florida case being resolved, the amount of Plaintiff's claimed loss aside from legal expenses, if any, is unknown. Plaintiff admits that $33 million (covering the economic value of the assets of SJL and the Promote Fee) is being held in escrow until the disputes at issue are resolved, and they could well be resolved entirely in his favor. (Tr. 351:15-17). Such

4

speculative claims of damages do not constitute relevant evidence and thus cannot form the basis upon which the jury might rely in determining damages in this case. *See. Alper v. Altheimer Gray,* 65 F. Supp. 2d 778, 785 (N.D. Ill. 1999) ("[T]he damages the Alpers claim to have incurred as a result of Defendants' conduct are not speculative, because the Alpers *no longer own* the TPI wholesale operation. *This distinction is crucial* . . . ." (emphasis added)); *Eiben v. A. Epstein & Sons International*, Inc., 57 F.Supp.2d 607, 613 (N.D. IL 1999) ("actual damages claim can be so completely speculative that it must be denied"); *Cullinan v. Fehrenbacher*, 970 N.E.2d 86, 88 (Ill. App. Ct. 2012) (staying legal malpractice trial but permitting discovery to proceed "until such time as there is a determination by a judge that the resolution of the estate litigation has been brought to its final resolution or sufficiently final resolution to permit a quantification of the damages to which a plaintiff would be entitled in this legal malpractice litigation if liability is shown").

Moreover, the only non-speculative conclusion that might be reached, based on Mizrachi's testimony and sworn statements, is that he has *not* suffered any loss. Plaintiff testified during trial that he, or entities he claims to control, own a one-third interest in SJL (Tr. 308:9-308:12; 388:20-388:22). Plaintiff testified further that he filed amended tax returns in connection with SJL for the years 2016, 2017 and 2018, stating that he, or entities he claims to control, own one-third of SJL, thereby allocating the loss for those years to himself. (Tr. 308:13-308:24). Plaintiff has claimed similarly in his sworn pleadings in the Florida case. (ECF 173-5, pars. 1, 11, 18, 66). He has also sworn to JAL's alleged entitlement to the Promote Fee. (ECF 173-5, par. 66, 69-76).

Because speculative damages are not recoverable in a legal malpractice action, Mizrachi should not be permitted to recover what he has not lost. It is counterintuitive to allow Plaintiff to argue that he lost his one-third interest in SJL and that he lost the Promote Fee all due to the wrongdoing of Defendants when he has made verified claims and testified under oath that he is a

rightful owner of one-third interest in SJL and that he is entitled to the Promote Fee and when ownership to SJL and entitlement to the Promote Fee remain undetermined.

Simply put, Plaintiff's claimed losses in connection with his alleged loss of his one-third share of SJL and JAL's Promote are unknown until the Florida case is resolved and are therefore speculative and unrecoverable as a matter of law.

**B. Defendants should be granted judgment as a matter of law in connection with Plaintiff's claim to damages because Plaintiff failed to present legally sufficient evidence that the damages he claims were personally incurred by him.**

The undisputed evidence in this case reveals that the losses alleged by Plaintiff were not incurred by him, but by numerous different corporations and entities that he claims to own and control. But Plaintiff cannot recover as an individual for harms suffered by a corporation or entity absent very narrow circumstances, none of which apply here. To permit him to do so would be to allow Plaintiff to use the corporate form as both a sword and a shield; to utilize it for tax and estate planning and to limit his liability when convenient, but to turn around and recover individually for damages to those corporations and to do so without regard to the diversity jurisdiction required of this forum. The record demonstrates entity ownership for each of Mizrachi's claimed losses including: (1) Plaintiff's one-third interest in SJL was to be held by JAS KIN, (2) Plaintiff's claim to the Promote Fee is based on his alleged ownership interest in JAL, and (3) Plaintiff's claim to legal fees and expenses incurred in the Florida case is based on his alleged 100% ownership in M Group Two LLC, Mizrachi C2 Group LLC, JAL Group L.P., Third MG LLC, 540 W. Madison Holdings, LLC, and 300 River Holdings. The Court's erroneous and novel ruling allowing Plaintiff to recover on behalf of numerous non-party entities coupled with the jury's findings create a dangerous precedent. While individuals commonly claim that someone who has a duty to a corporation *also* owes them duties individually, Plaintiff points to no case in which an individual

has claimed the opposite as he does here: his personal attorney owes a duty that automatically extends to all of the many corporations and entities in which he claims to hold an indirect ownership interest. Extending the scope of attorney-client duties so far would create what one court described as "potentially unlimited liability." *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 718 (D. Vt. 2012).

A plaintiff ordinarily cannot seek damages in a legal malpractice action in his individual capacity for damages incurred by an entity in which he maintains an ownership interest. *Stevens v. McGuireWoods*, *LLP*, 2015 IL 118652, Par. 17. "This is entirely inappropriate and absolutely proscribed by our case law." *Id. See also Cashman v. Coopers and Lybrand*, 251 Ill. App. 3d 730, 726 (2nd Dist. 1993) (shareholders cannot sue in their individual capacity for damages incurred by a corporation). The testimony establishing that various entities, rather than Mizrachi himself, suffered the harm here is significant because an individual cannot recover for the harm from a corporation absent certain exceptions, such as the existence of a "special contractual duty." But Defendants did not have any contractual duty or special duty to Mizrachi that would extend to these corporate entities. Most commonly, this argument is seen in the opposite situation where an individual sues based on harm to a corporation and tries to recover as an individual. But Defendants are not alleged to have harmed *these entities* through legal malpractice. Mizrachi has always claimed the harm was to himself *personally*, and throughout the trial went out of his way to try and establish his personal ownership of these entities. But he has never claimed or alleged that Defendants harmed any of his entities specifically, and therefore the existing case law appears to be inapplicable

Even were Mizrachi not claiming the opposite of what the case law holds, the question of whether Defendants' alleged representation of Mizrachi extended to presumably all of the many

entities that Mizrachi claims to own or control would have to be answered in the negative. This is because the attorney-client relationship, which the jury found to exist, does not create a special duty for purposes of this exception. See *Citibank v. City of Burlington*, 2012 WL 2050730 at \*8-9 (D. Vt. June 7, 2012) (finding no "special contractual duty" based on "the violation of general professional duties of a lawyer, which . . . sounds in tort, not contract ").

Moreover, allowing Mizrachi to use the corporate form for purposes of estate planning and limited liability, but permitting him to sue individually for damages suffered by that corporate form would subvert the very purpose of the corporate structure. *See Freedom Fin. Group v. Woolley*, 280 Neb. 825, 834 (Neb. 2010) (finding no "special duty" on behalf of an attorney and noting that this "argument would allow a member of an LLC to use the corporate form as a shield to protect itself from personal liability for acts taken by an LLC while still allowing an individual to collect damages, such as lost profits"). Significantly, doing so also allows him to circumvent this Court's diversity jurisdiction requirements by allowing him to recover on behalf of entities that may not themselves be able to recover in this forum due to lack of diversity.[1] Courts have also found a special duty or relationship did not exist in a variety of contexts for many reasons including the potential conflicts inherent in extending the attorney-client relationship to entities with shared ownership unknown to the attorney. *Roberts v. Fearey*, 162 Or. App. 546, 553 (Or. Ct. App. 1999) (declining to find a special relationship existed between a trustee's attorney and the trust and trust beneficiaries). For this reason alone, the Court should find in favor of Defendants and against Plaintiff as a matter of law.[2]

---

[1] JAL Group is a partnership, which in order to diversity would normally be required to plead the citizenship of all of its members, which may well not be diverse. Several of the entities involved, including 540 W. Madison Holdings LLC and 300 River Holdings, own real estate in Chicago and may well not be considered diverse.

[2] The Court has not examined the "special duty" issue at length in any of its previous rulings, but did acknowledge the import of a finding that JAS Kin was to have ownership of SJL in its summary judgment opinion by noting that summary judgment on this same issue would not be granted because there was a factual dispute over whether JAS

The record demonstrates that Plaintiff does not personally own any of these entities. Indeed, the evidence completely contradicts Plaintiff's claim that he is a member of JAL. *See* Defendant's Trial Exhibit 7. This Exhibit, a copy of the JAL Limited Partnership Agreement, lists the General Partner and Limited Partners of JAL but nowhere is Joseph Mizrachi's name found. Similarly, absent from the Record is any credible evidence from which a jury could find that Plaintiff owned all of JAS KIN, or that Plaintiff owned all of all the entities listed by Plaintiff as having paid the attorneys' fees in the Florida case. Indeed, although Plaintiff initially stated that he paid all of the legal fees and expenses associated with the Florida case, Plaintiff later admitted that he did not own all of either 540 W. Madison Holdings LLC or 300 River Holdings, two of the six entities the evidence revealed actually paid the legal fees in the Florida case (Tr. 393:13-394:12).[3] Accordingly, Plaintiff's testimony that he owned all of the entities that paid his legal fees in the Florida case is negated by the evidence. Moreover, Plaintiff presented no written documentation revealing that he owned any of the other entities that allegedly suffered damages in this case. Plaintiff failed to demonstrate that he personally suffered the damages he seeks to recover (the entire amount of the one-third interest in SLJ – owned by JAS KIN; JAL's Promote – owned by JAL; 100% of the attorneys' fees paid in the Florida case which were paid by M Group Two LLC, Mizrachi C2 Group LLC, JAL Group L.P., Third MG LLC, 540 W. Madison Holdings,

---

Kin or Mizrachi owned the SJL interest: "Based on this evidence, a reasonable jury could conclude that JAS Kin owned the interest in SJL., but a reasonable jury could also conclude that Mizrachi owned it." (ECF No. 208, p. 23). The Court's implication being that were there a finding that JAS Kin owned the interest, Mizrachi would be precluded from recovering based on the law outlined in *McGuireWoods.* In fact, during the trial, Mizrachi testified that JAS Kin was intended to have the ownership interest in SJL (Tr. 389:17-390:20; Tr. 393:1-5).

[3] The lack of credibility of Plaintiff's testimony is also revealed in Plaintiff's testimony in connection with ANU Loan. Plaintiff testified earlier in the trial that he owned ANU Loan, however later in the trial, when presented with the Operating Agreement for ANU Loan, Plaintiff admitted that he did not own any part of ANU Loan (Tr. 394:20-395:14).

LLC, and 300 River Holdings) and he has no legally sufficient basis for recovering on behalf of

his entities. Accordingly, judgment is warranted as a matter of law in favor of Defendants.[4]

**II.     The Court Should Grant Defendants a New Trial because the Court's Errors in Connection with Defendants' Renewed Motion to Stay and to Reconsider, in Connection with Several of the Motions In Limine and in connection with the Jury Instructions Rendered The Trial Unfair To Defendants and because The Jury's Verdict was against the Manifest Weight of the Evidence.**

Under Rule 59, the Court may grant a new trial after a jury trial "for any reason for which

a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P.

59(a)(1)(A). In ruling on a motion for new trial, federal law requires a district court to determine

"whether the verdict is against the weight of the evidence ... the damages are excessive, or ... for

other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson*, 390 F.3d 525,

530 (7th Cir.2004) (quoting *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1460 (7th

Cir.1992) (internal citation omitted). A party seeking a new trial based on alleged legal errors must

show that the Court abused its discretion, and then demonstrate that the errors denied him a fair

trial affecting its outcome. *See Rasic v. City of Northlake*, 2010 WL 3365918, at *6, 2010 U.S.

Dist. LEXIS 86815, 17–18 (N.D.Ill. Aug. 24, 2010) (internal citations omitted). Rule 59(e) grants

the trial court the authority to amend a judgement upon the showing of a "manifest error of law or

fact." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015). Under Federal Rule of Civil

Procedure 59, "[A] court will set aside a verdict as contrary to the manifest weight of the evidence

only if no rational jury could have rendered the verdict." *Whitehead v. Bond*, 680 F.3d 919, 928

(7th Cir. 2012). In making this determination, the Court "has the power to get a general sense of

---

[4] The inclusion of a jury instruction specifically stating that "[t]he fact that these other companies and partnerships are not parties to this lawsuit has no bearing on any issues you are called upon to decide," coupled with the above facts represents a separate but related ground for a finding that Defendants were unduly prejudiced and should receive a new trial pursuant to Rule 59(a).

the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Id*. *See also, Morris v. BNSF Railway Co.,* 429 F.Supp.3d 545, 553 (2019*).*

**A.     This Court's errors in connection with Defendants' and Plaintiff's Motions *in Limine* on speculative damages as well as this Court's Jury Instructions in connection with damages and in connection with the Florida case severely prejudiced Defendants and deprived them of the right to a fair trial.**

The Court committed reversible error that seriously prejudiced Defendants and deprived them of a fair trial by keeping the Florida litigation from the jury and, effectively, causing the jury to presume the loss of Plaintiff's one-third membership interest and the loss of the Promote Fee allegedly owed to non-party JAL. The Court did so by conflating two distinct legal issues – the issue of whether the case should be stayed and the issue of whether damages were too uncertain or speculative. While the Court ruled repeatedly and at length on the stay issue, the Court has never explained its rationale for keeping the jury from hearing Defendants' argument and evidence that due to the Florida litigation the damages were too speculative and uncertain to be granted. Respectfully, the rulings that have followed from the explicit and erroneous conflation of these two distinct issues represent grievous legal error and warrant a new trial.

To demonstrate specifically how the Court erred by confusing these issues, we recount the history of Plaintiff's motion to exclude evidence and argument on the issue of whether the damages were too speculative or uncertain. Plaintiff's Motion *in Limine* No. 2 (ECF 227), argued that Defendants should be specifically excluded from arguing that Plaintiff's damages are speculative.[5]

---

[5] Not only did Defendants argue that they had every right to produce evidence and to argue that Plaintiff's claims were speculative, but Defendants also filed a Motion *in Limine* (ECF 222, 223) arguing that Plaintiff's claims for profits he allegedly lost due to the loss of his one-third membership interest in SJL and the loss of the Promote Fee allegedly owed to non-party JAL should be excluded because they were too speculative and uncertain to be recoverable and that the allowance of those claims risked the possibility of a double recovery. The Court denied Defendants' Motion *in Limine* No. 1 without prejudice to the filing of a Rule 50 Motion.  Defendants did eventually make a Rule 50(a) Motion

On October 29, 2020, at the Pre-Trial Conference on this matter, this Court took Plaintiff's Motion *in Limine* No. 2 under advisement without ruling (ECF 232). On May 2, 2021, the Court ruled on Plaintiff's Motion *in Limine* No. 2 but did so obliquely in a way that demonstrated that it was already conflating these two legal issues:

> Mizrachi asks the Court to preclude argument that he is not entitled to damages unless and until the Florida court determines what interest, if any, he has in SJLSJL as well as argument that any award here could improperly lead to a double recovery when considered with the Florida case. These points will be dealt with via jury instructions and, if appropriate, special interrogatories. The parties may of course make arguments consistent with the jury instructions, but *Ordower cannot gain with the jury what he lost with the Court, specifically, postponing the trial until after the Florida litigation is finally determined.*

(ECF 248 at p. 13-14) (emphasis added).

Although not specifically stated in the Court's ruling, prior to opening arguments the Court addressed this issue again and made it clear that Defendants were precluded from arguing Plaintiff's damages claims were speculative or uncertain due to the pendency of the Florida case. (Tr. 124:18-125:12). Specifically, the Court stated the following:

> THE COURT: Okay. So first of all, I'm not sure that I would definitively rule out any and all damages about being speculative because I think the damages instruction talk about the plaintiff has to prove damages by a preponderance of the evidence and not by speculation. However, just to be clear about it, it's not -- it wouldn't be in my view and I guess that's what counts at this point, *it wouldn't be a proper argument to say, well, he can get his damages in the Florida lawsuit or in some other proceeding and therefore you shouldn't award anything to him here.*

*Id.* (emphasis added).

The Court doubled down on its conflation of these two issues during the motions for judgment as a matter of law:

> This is not an argument that is going to be made to the jury that you shouldn't award him any damages because he hasn't really lost his interest yet because of the Florida case. If

---

in connection with its claims that Plaintiff's damages, aside from its legal fees, were speculative, but that Motion was also denied. Defendants have renewed that Motion as a Rule 50(b) Motion above.

that happens, even though I'm now telling you that you can't do it and have made that clear before, it's going to be ugly. So don't even think about trying that.

(Tr. 641:24-642:6).

The Court's limitation on the Florida action went even further. The Court included a jury instruction that specifically stated that the jury could only consider the Florida case in considering Plaintiff's request for damages for legal fees arising out of that case, and that the outcome of that case had *no bearing* on the instant matter (ECF 272 p. 12) (emphasis added). The Court also rejected Defendants' jury instruction setting forth the law on the necessity of the certainty of the fact of damages and on the prohibition of speculative damages and against double recovery (ECF 224.10, Instruction No. 13) and an instruction stating that Defendants were claiming that Plaintiff's damages were speculative and could result in a double recovery (ECF 224.10, Instruction No. 12). The Court's final Jury Instructions did not mention the fact that Defendant was contesting Plaintiff's damages as speculative and possibly leading to a double recovery *at all* (ECF 272).

This history demonstrates that the Court effectively applied its rulings on the Motion to Stay to the Motions *in limine* regarding speculative damages; but those are two completely distinct legal issues. The Court's application of its rulings in this way constitutes serious error that should lead to a new trial. The Court's error is made plain by its own words in its abbreviated ruling on Plaintiff's motion *in limine:* "Ordower cannot gain with the jury what he lost with the Court, specifically, postponing the trial until after the Florida litigation is finally determined." However, all that Defendants lost with the Motion to Stay was the ability to postpone the trial to see whether the damages Mizrachi claimed in connection with the one-third interest in SJL and the Promote Fee became concrete; in no way did the denial of the Motion to Stay result in Defendants' ability

13

to argue, or for the jury to consider, evidence that Mizrachi had not suffered the loss of his one-third interest in SJL or the Promote Fee because those issues had not been determined.[6]

Ordower had to go to trial with both hands tied behind his back on the damages issue. How were Defendants supposed to present evidence or argue that damages in this case are speculative or uncertain when they could not present evidence or argue the reason *why* those damages are speculative; that being evidence of the allegations contained in the Florida case revealing that Plaintiffs' alleged losses have yet to be decided? They could not. The jury could, of course, have rejected Defendants' evidence and argument and found, as a factual matter, that Plaintiff's damages were not speculative, but the Court did not allow the jury to consider that evidence and hear that argument. Instead, the court effectively asked Defendants to fight a case where the damages were presumed.[7]

This issue has such significance because damages are an essential element of Plaintiff's malpractice case, and where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent, and no cause of action for malpractice exists. *Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill.App.3d 349, 353 (1998); *Farm Credit Bank*, 197 Ill.App.3d at 104. Damages are speculative when uncertainty exists as to the fact of the damages. *Griffin v. Goldenhersh* 323 Ill.App.3d 398, 407 (2001) (citation omitted). It is up to the jury to determine those damages: "[t]he existence and amount of damages in a legal malpractice case is a question for the jury and great weight must be given to the jury's determination." *Meriturn Partners, LLC*,

---

[6] Although Defendants otherwise dispute whether Mizrachi should be entitled to recover his attorneys' fees, Defendants do not claim that those alleged damages were otherwise speculative or uncertain.

[7] Although the determination that damages are too speculative to go to the jury may be a legal issue, that does not mean the jury itself cannot consider whether damages are too speculative or uncertain to be awarded, as the Court acknowledged when it noted that "I think the damages instruction talk about the plaintiff has to prove damages by a preponderance of the evidence and not by speculation . . . ."

2015 IL App (1st) 131883, ¶ 18 (citing *Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317, 356  (2010)).

The Court granted Plaintiff the ability to submit evidence and argue that he had in fact lost his one-third interest in SJL and that JAL had in fact lost the Promote Fee. (Tr. 640:17-642:6). *See also*, (ECF 272 at p. 11). Defendants, however, could not contradict this testimony because the Court prohibited them from submitting evidence about the Florida litigation, including the verified allegations made by Plaintiff in the Florida case for the jury's consideration. (Tr. 348:18-349:25; 841:18-842:17). When coupled with the Jury Instructions that did not explain when damages are to be considered speculative and specifically instructed the jury not to consider the Florida case in any way other than assessing Plaintiff's legal fees claim, the jury effectively had no choice but to accept Plaintiff's evidence and argument that his claims as to the loss of his one-third interest in SJL and his loss of the Promote Fee were concrete losses. In other words, Plaintiff did not have to prove his claims to his damages in connection with his one-third interest in SJL or the Promote Fee with certainty. The jury could not perform its role of determining damages because it did not have all of the relevant evidence and argument in front of it regarding the uncertainty of whether Mizrachi would in fact realize the damages he has claimed. This is contrary to the law, unfair and prejudicial to Defendants. To put the magnitude of this error in perspective, it would be absurd to keep from the jury the results of the Florida action had it already been resolved; so it is completely incongruous to keep the fact of its pendency and its uncertain status from the jury.

Further, the Jury's verdict for the full amount claimed in connection with Plaintiff's claims for the economic value of the one-third interest in SJL and the economic value of the Promote Fee allows Plaintiff to a double recovery as he can now go to Florida and continue with his claims for the same damages. Plaintiff argued against Defendant's claim that allowing a jury to award these

speculative damages might result in a double recovery by arguing that the Florida court can take appropriate steps to avoid a double recovery. But how can it do that? If the Florida court finds that Plaintiff is entitled to one-third of the assets of SJL and the Promote Fee, who is going to be awarded the economic value of those assets if not Plaintiff? This is especially true given the fact that there are other parties involved in that case; not just Plaintiff and Defendants.

Defendants submit that due to the speculative nature of the damages in this case, other than the legal fees, as well as the potential for a double recovery, the Court erred in its rulings on Defendants' Motion *in Limine* No. 1, and Plaintiff's Motion *in Limine* No. 2 and by rejecting Defendants' jury instructions nos. 12 and 13 and including its own jury instruction prohibiting the jury from considering the Florida case. These rulings resulted in a manifest error of law and were prejudicial to Defendants thereby denying them the right to a fair trial. Accordingly, Defendants request that this Court grant them a new trial, or in the alternative, reduce the Judgment by those amounts still undecided in the Florida case, *i.e.*, $6,051,660 attributed to "One-third ownership share of SJL" and $3,086,144 attributed to the Promote Fee.

**B.      The Judge erred in denying Defendants' Renewed Motion to Stay filed just prior to trial.**

The Court's repeated denials of motions to stay this case unavoidably resulted in a trial that proved highly prejudicial and unfair to Defendants. Relevant authority supported a stay in this matter to avoid the exact situation that Defendants (and Plaintiff) find themselves in now—heading to post-trial motions and appeal in this proceeding and trial in yet another proceeding that will be further complicated by complex questions of double recovery. Most significantly, the questions surrounding the Florida action in this proceeding led to the prejudicial and erroneous rulings addressed in II.A herein that conflated two distinct legal issues and prevented Defendants from

accurately portraying the factual situation that exists today or arguing to the jury that Mizrachi has not lost his one-third interest in SJL or the Promote Fee.

Relevant authority firmly supported such a stay. In perhaps the closest analogue to this case, *Alper v. Altheimer Grey*, the court confronted a situation where transactional malpractice was alleged against the attorney whose negligence allegedly led to the sale of a portion of the business plaintiffs had not intended to sell. Potential causes of action against the buyer of the business remained and held the potential for recovery. However, the court found that the malpractice case could proceed, because "the damages the Alpers claim to have incurred as a result of Defendants' conduct are not speculative, *because the Alpers no longer own the TPI wholesale operation. This distinction is crucial*, because the cases discussed above, as well as others, ground their finding of prematurity in a determination that damages are too speculative." *Alper v. Altheimer Gray*, 65 F. Supp. 2d 778, 785 (N.D. Ill. 1999) (emphasis added). In that case then, the "crucial" distinction was the fact that the Alper's business had been sold and the loss had been realized; the transaction was complete; title had changed and there was no question what remained was an issue of damages, either for the attorneys or for the buyer. Here, the situation is analogous except for the "crucial" part of determining ownership of SJL. At this stage, no one can be said to hold legal title to SJL and its funds. That is precisely why they remain in escrow and why neither Mizrachi, Holtzman, or Ordower have received any funds.

The Court acknowledged the uncertainty with respect to the Florida action in response to Defendants' relevant motions *in limine* regarding the need to stay this case:

> To the extent there is a legitimate point that this issue may be affected by the outcome of the Florida litigation—to which all of the relevant individuals are parties—this can be dealt with in the present case by ensuring that the jury is required to break down the basis for any damages it awards and, perhaps, by posing special interrogatories to the jury. This will enable and facilitate any *later review or adjustment*. (ECF No. 248, pp. 12-13) (emphasis added).

17

However, this Court instructed the jurors that "the eventual outcome of the Florida lawsuit has no bearing on any of the issues that you are called upon to decide, and you should not speculate regarding the Florida lawsuit's merits or outcome." (ECF No. 272, p. 13). The jurors were only asked to break down their award of damages between a one-third ownership share of SJL, the managing member payment and the Florida lawsuit legal fees and expenses. (ECF No. 272, p. 19). They were not asked to explain how or why they awarded the amount they did for these three areas of damages

Before the resolution of the Florida case, there is no reasonable basis for an award of damages (aside from attorneys' fees). As previously argued, this Court cannot rule that Mr. Mizrachi suffered any malpractice if he did not suffer damages. *See Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 676 (1st Dist. 2003). *See also Cullinan v. Fehrenbacher*, 970 N.E.2d 86, 88 (Ill. App. Ct. 2012) (permitting discovery to proceed in a legal malpractice action but ruling that "trial is indefinitely stayed and cannot be set until such time as there is a determination by a judge that the resolution of the estate litigation has been brought to its final resolution or sufficiently final resolution to permit a quantification of the damages").

The jury decided to allocate damages to Mr. Mizrachi for his one-third membership share of SJL and the Promote Fee even though those same exact issues remain open in the Florida lawsuit, creating the potential for a double recovery by Plaintiff. Therefore, Defendants filed a Motion to Clarify or Reconsider this Court's Order on Remaining Motions *in limine* and Renewed Motion Stay filed on May 7, 2021. (ECF No. 260). Based on this motion and Defendants' previous motions to stay, the Court should grant Defendants' motion for a new trial, or in the alternative, alter or amend the judgment by reducing the Judgment by those amounts related to the issues still

undecided in the Florida case, *i.e.*, $6,051,660 attributed to "One-third ownership share of SJL" and $3,086,144 attributed to the Promote Fee.

### C. The Jury's finding that Defendants' alleged wrongdoing proximately caused JAL to lose the Promote Fee and thus, the Jury's verdict in favor of Plaintiff for the Promote Fee is contrary to the manifest weight of the evidence.

The jury's finding that Defendants' alleged wrongdoing caused JAL to lose the Promote Fee goes against the manifest weight of the evidence. Although it was undisputed that Mr. Ordower did not represent Mr. Mizrachi at the time of the Resolution removing him as managing member of NLMP, Mizrachi's theory was that the loss of the management fee "emanates from the stripping of his SJL interest," or was the cascading effect of Ordower's alleged malpractice with respect to the transaction. Tr. 666:6-13. However, the evidence demonstrates that the alleged relationship between Defendants' malpractice and the loss of the Promote Fee is too attenuated to constitute proximate cause. "The mere possibility of a causal connection is not sufficient to sustain the burden of proof of proximate cause. The causal connection must not be contingent, speculative or merely possible." *Susnis v. Radfar*, 317 Ill. App. 3d 817, 827 (Ill. App. Ct. 2000).

On July 5, 2017, the Management Committee of NLMP adopted a Resolution terminating JAL as the Managing Member of NLMP. (Tr. 822:24-25:1). This Resolution was signed by Atillio Petrocelli, Anthony Miceli and Michael Lamoretti as the designated members of the management committee of APF Eleven Corp., and by Seymour Holtzman, Jackson Koffman and Lawrence Ordower as the designated members of the management committee of Brentwood Capital, LLC. *See* Plaintiff's Ex. 105. As explained in the Resolution, the members of the NLMP Management Committee conferred and concluded that it was in the best interests of NLMP to remove and terminate JAL as the Managing Member. *Id.* at p. 9. This was due to JAL's failure to properly execute its job as Managing Member. *Id.* The Resolution listed JAL's deficiencies as managing

19

member, which included JAL's: failure to send written report, failure to properly communicate with the Members of NLMP, JAL prevention and lack of cooperation with a broker who had an interest for the Brighton Property, failure to inform the members of a prospective buyer for the Greensboro Property and JAL's actions that were adverse to the other 99% ownership partners in the Arbitration proceedings. *Id.* It is clear from this Resolution that JAL was dismissed as the managing member due to its own wrongdoings. Nothing in evidence shows that Defendants' alleged wrongdoing proximately caused JAL to be terminated and thus lose the Promote Fee. In fact, the evidence shows that NLMP, by majority vote, decided to remove JAL.

The reason the jury's finding on this issue is against the manifest weight of the evidence, and a finding of proximate causation cannot be supported, is because the Resolution would have passed *even if* Plaintiff had been a member of SJL and *even if* neither Plaintiff nor Mr. Ordower had not signed the Resolution because the Resolution only required a bare majority to pass. See Section 4.06 of the Net Lease Management Partners Agreement, Defendants' Trial Exhibit 4. By the terms of the Resolutions, it was Mizrachi's own acts that led to the removal as managing member, not anything that Defendants did or did not do.

Defendants did not represent Mizrachi in connection with the Promote Fee on any proceedings with the NLMP Management Committee. The undisputed evidence demonstrates that Mizrachi retained Finkelstein to represent him in November of 2016 at the latest, after the disagreement with Ordower and Holtzman had crystallized, and a full *nine months* before the Resolution. (Tr. 385:1-20) Defendants also did not cause the other members of the NLMP Management Committee to sign the Resolution to remove JAL as managing member and did not suggest the Resolution. What exists, even in Mizrachi's telling, is therefore a "mere possibility" that had he been a member of SJL, he would have been aware that this meeting was occurring and

20

therefore, one supposes, have not only voted against the Resolution but somehow also convinced a majority of the other board members to do so – the very type of "contingent, speculative or merely possible" chain of events that is too attenuated and "not sufficient to sustain the burden of proof of proximate cause." *Susnis,* 317 Ill. App. 3d at 827.

Further, the documents in evidence show that Plaintiff was not listed as an owner of JAL. Therefore, awarding Plaintiff the full amount requested in connection with the Promote Fee, $3,086,144, is contrary to the weight of the evidence. Accordingly, Defendants request that this Court grant them a new trial, or in the alternative, reduce the Judgment by at least $3,086,144.

**D.    The Judge Erred in Denying Defendants' Request to include a Jury Instruction regarding Contributory Negligence, which severely prejudiced Defendants and deprived them of the right to a fair trial.**

The Court erred in refusing to provide a contributory negligence instruction, which might have resulted in the jury deciding that Mizrachi was in fact at fault for some or all of his injuries through his own negligent conduct. To deny Defendants' the opportunity to present that theory to the jury deprived them of their right to a fair trial. It is black-letter law that contributory negligence can serve as a defense to a legal malpractice action. *Nika v. Danz*, 556 N.E.2d 873, 884 (Ill. App. Ct. 1990) ("[A] legal malpractice case[] [is] no different from an ordinary negligence case where contributory negligence is an affirmative defense."); *Bd. of Trs. of Comty. Coll. Dist. No. 508 v. Coopers & Lybrand*, 803 N.E.2d 460, 465 (Ill. 2003) (stating that the doctrine of pure comparative fault is "applicable to tort actions for recovery of economic loss"); *Carmel v. Clapp & Eisenberg, P.C.*, 960 F.2d 698, 703 (7th Cir. 1992) ("It is also well established that a plaintiff client's failure to follow legal advice may constitute contributory negligence in a legal malpractice case.").

Defendants submitted a proposed jury instruction for contributory negligence, which stated "when the expression 'contributory negligence' is used, it means negligence on the part of the

plaintiff that proximately contributed to cause the alleged damage." Defendants outlined specific ways in which Mizrachi's contributory negligence led to his own losses:

- Mizrachi led Ordower to believe that Mizrachi's other attorneys were representing him in the business deal;

- Mizrachi led Ordower to believe that Mizrachi withdrew from the deal; and

- Mizrachi failed to ever agree to the original terms of the business transaction.

In addition, with regard to the Promote Fee, the Resolution itself spelled out a long list of issues that had led to Mizrachi's removal as managing member of NLMP and could have been considered contributory negligence by the jury.

By the end of trial, sufficient evidence had been presented on all of these points that the jury could well have determined that Mizrachi's conduct contributed to his damages. For example, Ordower sent Mizrachi the Contribution and Indemnity Agreement on August 26, 2016, (Tr. 798:18-799:8, Exhibit 41), and the draft SJLSJL Operating Agreement that included the two-thirds majority voting provision on September 1, 2016, (Tr. 801:14-802:18, Exhibit 43). Yet Mizrachi waited until two days before the closing, nearly a month later, to leave his voicemail regarding the voting provision and withdraw from the deal. And Mizrachi never signed and sent back the Contribution and Indemnity Agreement. (Tr. 401:13-19; Tr. 826:11-827:1).

Despite the history of Mizrachi's actions that actively prevented the consummation of the transaction (and led to this litigation), in both an email exchange and in court prior to the case going to the jury, the Court discussed the proposed instruction indicating that it was inclined to strike it. Specifically, the Court stated, "I'm having a hard time with is how that's contributory negligence or contributory fault as opposed to lack of proximate cause…. I completely get the argument that, hey, whatever happened here was caused by Mr. Mizrachi backing out of the deal. Or Mr. Mizrachi, you know, basically going radio silent in terms of signing onto the deal. I don't

see that as fitting within sort of the rubric of contributory negligence. They're perfectly legitimate arguments on proximate cause….." (Tr. 1030:9-18). But these instructions do not need to be mutually exclusive. There is no reason that the jury could not have been presented with both arguments about proximate cause and contributory negligence.

Moreover, Mizrachi's actions certainly were the type that could support a jury finding of contributory negligence. For example, in *Arifin v. Matuszewich*, although the jury found an attorney liable for professional negligence in his creation of an account from which assets were later stolen, it also found the plaintiff responsible for 50% of his own injuries due to "plaintiffs' failure to do anything to correct the manner in which the account was set up, or to otherwise stop Schude from spending the money, [which] predated the time of their injury." *Arifin v. Matuszewich*, No. 98 C 1591, at *1 (N.D. Ill. June 19, 2000). Here, similarly, had the jury been able to consider the role of contributory negligence, it might well have found that Mizrachi's withdrawal from the deal, subsequent indecisiveness on the business terms and continued refusal to sign the indemnity agreement constituted "[a]ction or inaction that predates an injury [and] is properly labeled as comparative fault." *Arifin*, No. 98 C 1591, at *1.

The jury's finding on proximate cause need not be inconsistent with a finding on contributory negligence. For example, Defendants clearly articulated that a jury could find that Plaintiff's conduct in leaving the voicemail proximately caused him to be excluded from the deal, but they could also find that Defendants' conduct in not specifically confirming with Plaintiff whether he wanted out of the deal also contributed to Plaintiff's not being a member of SJL, and the jury could apportion damages pursuant to the Defendants' share of fault. Thus, Defendants should have been allowed to argue contributory negligence, and the jury should have been instructed accordingly. The omission of this instruction represented a manifest error of law and

otherwise prejudiced the Defendants and denied them a fair trial, and the Court should grant a new trial, or in the alternative, reduce the Judgment by the $6,051,660 attributed to "One-third ownership share of SJL" and $3,086,144 attributed to the Promote Fee.

> **E.**     **The jury's verdict in favor of Plaintiff for the full amount of the alleged value of the one-third interest in SJL without subtracting the $1.3 million that it cost Plaintiff to invest in SJL is contrary to the manifest weight of the evidence.**

The jury's verdict in favor of Plaintiff for the value of his one-third ownership interest in SJL in the amount of $6,051,660 without subtracting Plaintiff's $1.3 million initial investment into SJL is contrary to the manifest weight of the evidence. Only two possibilities exist for the $1.3 million: it will be returned to Mizrachi should he not be awarded an interest in SJL in the Florida action, or it will be treated as the necessary buy-in for the interest in SJL he will receive. In either case, the funds, which are being held in escrow, will not be lost to Mizrachi. Therefore, the jury finding that they should be included as damages goes against the manifest weight of the evidence.[8]

Plaintiff testified that he, Mr. Ordower and Mr. Holtzman all agreed to pay $1.3 million for their one-third share in SJL. (Tr. 271:18-272:5). Later, Plaintiff did in fact pay that $1.3 million to the escrow agent as the parties had agreed. (*See* Tr. 290:9-16). Plaintiff's son, Adam Mizrachi, confirmed that the $1.3 million was paid to the escrow agent. (*See* Tr. 451:7-25). That money is still being held in an escrow account. (Tr.310:25-311:16).

Plaintiff can only recover damages for a concrete loss. He has not suffered a real and concrete loss as a result of his $1.3 million investment. This money is being held by a California court pursuant to an interpleader action. (ECF No. 227-1, p. 23). If the Court in Florida case declares that Plaintiff has no ownership interest in SJL, the California court will return Plaintiff's

---

[8] This argument does not in any way preclude Defendants' other arguments regarding the judgment as to the entirety of the one-third SJL interest.

$1.3 million investment to him. If Mizrachi is found to have an interest in SJL, the $1.3 million will *also* be returned to him as part of his share of SJL because it was the amount of the investment that would been required to get a one-third ownership interest in SJL, as Defendants' damages expert, James McGovern, explained. (Tr. 682:23-683:1). In other words, no matter what happens, Plaintiff's investment of $1.3 million will be returned to him by someone other than Defendants.

Nevertheless, that jury found exactly the opposite, and did so against the manifest weight of the evidence, by failing to subtract the $1.3 million initial investment from the profits of the investment, $6,051,660. To demonstrate, if this portion of the verdict stands, there is a certainty that Mizrachi will be receiving the $1.3 million twice; once as part of this judgment and after the Florida case has concluded regardless of the decision in that case. Accordingly, Defendants request that this Court grant a new trial, or in the alternative, reduce the Judgment by at least $1.3 million.

> **F.** **The Judge erred in denying Defendants' Motion *in Limine* to exclude Plaintiff's request for damages in the form of attorneys' fees incurred in the prosecution of Plaintiff's Counterclaim and JAL's Third-Party Complaint against Defendants in the Florida case.**

The Court's denial of Defendants' Motion *in Limine* No. 4 permitted the jury to award Plaintiff damages related to *all* of the Florida case, including counterclaims against Ordower, when its earlier summary judgment ruling and relevant authority put these damages off limits.

As noted by the Court in its Summary Judgment Order (ECF 208, p. 28), "where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, [the plaintiff] can not [sic] in a subsequent action recover, as damages, his costs and expenses in the former action." *Ohio Nat.,* 803 F.3d at 910, quoting *Ritter* 381 Ill. at 555, 46 N.E.2d at 44. However, "where the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured

25

by the reasonable expenses of such litigation, including attorney fees." *Id*. The Court held that the Florida case, which was brought by SJL, a third party to this case, and would allegedly not have been necessary but for the alleged wrongful acts of Defendants, the third-party exception applies and Plaintiff can therefore request the fees in that case as damages in the instant case. (ECF 208 p. 28). Defendants do not claim error in that ruling, but, in their Motion *in Limine*, Defendants specifically differentiated the Plaintiff's Counterclaim and Third-Party Complaint of JAL which *were not* filed by a third party against Plaintiff and thus are not subject to the third-party exception. Instead, those claims are just another attempt by Plaintiff to sue Defendants based on the same facts and claims as are at issue in the instant case. Illinois law is clear that attorneys' fees are not recoverable in such a case. *Goldstein v. DABS Asset Manager, Inc.*, 381 Ill. App. 3d 298, 301 (1st Dist. 2008) ("if wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation, for immediately upon the entry of judgment the plaintiff would start another action against the defendant for his attorney fees and expenses incurred in obtaining the preceding judgment").*See also Webb v. Fin. Indus. Regulatory Auth., Inc.*, 889 F.3d 857 (7th Cir. 2018); *Spriggs v. Bode*, 691 A. 2d 139 (D.C. 1997).

It is clear from the testimony of Plaintiff's counsel in the Florida case (Joseph Sacher) that the legal fees submitted in this case in connection with the Florida case included not only those that Plaintiff was allegedly forced to incur due to Defendants' alleged wrongdoing, but also those that were incurred in prosecuting the Counterclaim and JAL's Third Party Complaint against Defendants. (Tr. 578:2-13; 594:2-22). When raised at the Pre-trial Conference, the Court denied Defendants' Motion in connection with those fees and allowed Plaintiff to assert all fees from the Florida case, including those incurred in prosecuting Plaintiff's Counterclaim and JAL's Third-

Party Complaint. *See* a copy of the rough draft of the transcript of the 10/29/20 Pre-trial Conference, Ex. A at p. 45:3-25 and p. 46:1-12; *See also* ECF 232. Thus, this Court's ruling on Defendants' Motion *in Limine* No. 4 was erroneous, prejudicial and unfair to Defendants as he was assessed damages that were not recoverable as a matter of law. Accordingly, Defendants request that this Court grant them a new trial.

G.      **The jury's verdict in favor of Plaintiff for the full amount of the legal fees incurred in the Florida case is contrary to the manifest weight of the evidence because there was no evidence presented that Plaintiff owned 100% of the entities that paid those bills other than Plaintiff's own testimony which was contradicted on cross examination.**

The evidence submitted at trial did not establish that Plaintiff owned the entities that paid the legal bills related to the Florida case. The jury's verdict in favor of the Plaintiff for the full amount of the legal fees incurred in that case in the amount of $1,059,374 is contrary to the manifest weight of the evidence. The only evidence offered to prove that Plaintiff owned the entities paying his legal bills in Florida, was the Plaintiff's testimony. Moreover, on cross examination, Plaintiff admitted that he did not own 100% of either 540 W. Madison Holdings LLC or 300 River Holdings, two of the six entities the evidence revealed actually paid the legal fees in the Florida case (Tr. 393:13-394:6). Similarly, the only evidence as to the ownership interest of the remaining entities that paid Plaintiff's legal bills is Plaintiff's unsupported and contradicted testimony. There are no documents in evidence showing the ownership structure of M Group Two LLC, Third Millennium Group or Mizrachi C2 Group LLC. to prove that Mizrachi owns 100% of those entities either. And Plaintiff has clearly testified that he does not own 100% of JAL Group. Indeed, even his testimony that he owns 50.5% of JAL Group is contradicted by the evidence.

On cross-examination, Mr. Mizrachi was shown the Limited Partnership Agreement of JAL Group, which was signed by Third Millennium Group. (Tr. 345:24-346:24). When shown the

signature block for Third Millennium Group, Mr. Mizrachi testified that SAT Holdings Inc. was its manager, and Simon Mizrachi signed for SAT Holdings Inc. as the manager of Third Millennium Group LLC but that his name was not on the page. (Tr. 347:8-21). Further, Mr. Mizrachi admitted that JAL Limited Partnership and M Group 2 were not plaintiffs in this case. (Tr. 395:15-22). He was asked if any of the other companies that paid the legal fees for the Florida case were plaintiffs in this case and confirmed that they are not. (*Id*.)

Additionally, Plaintiff's son, Adam Mizrachi, testified about the payment of the legal fees in the Florida action. He was shown a Wells Fargo Statement that showed the legal fees paid by wire transfers related to the Florida lawsuit. (Tr. 458:12-459:10). Adam Mizrachi testified that his father had paid over a million dollars to lawyers representing him in the Florida case. (Tr. 460:10-12). However, when cross-examined about that same bank statement, Adam Mizrachi testified that many of the wires for these legal fees came from M Group Two LLC and Mizrachi C2 Group LLC. (Tr. 474:4-475:1). In fact, Adam Mizrachi was asked, "If I took you through all of these wires, none of the wires would be directly out of Joseph Mizrachi's checking account or savings account, correct?" (Tr. 475:6-13). He responded, "Yes." (*Id*.)

Plaintiff did not prove that he wholly owned the companies that paid the legal bills related to the Florida lawsuit. Therefore, the jury's award of $1,059,374 in legal fees is contrary to the manifest weight of the evidence. Accordingly, Defendants request that this Court grant them a new trial, or in the alternative, reduce the Judgment by at least $1,059,374.

**H.     The Jury's finding that Defendants' alleged wrongdoing proximately caused the loss of the one-third interest in SJL and thus, the Jury's verdict in favor of Plaintiff for the SJL interest is contrary to the manifest weight of the evidence and not legally supported.**

The manifest weight of evidence at trial demonstrated that Mizrachi's own action, rather than that of Defendants, caused him to lose the one-third interest in SJL, and as a legal matter such

a finding is warranted. Mizrachi's refusal to agree to the terms of the deal and affirmative withdrawal, rather than Defendants' actions, plainly led to any harm that he alleges. Mizrachi had ample time to reach agreement on the terms of SJL. Ordower sent Mizrachi the Contribution and Indemnity Agreement on August 26, 2016, (Tr. 798:18-799:8, Exhibit 41), and the draft SJLSJL Operating Agreement that included the two-thirds majority voting provision on September 1, 2016, (Tr. 801:14-802:18, Exhibit 43). Yet Mizrachi waited until two days before the closing, nearly a month later, to leave his voicemail regarding the voting provision and withdraw from the deal. And Mizrachi never signed and sent back the Contribution and Indemnity Agreement. (Tr. 401:13-19; Tr. 826:11-827:1). As Ordower testified, had Mizrachi agreed to the same terms of the deal as Holtzman and Ordower this dispute would not be ongoing today. In other words, Mizrachi himself could unquestionably have avoided this situation, which precludes an award of damages: "Illinois has long recognized the applicability, in the question of damages, of the doctrine of avoidable consequences, which prevents a party from recovering damages for consequences that party could reasonably have avoided." *Kwaljeet Chawla & Assocs., Inc. v. in the Bag Recording Studio., Inc*., 2013 Ill. App. 2d 130037, 12 (Ill. App. Ct. 2013). Moreover, when Mizrachi realized that Ordower, Holtzman and himself did not see eye-to-eye on the control and contribution issues, he plainly knew of and assumed the risks going forward, which defeats any claim of malpractice. "[F]ailing to advise a client of the foreseeable risks attendant to a given course of legal action is not predicated upon the impropriety of the recommended course of action; rather it is predicated upon the client's exposure to a risk that the client did not knowingly and voluntarily assume. Consequently, to establish proximate cause in such a case, the plaintiff must plead and prove that had the undisclosed risk been known, the plaintiff would not have accepted the risk and consented to the recommended course of action." *Cardenas Mktg. Network, Inc. v. Winston & Strawn*, LLP, 2015 Ill. App. 133786,

6-7 (Ill. App. Ct. 2015) (citations omitted). For these reasons, the finding of proximate cause is against the weight of the evidence and the Court should order a new trial.

WHEREFORE, Defendants, Lawrence B. Ordower and Ordower & Ordower, P.C., respectfully move this Court to grant their Rule 50(a) motion for judgement as a matter of law in connection with Plaintiff's claim for damages or alternatively, request that this Court grant them a new trial pursuant to Rule 59(a) or alternatively, amend the judgment pursuant to Rule 59(e), and award Defendants further relief as the Court considers proper.

Respectfully submitted,

LAWRENCE ORDOWER and
ORDOWER & ORDOWER, P.C.

By: *s/John D. Dalton*
One of Their Attorneys

John D. Dalton (ARDC #6197108)
Mary Kay Morrissey (ARDC #6201658)
O'Hagan Meyer, LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
Phone: (312) 422-6100
Fax:    (312) 422-6110
Email: jdalton@ohaganmeyer.com
Email: mkmorrissey@ohaganmeyer.com